## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISON

| | | |
|---|---|---|
| | § | |
| | § | |
| | § | |
| **SARAH LINDSLEY,** | § | |
| | § | **CIVIL ACTION NO. 3:17-cv-2942** |
| *Plaintiff*, | § | |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **TRT HOLDINGS, INC. AND** | § | |
| **OMNI HOTELS & RESORTS,** | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

## ORIGINAL COMPLAINT

Plaintiff Sarah "Alica" Lindsley ("Plaintiff"), by and through her attorneys, brings this action for damages and other legal and equitable relief from TRT Holdings, Inc. and Omni Hotels & Resorts ("Defendants") for violations of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 and the Lilly Ledbetter Fair Pay Act of 2009 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA"); the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; Title 2 of the Texas Labor Code, Tex. Lab. Code § 21.001 *et seq.*; and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1.        There is a glass ceiling at Omni Hotels, and after fifteen years as one of the most successful and competent Food and Beverage executives in the company, Plaintiff Alica Lindsley's career was smashed against it. This case is about how Omni reinforces that glass ceiling with a system of unequal pay, discrimination, harassment, and retaliation.

2.      Despite starting as a server and working her way up to become one of just four female Food & Beverage Directors among Defendants' fifty-plus properties, Ms. Lindsley was subjected to discrimination, harassment, and unequal pay throughout her career with Defendants.

3.      Throughout her time at Omni, Ms. Lindsley was paid less than men who had the same title and did the same work. Her frequent complaints were ignored.

4.      Ms. Lindsley was excluded from networking and promotion opportunities made available to men in the same position, and was denied promotions for which she was the best candidate.

5.      Ms. Lindsley and other women who worked for Omni were subjected to sexual harassment in the "boys club" culture that permeated Omni's Food & Beverage Division. Not only were her complaints ignored, but one of the primary harassers was promoted to the Executive level where he repeatedly sabotaged Ms. Lindsley's opportunities for advancement.

6.      When Ms. Lindsley stood up for her rights and the equal rights of all women in the workplace by filing a complaint with the Equal Employment Opportunity Commission ("EEOC"), Defendants reacted by unlawfully retaliating against her. Defendants revised down her evaluations in retaliation, misrepresented her FMLA rights and pressured her not to take FMLA leave to which she was entitled, and ultimately pushed her out of the company, constructively discharging her.

7.      In filing this lawsuit, Ms. Lindsley seeks justice for the discrimination she faced throughout her career at Omni. Ms. Lindsley seeks all remedies the law allows, including at least money damages sufficient to make her pay equal to what Omni paid men for the same jobs. She seeks compensation for the harassment and discrimination that marred her time with Omni. Crucially, Ms. Lindsley seeks injunctive relief including training and monitoring, so that no future rising female executive has her career smashed against Omni's glass ceiling.

**ORIGNAL COMPLAINT**

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201;  (iii) Title VII; and (iv) the Equal Pay Act of 1963, 29 U.S.C. § 206, *et seq*. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1367, which confers supplemental jurisdiction upon this Court for all other claims that are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

9.      Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants maintain offices, conduct business and reside in this District.

## PARTIES

10.      Defendant TRT Holdings, Inc. is a privately held holding company that owns Omni Hotels & Resorts. It shares a Chief Executive Officer and President, in addition to a corporate office, with Omni Hotels & Resorts at 4001 Maple Avenue, Suite 600, Dallas, Texas 75219.

11.      Defendant Omni Hotels & Resorts is a hotel chain of approximately 60 properties in the United States, Canada, and Mexico. It shares a Chief Executive Officer and President, in addition to a corporate office with TRT Holdings, Inc., at 4001 Maple Avenue, Suite 600, Dallas, Texas 75219.

12.      Plaintiff was most recently employed at Defendants' Corpus Christi, Texas location located at 900 North Shoreline Boulevard, Corpus Christi, Texas 78401.

13.     Plaintiff is a person who has been aggrieved by Defendants' actions. She is and has been, at all relevant times, a female citizen of the United States of America and is a resident of the State of Texas.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

14.     Plaintiff's complaints of discrimination and retaliation pursuant to Title VII and the EPA were timely filed with the EEOC.

15.     In May 2017, the EEOC issued its determination and notice of conciliation in which the EEOC found that the Plaintiff was paid unequal wages in violation of both Title VII and the Equal Pay Act.

16.     The EEOC also found that the Plaintiff was retaliated against for engaging in protected activity under Title VII and the Equal Pay Act.

17.     The EEOC issued a failure to conciliate and Notice of Right to Sue prior to the filing of this Complaint.

## ALLEGATIONS CONCERNING SEX DISCRIMINATION

### I: Plaintiff Begins as a Server in Tucson and Earns Promotions Despite Unequal Treatment

18.     Ms. Lindsley started her career with Omni's Food & Beverage Division as a fine dining server at the Omni Tucson National Resort in Arizona ("Tucson National") on or about February 14, 2001.

19.     From the beginning of and throughout Ms. Lindsley's employment, the Food & Beverage Division at Tucson National and throughout Defendants' corporate structure was a "boys club" with few, if any, women in executive roles.

20.     The Tucson National "boys club" was spearheaded by General Manager, David Morgan.  Indeed, during Ms. Lindsley's first meeting with Mr. Morgan in 2003, he sat so close

**ORIGNAL COMPLAINT**

beside her that he touched her entire right side and ran his hand through her hair. Mr. Morgan appeared insulted that Ms. Lindsley immediately excused herself and found a different seat.

21.     Despite this "boys club" culture, Ms. Lindsley was an over-achiever from the beginning. Even when Ms. Lindsley was still working as an hourly server, she was often tasked with doing the work of a manager without the commensurate pay, including creating the wine list, opening and closing the restaurant, and managing the staff during open hours.

22.     In 2007, Plaintiff made a formal complaint to Human Resources on behalf of two female servers who reported to her that Mr. Morgan was sexually harassing them. On information and belief, no corrective action came of the complaint.

23.     Also in 2007, the Operations Director at Tucson National sought permission from Mr. Morgan to promote Plaintiff into a supervisory role.

24.     Upon information and belief, Mr. Morgan dismissed the Operations Director's recommendation, made a statement to the effect that Plaintiff "doesn't have what it takes," and told the Operations Director that if he promoted Ms. Lindsley over Mr. Morgan's disapproval, Ms. Lindsley would fail and it would be the Operations Director's responsibility.

25.     The Operations Director chose to promote Plaintiff against Mr. Morgan's wishes and in 2007, Plaintiff became an hourly Supervisor within the Food & Beverage Division at Tucson National, earning approximately $10 per hour. From the outset, Plaintiff noticed that she was required to work uncompensated overtime hours on nights and weekends when similarly situated male supervisors were not required to do so.

26.     Shortly after Plaintiff became an hourly Supervisor, her manager was terminated and Plaintiff was tasked with performing his job duties, despite continuing to earn around $10 per

**ORIGNAL COMPLAINT**

hour. Plaintiff created new menus, integrated new technologies, and opened two new restaurants on the property.

27.     In 2008, Mr. Morgan left his employment with Defendants, and Ms. Lindsley began to earn further promotions.

28.     In 2008, after Mr. Morgan left, Ms. Lindsley was promoted to an Outlet Manager in the Food & Beverage Division at Tucson National, earning $40,000, which was, upon information and belief, less than the previous male Outlet Manager.

29.     In 2009, Plaintiff applied to be the General Manager of Bob's Steak and Chop House (the "Chop House"), the premium fine dining outlet at Tucson National.

30.     Ms. Lindsley was informed that she needed a sommelier certification before she could be considered for General Manager of the Chop House, despite the fact the male General Manager of the Chop House did not, and was not required to, have a sommelier certification.

31.     Ms. Lindsley paid upfront for her own sommelier certification course and received the certification. She was then promoted to General Manager of the Chop House earning $45,000. Upon information and belief, this was $5,000 less than the previous male General Manager who did not have a sommelier certification.

**II. Ms. Lindsley's Move From Tucson to Texas.**

32.     In 2010, based on her exceptional performance as a General Manger at the Chop House, the Tucson National Operations Director asked Ms. Lindsley to consider applying for the Assistant Director of Food & Beverage position at Omni's Corpus Christi, Texas location.

33.     The position required managing all aspects of the Corpus Christi Food & Beverage Division, which encompassed two hotels with 821 rooms and eleven (11) restaurants/outlets.

**ORIGNAL COMPLAINT**

34.    Ms. Lindsley applied, and the Director of Human Resources in Corpus Christi verbally offered her the job with a $65,000 salary.

35.    Ms. Lindsley gave notice to her landlord, informed her team at Tucson National that she was leaving, and prepared to move to Corpus Christi, Texas. But when she received her written offer one to two weeks later, the salary was decreased without explanation to $57,000.

36.    The Director of Human Resources in Corpus Christi later apologized to Plaintiff about the decrease in pay and informed her that Corporate made him offer her a decreased salary.

37.    Ms. Lindsley rejected the Corpus Christi job at the decreased rate of pay offered and made a formal complaint about Defendants' bait-and-switch tactics to the Tucson National Director of Human Resources.

38.    Plaintiff made the decision to return to her previous position at the Chop House at Tucson National.

39.    Still in 2010, and just a few weeks after Ms. Lindsley rejected the $57,000 offer to move to Texas, Defendants rehired David Morgan to their Dallas corporate headquarters as the Vice President of Food & Beverage with responsibility and authority over Food & Beverage Departments at all Omni properties. This is the same David Morgan who had been General Manager of Tucson National, who had been the subject of Ms. Lindsley's sexual harassment complaint, and who had tried to block her promotions before leaving the company in 2008.

40.    Shortly after returning to Omni, Mr. Morgan called Ms. Lindsley on her home phone. Mr. Morgan threatened Ms. Lindsley that if she refused to take the position in Corpus Christi at the decreased $57,000 salary, it would be detrimental to her career at Omni. He told her that she until the next morning to tell him she accepted the position.

**ORIGNAL COMPLAINT**

41.     After this phone call, Ms. Lindsley felt she had no choice but to take the Assistant Director of Food & Beverage position in Corpus Christi earning $57,000.

42.     When Plaintiff arrived at the property in June 2010, it was in a state of disarray due to mismanagement. The then current Director of Food & Beverage at the Corpus Christi location had no operational experience and was unable to perform the duties of a Director. As a result, Plaintiff was required to serve as the *de facto* Director of Food & Beverage without the commensurate pay.

43.     On or about July 2011, approximately one year after Ms. Lindsley arrived, the Corpus Christi Director of Food & Beverage resigned.

44.     Plaintiff was then asked to officially assume the role of Director of Food & Beverage with a $64,000 salary (still less than the salary originally promised for the Assistant Director position). At this point Ms. Lindsley had been with the company for over a decade in a number of increasingly responsible Food & Beverage positions.

45.     Upon information and belief, the male predecessor Director of Food & Beverage in Corpus Christi was earning $80,000 after just two years at the Company, despite having no Food & Beverage experience.

46.     Ms. Lindsley complained to the Corpus Christi Area Human Resources Director about the pay disparity. The Human Resources Director told her that Mr. Morgan was not willing to sign off on any increase in the salary offered.

47.     Ms. Lindsley felt she had no choice but to accept the offer despite the pay disparity if she wanted to continue her career at the Company.

**ORIGNAL COMPLAINT**

### III. An Executive, but an Unequal One

48.      It was thus that, in 2011, Ms. Lindsley became the first woman to be Director of Food & Beverage for one of Omni's locations. With this title, Ms. Lindsley became an executive of the Company. Unfortunately, she was not given the same pay or opportunities as similarly situated male executives.

49.      The discrimination against Ms. Lindsley was not only that she was paid less than her less-qualified predecessor or similarly situated men. She was also excluded from perquisites and networking opportunities offered to male executives.

50.      For example, Defendants sent all Food & Beverage Directors to France on a trip organized and led by Food & Beverage Vice President David Morgan.

51.      Mr. Morgan informed Ms. Lindsley that she could not attend the retreat in France along with her all-male Food & Beverage Director counterparts. Mr. Morgan offered the rationalization that Ms. Lindsley had not yet held the Director position for one year.

52.      Upon information and belief, no female executives attended the retreat.

53.      Upon information and belief, other male Directors of Food & Beverage who had not been in their positions for one year were allowed to attend.

54.      Further, the male employee who replaced Ms. Lindsley as Director of Food & Beverage in Corpus Christi after she left the Company in 2016, was invited to attend after holding the position for just a short period of time.

55.      In September 2015, Ms. Lindsley attended a wine promotion trip to Chile along with the Company's Executive Chefs and Executive Directors of Food & Beverage. Of the approximately 50 executives in attendance, Ms. Lindsley was one of only two women on the trip.

56.     During the entire trip, male executives repeatedly subjected Ms. Lindsley to sexual harassment, including making comments about her appearance and her ability to earn money as a prostitute.

57.     Ms. Lindsley was ostracized because of her refusal to participate in frequent strip club and brothel visits.

58.     Ms. Lindsley complained to her Area Human Resources Director upon her return. Upon information and belief, no corrective action was taken in response to her complaint.

59.     Upon information and belief, as the Director of Food & Beverage at Omni Corpus Christi, Ms. Lindsley was earning less than several of the men she supervised, including the Executive Chef and General Manager of one of the Corpus Christi restaurants.

60.     In fact, Ms. Lindsley's salary was under the stated position minimum for a Director of Food & Beverage. In an attempt to rectify this situation and raise Ms. Lindsley's salary at least to the position minimum, the Corpus Christi Human Resources Director placed Ms. Lindsley on a 6-month review cycle so that she could receive two raises per year until her salary reached the minimum. After Ms. Lindsley's salary was thus increased one time, Corporate responded by revising the minimum salary range downward so that Ms. Lindsley's minimal salary was covered. Since Plaintiff's salary now met the very bottom of the range of the salary range for her position, her bi-annual reviews were discontinued.

### IV. Mr. Morgan's Harassment and Retaliation Continue.

61.     In 2012, during a meeting with and in front of Ms. Lindsley's Corpus Christi Food & Beverage staff, Mr. Morgan physically placed his hand over her mouth to keep her from speaking.

62.     At the same meeting, Mr. Morgan told Ms. Lindsley that she would "never go anywhere but Corpus Christi" and that she "better get good and comfortable."

63.     Mr. Morgan then made sexually inappropriate remarks to the female Director of Outlets at Corpus Christi and became intoxicated.

64.     Ms. Lindsley reported Mr. Morgan's harassment to her Area Human Resources Director, to the Director of Finance, and to the General Manager of the property.

65.     In 2013, Mr. Morgan decreased five of Ms. Lindsley's "exceeds" ratings to "meets" on her annual review without explanation in an effort to ensure that she did not receive a higher raise. Notably, Ms. Lindsley had never previously received anything less than an "exceeds" rating during her entire career with Omni.

66.     Ms. Lindsley reported Mr. Morgan's retaliatory and discriminatory actions to her Area Human Resources Director and the Corpus Christi General Manager. Three of Plaintiff's ratings were then changed back to "exceeds" so the overall rating would not affect her annual raise.

67.     In 2014, Ms. Lindsley volunteered for the Company-wide In-room Dining Committee.

68.     Ms. Lindsley missed the first conference call due to her son's high school graduation. During the call, and apparently out of sarcasm and to draw attention to her absence, Mr. Morgan named Ms. Lindsley chairwoman in absentia.

69.     Ms. Lindsley took the role seriously and worked diligently to research room service in all luxury brand hotels. She scheduled multiple calls and sent multiple emails to Mr. Morgan regarding the committee work, but he refused to respond.

70.     Three months later, Mr. Morgan removed Ms. Lindsley as chairwoman without notice in front of all her committee members in an effort to humiliate her.

**ORIGNAL COMPLAINT**

71.     Ms. Lindsley sent Mr. Morgan an email requesting feedback on what she could have done better; he failed to respond.

72.     Ms. Lindsley reported the incident to the Area Human Resources Director and her General Manager. She never received a response.

*V. Ms. Lindsley Hits the Glass Ceiling*

73.     During Ms. Lindsley's tenure as the Director of Food & Beverage, the Corpus Christi property was exceedingly successful, consistently ranked within the top ten Food & Beverage departments of all Defendants' properties.

74.     Ms. Lindsley's Corpus Christi Food & Beverage department was number one in profitability and in the associate engagement survey, in addition to having one of the top internal health inspection scores and one of the highest internal audit scores across all of the Defendants' properties.

75.     Though Ms. Lindsley continued to face discrimination, harassment, and unequal treatment from Mr. Morgan and the Corporate Food & Beverage Department, her fellow Directors of Food & Beverage Directors recognized her excellence and success in Corpus Christi.

76.     It was thus that in July 2015, Ms. Lindsley received an email from the Director of Food & Beverage at the Omni Houston property asking whether Plaintiff would be interested in the Houston Director of Food & Beverage position as he was being promoted and the position was open.

77.     Ms. Lindsley emailed Mr. Morgan twice to determine whether he would support the potential promotion, but he failed to respond.

78.     Ms. Lindsley then interviewed for the Houston position, which went so well that the Houston Human Resources Director discussed salary, relocation, and an offer letter with her.

**ORIGNAL COMPLAINT**

79.     However, during the final interview on or about August 6, 2015, Omni Houston's General Manager told Ms. Lindsley that Mr. Morgan called him the previous day and Mr. Morgan told the General Manager that Plaintiff was not the "quality" needed for the hotel.

80.     Ms. Lindsley immediately made a formal complaint to her Omni Corpus Christi General Manager, Omni Corpus Christi Area Human Resources Director, and the Corporate Director of Human Resources.

### VI. Ms. Lindsley Goes to the EEOC and Corporate Retaliation Begins.

81.     On September 23, 2015, Ms. Lindsley filed a Charge of Discrimination with the EEOC. This Charge of Discrimination was mailed to Omni Hotels & Resorts headquarters in Dallas, Texas. It was then forwarded to the Corpus Christi location without being addressed to a specific person.

82.     The Charge of Discrimination was then passed around the hotel and apparently viewed by multiple employees before someone placed the open envelope on Ms. Lindsley's desk.

83.     Immediately thereafter, Ms. Lindsley was repeatedly ostracized.

84.     The General Manager of Omni Corpus Christi began holding meetings with Ms. Lindsley's Food & Beverage team in an effort to purposely exclude her.

85.     For example, the General Manager implemented a menu promotion without any discussion with Ms. Lindsley, despite that being one of her job duties.

86.     The General Manager also began disciplining members of the Food & Beverage team despite that it had always been Ms. Lindsley's responsibility to do so. Including changing their review scores and overall reviews that had never been done before

87.     In November 2016, after Ms. Lindsley reported the retaliatory behavior to management, the General Manager screamed at Ms. Lindsley while banging his fists on her desk.

**ORIGNAL COMPLAINT**

88.     Ms. Lindsley reported the incident to the Area Human Resources Director, but upon information and belief, no corrective action was taken.

**VII. Retaliatory Denial of FMLA Rights.**

89.     In January 2016, Ms. Lindsley met with the Human Resources Director to ask about the Company's Family Medical Leave Act (FMLA) policy.

90.     The Area Human Resources Director informed Ms. Lindsley that if she took FMLA leave, she would not have a job when she returned and that she would have to forfeit all of the paid time off she had accrued.

91.     The Area Human Resources Director further informed Ms. Lindsley that she was going to begin tracking all of Ms. Lindsley's hours and deduct any past and future doctor appointments from her FMLA leave.

92.     Ms. Lindsley was confused and distressed and requested written clarification about her job status if she took FMLA leave.

93.     The Area Director of Human Resources then arranged a conference call with the Corporate Director of Human Resources who confirmed that the Area Human Resources Director improperly advised Ms. Lindsley and that her job title was protected under FMLA leave.

94.     On her doctor's advice, Ms. Lindsley requested FMLA leave and provided Defendants with the necessary medical records to support her doctor's orders.

95.     Ms. Lindsley began her medical leave in March 2016. Upon her return to work in April 2016, Ms. Lindsley had no access to her computer's directory. In fact, Ms. Lindsley's name was completely deleted from the system and every single document she had ever saved was also deleted.

**ORIGNAL COMPLAINT**

96.     Ms. Lindsley reported the missing files to the IT department, to her General Manager, and to the Area Human Resources Director.

97.     The IT department told Ms. Lindsley that her documents were not recoverable. However, she later learned that her documents were recoverable.

### VIII. Constructive Discharge

98.     Ms. Lindsley's 2015 annual review was provided to her in a meeting with her General Manager on the day she returned to work from FMLA leave in April 2016.  Her review had been drastically lowered by her General Manager so that her overall five (5) rating was changed to a three (3).

99.     The review knowingly eliminated many of Ms. Lindsley's accomplishments in the previous year.

100.    When she began to question the review, the General Manager told Ms. Lindsley that she "needed to drop this entire thing" and "let it go because it wasn't looking good for her at Omni."

101.    The General Manager then asked an administrative assistant to attend the rest of Ms. Lindsley's review.  This was highly irregular and unprofessional given that, at the executive level, it is the Company's practice that each executive writes his/her own review, which is then reviewed by a superior.

102.    During the remainder of the meeting, the General Manager read Ms. Lindsley's private, executive-level review in front of the administrative assistant while making false claims and accusations about Ms. Lindsley's work performance.

103.    When she challenged the baseless review, the General Manager told Ms. Lindsley that she makes the Area Human Resources Director upset and uncomfortable.

**ORIGNAL COMPLAINT**

104.    As a result of this meeting, information about Ms. Lindsley's performance review was then spread throughout the Corpus Christi property, which resulted in false rumors about her performance and abilities.

105.    In addition, all of the reviews that Ms. Lindsley wrote for her staff were lowered without her approval or consent. Upon information and belief, this had never been done before and directly affected the entire team's compensation and morale.

106.    After fifteen (15) years of exceptional performance and unequal treatment and compensation, some combination of her filing the EEOC Charge, exercising her FMLA rights, and otherwise challenging Defendants' practices towards her and other women, had led Defendants to decide to push her out of the Company once and for all.

107.    As a result of Defendants' continued retaliation and upon her doctor's medical advice, Ms. Lindsley requested and was granted an additional medical leave in May 2016 and was constructively discharged in June 2016.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
### Title VII of the Civil Rights Act of 1964, as amended,
### 42 U.S.C. § 2000e *et seq.*
### (Discrimination in Pay)

108.    Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

109.    The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* as Defendants have engaged in the practice of discrimination against Plaintiff.

110.    Defendants intentionally discriminated against Plaintiff by subjecting her to discriminatory compensation, in violation of Title VII of the Civil Rights Act of 1964.

111.     Plaintiff's requests for relief are set forth below.

**AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF**
**The Equal Pay Act, 29 U.S.C. § 206(d) *et seq.***
**(Discrimination in Pay)**

112.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

113.     Defendants discriminated against Plaintiff on the basis of sex by paying Plaintiff lower wages and other forms of compensation than Defendants paid to male employees for equal work on jobs, the performance of which require equal skill, effort, and responsibility, and which are performed under similar working conditions, in violation of the Equal Pay Act.

114.     Plaintiff and her male predecessors and/or comparators held the exact same job, in the same establishment, performed equal work that required equal skill, effort, and responsibility, and the work was performed under the same conditions.

115.     The differential in pay between Plaintiff and her male predecessors was not due to seniority, merit, quantity or quality of production, or a factor other than sex. Instead, the differential in pay was due to Plaintiff's gender.

116.     Defendants' actions were not done in good faith nor did they have any reasonable grounds for believing that their acts or omissions were not a violation of the Fair Labor Standards Act.

117.     As a result, Plaintiff is entitled to liquidated damages.

118.     Defendants' foregoing conduct also constitutes a willful violation of the Equal Pay Act within the meaning of 29 U.S.C. § 255(a), entitling Plaintiff to recover damages for three years before the date that this action was commenced pursuant to 29 U.S.C. § 255(a).

119.     Plaintiff's requests for relief are set forth below.

**ORIGNAL COMPLAINT**

### AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*
### (Retaliation)

120.     Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

121.     Plaintiff lodged complaints with Defendants and the EEOC regarding the discrimination to which she was subjected, and as such engaged in protected activity under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

122.     Plaintiff lodged complaints with Defendants and the EEOC regarding the discrimination to which she was subjected under Title VII, and as such engaged in protected activity.

123.     In response, Defendants retaliated against Plaintiff by subjecting her to threatening behavior, denying her access to work files, and altering her performance review, in addition to other retaliatory behavior, which culminated in Plaintiff's constructive discharge as a result of her complaints of unlawful employment practices.

124.     The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

125.     Plaintiff's requests for relief are set forth below.

### AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF
### The Equal Pay Act of 1963, 29 U.S.C. § 206, *et seq.*
### (Retaliation)

126.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

**ORIGNAL COMPLAINT**

127.     Plaintiff lodged complaints with Defendants and the EEOC regarding the discrimination to which she was subjected under the EPA, and as such engaged in protected activity.

128.     In response, Defendants retaliated against Plaintiff by subjecting her to threatening behavior, denying her access to work files, and altering her performance review, in addition to other retaliatory behavior, which culminated in Plaintiff's constructive discharge as a result of her complaints of unlawful employment practices.

129.     The conduct alleged herein violates The Equal Pay Act of 1963, 29 U.S.C. § 206, et seq.

130.     Plaintiff's requests for relief are set forth below.

### AS AND FOR A FIFTH CAUSE OF ACTION FOR A VIOLATION OF
### Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*., as amended
### (FMLA Retaliation)

131.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

132.     In response to Plaintiff's requests for medical leave pursuant to the FMLA, Defendants retaliated against Plaintiff.

133.     Defendants' retaliatory acts included but were not limited to threatening termination and the loss of accrued paid-time off, subjecting Plaintiff to a hostile work environment, and causing Plaintiff's constructive discharge.

134.     The conduct alleged herein violates the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. because Defendant has engaged in the practice of retaliating against Plaintiff by subjecting her to adverse employment actions because she exercised rights protected by the FMLA.  29 U.S.C. § 2615(a)(2).

**ORIGNAL COMPLAINT**

135.     Plaintiff's requests for relief are set forth below.

**AS AND FOR A SIXTH CAUSE OF ACTION FOR A VIOLATION OF**
**Title 2 of the Texas Labor Code, Tex. Lab. Code § 21.001 *et seq.***
**(Discrimination in Pay)**

136.     Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

137.     The conduct alleged herein violates Title 2 of the Texas Labor Code, Tex. Lab. Code § 21.001 *et seq.* as Defendant has engaged in the practice of discrimination against Plaintiff.

138.     Defendant intentionally discriminated against Plaintiff by subjecting her to discriminatory compensation, in violation of Title 2 of the Texas Labor Code, Tex. Lab. Code § 21.001 *et seq.*

139.     Plaintiff's requests for relief are set forth below.

**AS AND FOR A SEVENTH CAUSE OF ACTION FOR A VIOLATION OF**
**Title 2 of the Texas Labor Code, Tex. Lab. Code § 21.001 *et seq.***
**(Retaliation)**

140.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

141.     Plaintiff lodged complaints within the meaning and scope of Title 2 of the Texas Labor Code, Tex. Lab. Code § 21.001 et seq. regarding the discrimination to which she was subjected.

142.     In response, Defendants retaliated against Plaintiff by subjecting her to threatening behavior, denying her access to work files, and altering her performance review, in addition to other retaliatory behavior, which culminated in Plaintiff's constructive discharge as a result of her complaints of unlawful employment practices.

**ORIGNAL COMPLAINT**

143.     Defendants' actions are in direction violation of Title 2 of the Texas Labor Code, Tex. Labor Code § 21.001 *et seq*.

144.     Plaintiff's requests for relief are set forth below.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

145.     That the practices of the Defendants complained of herein be determined and adjudged to be in violation of the rights of Plaintiff under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, and the Lilly Ledbetter Fair Pay Act of 2009 ("Title VII"), 42 U.S.C. § 2000e *et seq*.; the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA"); the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.; Title 2 of the Texas Labor Code, Tex. Lab. Code § 21.001 *et seq*.; and any other cause(s) of action that can be inferred from the facts set forth herein.

146.     All damages which Plaintiff has sustained as a result of Defendants' conduct, including back pay, front pay, liquidated damages, punitive damages, general and special damages for lost compensation and job benefits she would have received but for Defendants' unlawful and retaliatory conduct;

147.     An award to Plaintiff of compensatory damages, including but not limited to damages for emotional distress, humiliation, embarrassment, and anguish;

148.     An award to Plaintiff of pre-judgment interest at the highest level rate, from and after the date of service of the initial complaint in this action on all owed wages from the date such wages were earned and due;

149.     An award representing Defendants' share of FICA, FUTA, state unemployment insurance and any other required employment taxes;

**ORIGNAL COMPLAINT**

150.     Awarding Plaintiff  her costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

151.     Post-judgment interest, as provided by law; and

152.     That the Court retain jurisdiction over Defendants until such time as it is satisfied that it has remedied the practices complained of and is determined to be in full compliance with the law;

Plaintiff seeks injunctive relief, including but not limited to:

a.     Training on the subject of wage discrimination for all of Defendants' employees;

b.     Supervisory discipline up to and including termination for any supervisor who engages in unlawful discrimination;

c.     Monitoring by the Court or a Federal Agency to ensure that Defendants comply with all injunctive relief; and

Plaintiff further demands that she be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

Respectfully submitted,

_____
Jay D. Ellwanger
Texas State Bar No. 24036522
jellwanger@equalrights.law
Holt M. Lackey (admission pending)
Texas State Bar No. 24047763
hlackey@equalrights.law
Ellwanger Law LLLP
400 South Zang Boulevard
Suite 1015
Dallas, Texas  75208
Telephone: (214) 948-3334
Facsimile:  (214) 853-9410

**ORIGNAL COMPLAINT**

**<u>Of Counsel:</u>**

James A. Vagnini
(admission *pro hac vice* pending)
jvagnini@vkvlawyers.com
Monica Hincken
(admission *pro hac vice* pending)
mhincken@vkvlawyers.com
Valli Kane &Vagnini, LLP
600 Old Country Road, Suite 519
Garden City, New York 11530
Telephone: (516) 203-7180
Facsimile: (516) 706-0248

***Counsel for Plaintiff***

**ORIGNAL COMPLAINT**