**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISON**

| | | |
|---|---|---|
| **SARAH LINDSLEY, on behalf of** | § | |
| **herself and all others similarly** | § | |
| **situated,** | § | |
| | § | |
| *Plaintiffs,* | § | **CIVIL ACTION NO. 3:17-cv-2942** |
| **v.** | § | |
| | § | |
| **TRT HOLDINGS, INC. and** | § | **JURY TRIAL DEMANDED** |
| **OMNI HOTELS** | § | |
| **MANAGEMENT** | § | |
| **CORPORATION,** | § | |
| | § | |
| *Defendants.* | § | |

**FIRST AMENDED COMPLAINT**

Plaintiff Sarah "Alica" Lindsley ("Ms. Lindsley"), on behalf of herself and all others similarly situated (collectively, "Plaintiffs") by and through her attorneys, Ellwanger Law LLLP and Valli Kane & Vagnini LLP, brings this action for damages and other legal and equitable relief from Omni Hotels Management Corporation ("Omni Hotels") and TRT Holdings, Inc. ("TRT") (collectively, "Defendants") for violations of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 and the Lilly Ledbetter Fair Pay Act of 2009 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; the Equal Pay Act of 1963, 29 U.S.C. §§ 206(d), *et seq.* ("EPA"); the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*; Title 2 of the Texas Labor Code, Tex. Lab. Code §§ 21.001 *et seq.* ("TLC"); and any other cause(s) of action that can be inferred from the facts set forth herein.

**INTRODUCTION**

1.      There is a glass ceiling at Omni Hotels, and after fifteen years as one of the most successful and competent Food and Beverage executives in the company, Plaintiff Alica

Lindsley's career was smashed against it. This case is about how Defendants reinforce that glass ceiling with a system of unequal pay, discrimination, harassment, and retaliation.

2.     Despite starting as a server and working her way up to become one of just four female Food & Beverage Directors among Defendants' fifty-plus properties, Ms. Lindsley was subjected to discrimination, harassment, and unequal pay throughout her career with Defendants.

3.     Throughout her time with Defendants, Ms. Lindsley was paid less than men who had the same title and did the same work. Her frequent complaints were ignored.

4.     Ms. Lindsley was excluded from networking and promotion opportunities made available to men in the same position, and was denied promotions for which she was the most qualified candidate.

5.     Ms. Lindsley and other women who worked for Defendants were subjected to sexual harassment in the "boys club" culture that permeated Defendants' Food & Beverage Division. Not only were her complaints ignored, but one of the primary harassers was promoted to the Executive level where he repeatedly sabotaged Ms. Lindsley's opportunities for advancement.

6.     When Ms. Lindsley stood up for her rights and the equal rights of all women in the workplace by filing a complaint with the Equal Employment Opportunity Commission ("EEOC"), Defendants reacted by unlawfully retaliating against her. Defendants revised down her evaluations in retaliation, misrepresented her FMLA rights and pressured her not to take FMLA leave to which she was entitled, and ultimately pushed her out of the company, constructively discharging her.

7.     In filing this lawsuit, Ms. Lindsley seeks justice for the discrimination she faced throughout her career with Defendants. Ms. Lindsley seeks all remedies the law allows, including at least money damages sufficient to make her pay equal to what Defendants paid men for the same

**FIRST AMENDED COMPLAINT**

jobs. She seeks compensation for the harassment and discrimination that marred her time with Defendants. Crucially, Ms. Lindsley seeks injunctive relief including training and monitoring, so that no future rising female executive has her career smashed against Defendants' glass ceiling.

8.      In addition to her individual claims, Ms. Lindsley brings this action on behalf of herself, and those similarly situated, as a result of Defendants' willful violation of federal and state wage antidiscrimination laws.

9.      First, pursuant to Fed. R. Civ. P. 23, Ms. Lindsley brings this action for Defendants' violations of Title VII, on behalf of two (2) classes of female persons who are and were employed in supervisory positions within Defendants' Food and Beverage department during the relevant time period who were (i) paid significantly less than similarly situated male employees on the basis of their sex ("Pay Plaintiffs") and (ii) who were subjected to promotional barriers and obstacles because of their sex, which disadvantaged their promotional opportunities ("Promotion Plaintiffs") and allege that they are entitled to recover: (i) back pay, (ii) compensatory damages, (iii) punitive damages, (iv) interest, and (v) attorney fees and costs, pursuant to Title VII,  and such other and further relief as this Court finds necessary and proper.

10.      Second, pursuant to Fed. R. Civ. P. 23, Ms. Lindsley brings this action for Defendants' violations of the TLC, on behalf of two (2) classes of female persons who are and were employed within the state of Texas in supervisory positions within Defendants' Food and Beverage department during the relevant time period who were (i) paid significantly less than similarly situated male employees on the basis of their sex ("Texas Pay Plaintiffs") and (ii) who were subjected to promotional barriers and obstacles because of their sex, which disadvantaged their promotional opportunities ("Texas Promotion Plaintiffs") and allege that they are entitled to recover: (i) back pay, (ii) compensatory damages, (iii) punitive damages, (iv) interest, and (v)

**FIRST AMENDED COMPLAINT**

attorney fees and costs, pursuant to the TLC and such other and further relief as this Court finds necessary and proper.

11.     Third, Ms. Lindsley brings this action for Defendants' violations of the EPA, pursuant to 29 U.S.C. § 216(b), on behalf of a collective of female persons who are and were employed by Defendants as Directors of Food and Beverage during the relevant time period who were paid significantly less than male Directors of Food and Beverage because of their sex ("EPA Plaintiffs") and allege that they are entitled to recover: (i) back pay (ii) liquidated damages, (iii) interest, and (iv) attorneys' fees and costs, pursuant to the EPA and such other and further relief as this Court finds necessary and proper.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201;  (iii) Title VII; and (iv) the Equal Pay Act of 1963, 29 U.S.C. §§ 206, *et seq*. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1367, which confers supplemental jurisdiction upon this Court for all other claims that are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

13.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants maintain offices, conduct business and reside in this District.

4

**FIRST AMENDED COMPLAINT**

## PARTIES

14.      Defendant TRT is a privately held holding company that wholly owns Defendant Omni Hotels.

15.      At all relevant times Defendant TRT has been Plaintiff's "employer" under Title VII, the EPA, the FMLA, and the TLC.

16.      Defendant Omni Hotels is a hotel chain of approximately 60 properties throughout the United States, Canada, and Mexico.

17.      At all relevant times Defendant Omni Hotels has been Plaintiff's "employer" under Title VII, the EPA, the FMLA, and the TLC.

18.      Defendants' headquarters are located at the same address—4001 Maple Avenue, Suite 600, Dallas, Texas 75219.

19.      Defendants share many executive level employees. For example, during the relevant time period James Caldwell was the Chief Executive Officer of Defendant Omni Hotels while simultaneously holding the position of President for Defendant TRT.

20.      Defendant TRT Holdings controls the terms and conditions of Defendant Omni Hotels' employees. For example, when Defendant TRT acquired Defendant Omni Hotels, Defendant TRT terminated many of Defendant Omni Hotels' employees, including Joy Rothschild ("Ms. Rothschild"). Upon information and belief, Ms. Rothschild was later hired by Defendant TRT as Defendants' Chief Human Resources Officer and was tasked with simultaneously overseeing Defendant TRT and Defendant Omni Hotels' human resources department. For example, Ms. Rothschild approval was required for, among other employee-employer related matters, all promotions, pay raises, and Director and Executive hirings.

**FIRST AMENDED COMPLAINT**

21.     Furthermore, Defendant TRT controlled all of Defendant Omni Hotel's fiscal matters. For example, Defendant Omni's budget was set by Defendant TRT. Furthermore, all of Defendant Omni Hotel's earnings before interest, taxes, depreciation, and amortization ("EBITA") was transferred to Defendant TRT. Defendant TRT then dispersed a percentage of Defendant Omni Hotels' EBITA back to Defendant Omni Hotels' as "major capital," which was used by Defendant Omni Hotels for matters such as roof repairs.

22.     Defendants employed Ms. Lindsley and those similarly situated by employing or acting in the interest of the employer towards Ms. Lindsley and those similarly situated directly or indirectly, jointly or severally, including without limitation, by controlling and directing the terms of employment and compensation and by suffering all those similarly situated employees to work.

23.     Ms. Lindsley was most recently employed at Defendants' Corpus Christi, Texas location located at 900 North Shoreline Boulevard, Corpus Christi, Texas 78401.

24.     Ms. Lindsley is a person who has been aggrieved by Defendants' actions. She is and has been, at all relevant times, a female citizen of the United States of America and is a resident of the State of Texas.

25.     At all relevant times Plaintiffs was an "employee" of Defendants under Title VII, the EPA, the FMLA, and the TLC.

**EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES**

26.     Plaintiff's complaints of discrimination and retaliation pursuant to Title VII and the EPA were timely filed with the EEOC.

27.     In May 2017, the EEOC issued its determination and notice of conciliation in which the EEOC found that the Ms. Lindsley was paid unequal wages in violation of both Title VII and the Equal Pay Act.

6

**FIRST AMENDED COMPLAINT**

28.     The EEOC also found that the Ms. Lindsley  was retaliated against for engaging in protected activity under Title VII and the Equal Pay Act.

29.     The EEOC issued a failure to conciliate and Notice of Right to Sue prior to the filing of this Complaint.

## STATEMENT OF FACTS

I.     **Facts Pertaining to Ms. Lindsley's Individual Claims**

   a.     *Ms. Lindsley Begins as a Server in Tucson and Earns Promotions Despite Unequal Treatment*

30.     Ms. Lindsley started her career with Defendants' Food & Beverage Division as a fine dining server at the Omni Tucson National Resort in Arizona ("Tucson National") on or about February 14, 2001.

31.     From the beginning of and throughout Ms. Lindsley's employment, the Food & Beverage Division at Tucson National and throughout Defendants' corporate structure was a "boys club" with few, if any, women in executive roles.

32.     The Tucson National "boys club" was spearheaded by General Manager, David Morgan.  Indeed, during Ms. Lindsley's first meeting with Mr. Morgan in 2003, he sat so close beside her that he touched her entire right side and ran his hand through her hair. Mr. Morgan appeared insulted that Ms. Lindsley immediately excused herself and found a different seat.

33.     Despite this "boys club" culture, Ms. Lindsley was an over-achiever from the beginning. Even when Ms. Lindsley was still working as an hourly server, she was often tasked with doing the work of a manager without the commensurate pay, including creating the wine list, opening and closing the restaurant, and managing the staff during open hours.

**FIRST AMENDED COMPLAINT**

34.     In 2007, Ms. Lindsley made a formal complaint to Human Resources on behalf of two female servers who reported to her that Mr. Morgan was sexually harassing them. On information and belief, no corrective action came of the complaint.

35.     Also in 2007, the Operations Director at Tucson National sought permission from Mr. Morgan to promote Ms. Lindsley into a supervisory role.

36.     Upon information and belief, Mr. Morgan dismissed the Operations Director's recommendation, made a statement to the effect that Ms. Lindsley "doesn't have what it takes," and told the Operations Director that if he promoted Ms. Lindsley over Mr. Morgan's disapproval, Ms. Lindsley would fail and it would be the Operations Director's responsibility.

37.     The Operations Director chose to promote Ms. Lindsley against Mr. Morgan's wishes and in 2007, Ms. Lindsley became an hourly Supervisor within the Food & Beverage Division at Tucson National, earning approximately $10 per hour. From the outset, Ms. Lindsley noticed that she was required to work uncompensated overtime hours on nights and weekends when similarly situated male supervisors were not required to do so.

38.     Shortly after Ms. Lindsley became an hourly Supervisor, her manager was terminated and Ms. Lindsley was tasked with performing his job duties, despite continuing to earn around $10 per hour. Ms. Lindsley created new menus, integrated new technologies, and opened two new restaurants on the property.

39.     In 2008, Mr. Morgan left his employment with Defendants, and Ms. Lindsley began to earn further promotions.

40.     In 2008, after Mr. Morgan left, Ms. Lindsley was promoted to an Outlet Manager in the Food & Beverage Division at Tucson National, earning $40,000, which was, upon information and belief, less than the previous male Outlet Manager.

8

**FIRST AMENDED COMPLAINT**

41.     In 2009, Ms. Lindsley applied to be the General Manager of Bob's Steak and Chop House (the "Chop House"), the premium fine dining outlet at Tucson National.

42.     Ms. Lindsley was informed that she needed a sommelier certification before she could be considered for General Manager of the Chop House, despite the fact the male General Manager of the Chop House did not, and was not required to, have a sommelier certification.

43.     Ms. Lindsley paid upfront for her own sommelier certification course and received the certification. She was then promoted to General Manager of the Chop House earning $45,000. Upon information and belief, this was $5,000 less than the previous male General Manager who did not have a sommelier certification.

**b.  *Ms. Lindsley's Move From Tucson to Texas.***

44.     In 2010, based on her exceptional performance as a General Manger at the Chop House, the Tucson National Operations Director asked Ms. Lindsley to consider applying for the Assistant Director of Food & Beverage position at Defendants' Corpus Christi, Texas location.

45.     The position required managing all aspects of the Corpus Christi Food & Beverage Division, which encompassed two hotels with 821 rooms and eleven (11) restaurants/outlets.

46.     Ms. Lindsley applied, and the Director of Human Resources in Corpus Christi verbally offered her the job with a $65,000 salary.

47.     Ms. Lindsley gave notice to her landlord, informed her team at Tucson National that she was leaving, and prepared to move to Corpus Christi, Texas. But when she received her written offer approximately two weeks later, the salary was decreased without explanation to $57,000.

**FIRST AMENDED COMPLAINT**

48.     The Director of Human Resources in Corpus Christi later apologized to Ms. Lindsley about the decrease in pay and informed her that Corporate made him offer her a decreased salary.

49.     Ms. Lindsley rejected the Corpus Christi job at the decreased rate of pay offered and made a formal complaint about Defendants' bait-and-switch tactics to the Tucson National Director of Human Resources.

50.     Ms. Lindsley made the decision to return to her previous position at the Chop House at Tucson National.

51.     Still in 2010, and just a few weeks after Ms. Lindsley rejected the $57,000 offer to move to Texas, Defendants rehired David Morgan to their Dallas corporate headquarters as the Vice President of Food & Beverage with responsibility and authority over Food & Beverage Departments at all Omni properties.

52.     Shortly after returning to Omni, Mr. Morgan called Ms. Lindsley on her home phone. Mr. Morgan threatened Ms. Lindsley that if she refused to take the position in Corpus Christi at the decreased $57,000 salary, it would be detrimental to her career with Defendants. He told her that she had until the next morning to tell him she accepted the position.

53.     After this phone call, Ms. Lindsley felt she had no choice but to take the Assistant Director of Food & Beverage position in Corpus Christi earning $57,000.

54.     When Ms. Lindsley arrived at the property in June 2010, it was in a state of disarray due to mismanagement. The then current Director of Food & Beverage at the Corpus Christi location had no operational experience and was unable to perform the duties of a Director. As a result, Ms. Lindsley was required to serve as the *de facto* Director of Food & Beverage without the commensurate pay.

10

**FIRST AMENDED COMPLAINT**

55.     On or about July 2011, approximately one year after Ms. Lindsley arrived, the Corpus Christi Director of Food & Beverage resigned.

56.     Ms. Lindsley was then asked to officially assume the role of Director of Food & Beverage with a $64,000 salary (still less than the salary originally promised for the Assistant Director position). At this point Ms. Lindsley had been with the company for over a decade in a number of increasingly responsible Food & Beverage positions.

57.     Upon information and belief, the male predecessor Director of Food & Beverage in Corpus Christi was earning $80,000 after just two years at the Company, despite having no Food & Beverage experience.

58.     Ms. Lindsley complained to the Corpus Christi Area Human Resources Director about the pay disparity. The Human Resources Director told her that Mr. Morgan was not willing to sign off on any increase in the salary offered.

59.     Ms. Lindsley felt she had no choice but to accept the offer despite the pay disparity if she wanted to continue her career at the Company.

### c.  *An Executive, but an Unequal One*

60.     It was thus that, in 2011, Ms. Lindsley became the first woman to be Director of Food & Beverage for one of Defendants' locations. With this title, Ms. Lindsley became an executive of the Company. Unfortunately, she was not given the same pay or opportunities as similarly situated male executives.

61.      In fact, Ms. Lindsley was Defendants' first ever female Food and Beverage Director and, when accounting for inflation, given the lowest starting salary ever for a Food and Beverage Director at Omni Corpus Christi.

11

**FIRST AMENDED COMPLAINT**

62.     The discrimination against Ms. Lindsley was not only that she was paid less than her less-qualified predecessor or similarly situated men. She was also excluded from perquisites and networking opportunities offered to male executives.

63.     For example, Defendants sent all Food & Beverage Directors to France on a trip organized and led by Food & Beverage Vice President David Morgan.

64.     Mr. Morgan informed Ms. Lindsley that she could not attend the retreat in France along with her all-male Food & Beverage Director counterparts. Mr. Morgan offered the rationalization that Ms. Lindsley had not yet held the Director position for one year.

65.     Upon information and belief, no female executives attended the retreat.

66.     Upon information and belief, other male Directors of Food & Beverage who had not been in their positions for one year were allowed to attend.

67.     Further, the male employee who replaced Ms. Lindsley as Director of Food & Beverage in Corpus Christi after she left the Company in 2016, was invited to attend after holding the position for just a short period of time.

68.     In September 2015, Ms. Lindsley attended a wine promotion trip to Chile along with the Company's Executive Chefs and Executive Directors of Food & Beverage. Of the approximately 50 executives in attendance, Ms. Lindsley was one of only two women on the trip.

69.     During the entire trip, male executives repeatedly subjected Ms. Lindsley to sexual harassment, including making comments about her appearance and her ability to earn money as a prostitute.

70.     Ms. Lindsley was ostracized because of her refusal to participate in frequent strip club and brothel visits.

**FIRST AMENDED COMPLAINT**

71.     Ms. Lindsley complained to her Area Human Resources Director upon her return. Upon information and belief, no corrective action was taken in response to her complaint.

72.     Upon information and belief, as the Director of Food & Beverage at Omni Corpus Christi, Ms. Lindsley was earning less than several of the men she supervised, including the Executive Chef and General Manager of one of the Corpus Christi restaurants.

73.     In fact, Ms. Lindsley's salary was under the stated position minimum for a Director of Food & Beverage. In an attempt to rectify this situation and raise Ms. Lindsley's salary at least to the position minimum, the Corpus Christi Human Resources Director placed Ms. Lindsley on a six month review cycle so that she could receive two raises per year until her salary reached the minimum. After Ms. Lindsley's salary was thus increased one time, Corporate responded by revising the minimum salary range downward so that Ms. Lindsley's minimal salary was covered. Since Plaintiff's salary now met the very bottom of the range of the salary range for her position, her bi-annual reviews were discontinued.

**d.  *Mr. Morgan's Harassment and Retaliation Continue.***

74.     In 2012, during a meeting with and in front of Ms. Lindsley's Corpus Christi Food & Beverage staff, Mr. Morgan physically placed his hand over her mouth to keep her from speaking.

75.     At the same meeting, Mr. Morgan told Ms. Lindsley that she would "never go anywhere but Corpus Christi" and that she "better get good and comfortable."

76.     Mr. Morgan then made sexually inappropriate remarks to the female Director of Outlets at Corpus Christi and became intoxicated.

77.     Ms. Lindsley reported Mr. Morgan's harassment to her Area Human Resources Director, to the Director of Finance, and to the General Manager of the property.

**FIRST AMENDED COMPLAINT**

78.     In 2013, Mr. Morgan decreased five of Ms. Lindsley's "exceeds" ratings to "meets" on her annual review without explanation in an effort to ensure that she did not receive a higher raise. Notably, Ms. Lindsley had never previously received anything less than an "exceeds" rating during her entire career with Defendants.

79.     Ms. Lindsley reported Mr. Morgan's retaliatory and discriminatory actions to her Area Human Resources Director and the Corpus Christi General Manager. Three of Plaintiff's ratings were then changed back to "exceeds" so the overall rating would not affect her annual raise.

80.     In 2014, after multiple attempts to join a committee, Ms. Lindsley volunteered for the Company-wide In-room Dining Committee.

81.     Ms. Lindsley missed the first conference call due to her son's high school graduation. During the call, and apparently out of sarcasm and to draw attention to her absence, Mr. Morgan named Ms. Lindsley chairwoman in absentia.

82.     Ms. Lindsley took the role seriously and worked diligently to research room service in all luxury brand hotels. She scheduled multiple calls and sent multiple emails to Mr. Morgan regarding the committee work, but he refused to respond.

83.     Three months later, Mr. Morgan removed Ms. Lindsley as chairwoman without notice in front of all her committee members in an effort to humiliate her.

84.     Ms. Lindsley sent Mr. Morgan an email requesting feedback on what she could have done better; he failed to respond.

85.     Ms. Lindsley reported the incident to the Area Human Resources Director and her General Manager. She never received a response.

14

**FIRST AMENDED COMPLAINT**

**e.** *Ms. Lindsley Hits the Glass Ceiling*

86.     During Ms. Lindsley's tenure as the Director of Food & Beverage, the Corpus Christi property was exceedingly successful, consistently ranked within the top ten Food & Beverage departments of all Defendants' properties.

87.     Ms. Lindsley's Corpus Christi Food & Beverage department was number one in profitability and in the associate engagement survey, in addition to having one of the top internal health inspection scores and one of the highest internal audit scores across all of the Defendants' properties.

88.     Though Ms. Lindsley continued to face discrimination, harassment, and unequal treatment from Mr. Morgan and the Corporate Food & Beverage Department, her fellow Directors of Food & Beverage Directors recognized her excellence and success in Corpus Christi.

89.     It was thus that in July 2015, Ms. Lindsley received an email from the Director of Food & Beverage at the Omni Houston property asking whether Ms. Lindsley would be interested in the Houston Director of Food & Beverage position as he was being promoted and the position was open.

90.     Ms. Lindsley emailed Mr. Morgan twice to determine whether he would support the potential promotion, but he failed to respond.

91.     Ms. Lindsley then interviewed for the Houston position, which went so well that the Houston Human Resources Director discussed salary, relocation, and an offer letter with her.

92.     However, during the final interview on or about August 6, 2015, Omni Houston's General Manager told Ms. Lindsley that Mr. Morgan called him the previous day and Mr. Morgan told the General Manager that Ms. Lindsley was not the "quality" needed for the hotel.

**FIRST AMENDED COMPLAINT**

93.     Ms. Lindsley immediately made a formal complaint to her Omni Corpus Christi General Manager, Omni Corpus Christi Area Human Resources Director, and the Corporate Director of Human Resources.

   **f.   *Ms. Lindsley Goes to the EEOC and Corporate Retaliation Begins.***

94.     On September 23, 2015, Ms. Lindsley filed a Charge of Discrimination with the EEOC. This Charge of Discrimination was mailed to Omni Hotels' headquarters in Dallas, Texas. It was then forwarded to the Corpus Christi location without being addressed to a specific person.

95.     The Charge of Discrimination was then passed around the hotel and apparently viewed by multiple employees before someone placed the open envelope on Ms. Lindsley's desk.

96.     Immediately thereafter, Ms. Lindsley was repeatedly ostracized.

97.     The General Manager of Omni Corpus Christi began holding meetings with Ms. Lindsley's Food & Beverage team in an effort to purposely exclude her.

98.     For example, the General Manager implemented a menu promotion without any discussion with Ms. Lindsley, despite that being one of her job duties.

99.     The General Manager also began disciplining members of the Food & Beverage team despite that it had always been Ms. Lindsley's responsibility to do so. Including changing their review scores and overall reviews that had never been done before.

100.    In November 2016, after Ms. Lindsley reported the retaliatory behavior to management, the General Manager screamed at Ms. Lindsley while banging his fists on her desk.

101.    Ms. Lindsley reported the incident to the Area Human Resources Director, but upon information and belief, no corrective action was taken.

**FIRST AMENDED COMPLAINT**

g.  ***Retaliatory Denial of FMLA Rights.***

102.    In January 2016, Ms. Lindsley met with the Human Resources Director to ask about the Company's Family Medical Leave Act (FMLA) policy.

103.    The Area Human Resources Director informed Ms. Lindsley that if she took FMLA leave, she would not have a job when she returned and that she would have to forfeit all of the paid time off she had accrued.

104.    The Area Human Resources Director further informed Ms. Lindsley that she was going to begin tracking all of Ms. Lindsley's hours and deduct any past and future doctor appointments from her FMLA leave.

105.    Ms. Lindsley was confused and distressed and requested written clarification about her job status if she took FMLA leave.

106.    The Area Director of Human Resources then arranged a conference call with the Corporate Director of Human Resources who confirmed that the Area Human Resources Director improperly advised Ms. Lindsley and that her job title was protected under FMLA leave.

107.    On her doctor's advice, Ms. Lindsley requested FMLA leave and provided Defendants with the necessary medical records to support her doctor's orders.

108.    Ms. Lindsley began her medical leave in March 2016. Upon her return to work in April 2016, Ms. Lindsley had no access to her computer's directory. In fact, Ms. Lindsley's name was completely deleted from the system and every single document she had ever saved was also deleted.

109.    Ms. Lindsley reported the missing files to the IT department, to her General Manager, and to the Area Human Resources Director.

**FIRST AMENDED COMPLAINT**

110.    The IT department told Ms. Lindsley that her documents were not recoverable. However, she later learned that her documents were recoverable.

### h. *Constructive Discharge*

111.    Ms. Lindsley's 2015 annual review was provided to her in a meeting with her General Manager on the day she returned to work from FMLA leave in April 2016.  Her review had been drastically lowered by her General Manager so that her overall five (5) rating was changed to a three (3).

112.    The review knowingly eliminated many of Ms. Lindsley's accomplishments in the previous year.

113.    When she began to question the review, the General Manager told Ms. Lindsley that she "needed to drop this entire thing" and "let it go because it wasn't looking good for her at Omni."

114.    The General Manager then asked an administrative assistant to attend the rest of Ms. Lindsley's review.  This was highly irregular and unprofessional given that, at the executive level, it is the Company's practice that each executive writes his/her own review, which is then reviewed by a superior.

115.    During the remainder of the meeting, the General Manager read Ms. Lindsley's private, executive-level review in front of the administrative assistant while making false claims and accusations about Ms. Lindsley's work performance.

116.    When she challenged the baseless review, the General Manager told Ms. Lindsley that she makes the Area Human Resources Director upset and uncomfortable.

**FIRST AMENDED COMPLAINT**

117.    As a result of this meeting, information about Ms. Lindsley's performance review was then spread throughout the Corpus Christi property, which resulted in false rumors about her performance and abilities.

118.    In addition, all of the reviews that Ms. Lindsley wrote for her staff were lowered without her approval or consent. Upon information and belief, this had never been done before and directly affected the entire team's compensation and morale.

119.    After fifteen (15) years of exceptional performance and unequal treatment and compensation, some combination of her filing the EEOC Charge, exercising her FMLA rights, and otherwise challenging Defendants' practices towards her and other women, had led Defendants to decide to push her out of the Company once and for all.

120.    As a result of Defendants' continued retaliation and upon her doctor's medical advice, Ms. Lindsley requested and was granted an additional medical leave in May 2016 and was constructively discharged in June 2016.

## II.    Facts Pertaining to Plaintiffs

### a.  *Fed. R. Civ. P. 23 Classes' Facts*

121.    Pay Plaintiffs, Promotion Plaintiffs, Texas Pay Plaintiffs, and Texas Promotion Plaintiffs (collectively "Rule 23 Plaintiffs") are all females.

122.    Rule 23 Plaintiffs are/were employed within Defendants' Food and Beverage department.

123.    Rule 23 Plaintiffs were employed for Defendants throughout the relevant time period.

124.    Rule 23 Plaintiffs' are/were all employed in supervisory positions, which ranged from low supervisory positions such as restaurant managers to Food and Beverage Directors.

**FIRST AMENDED COMPLAINT**

125.    Pay Plaintiffs and Promotion Plaintiffs are/were employed by Defendants throughout the United States for their various hotels.

126.    Texas Pay Plaintiffs and Texas Promotion Plaintiffs are/were employed by Defendants throughout the state of Texas for their various hotels.

127.    Rule 23 Plaintiffs are/were subjected to Defendants' corporate wide policy and practice of discriminating against female Food and Beverage employees on the basis of their sex, by paying them less than similarly situated male employees and by disadvantage females from being promoted in favor of similarly situate males.

### 1. *Disparate Pay*.

128.    Pay Plaintiffs and Texas Pay Plaintiffs were paid less than similarly situated male employees.

129.    Pay Plaintiffs and Texas Pay Plaintiffs performed equal or more work when compared to the similarly situated male employees who earned more than them.

130.    Pay Plaintiffs and Texas Pay Plaintiffs were equally or more qualified for their positions than the similarly situated male employees who earned more than them.

131.    Pay Plaintiffs and Texas Pay Plaintiffs had equal or more tenure with Defendants than the similarly situated male employees who earned more than them.

132.    An example of Defendants' discriminatory pay practices is found at Defendants' Omni Houston Westside location. In April 2013, a female was hired as Defendants' Omni Houston Westside's Food and Beverage Director and upon information and belief, was paid a starting salary of only approximately $55,412.00. Notably her similarly situated male predecessor, who began his employment as Defendants' Omni Houston Westside's' Food and Beverage Director in 1998—18 years earlier—was paid a starting salary of approximately $55,032.00, or $76,000.00 when

20

**FIRST AMENDED COMPLAINT**

accounting for inflation. Accordingly, this female Food and Beverage Director was paid less than her similarly situated male predecessor or the basis of her sex.

133.    Upon information and belief, male Food and Beverage Directors employed at Defendants' core Texas and Arizona properties—Omni Austin Downtown, Omni Austin Southpark, Omni Corpus Christi, Omni Dallas Park West, Omni Houston, Omni La Mansion, Omni Mandalay, Omni San Antonio, and Omni Tucson National Resort—as of January 2015, were paid an average starting salary of approximately $29,000.00 more than similarly situated female employees, when accounting for inflation.

134.    Defendants allegedly maintain a policy of only increasing an employee's pay by a maximum of 10% upon promotion. However, this policy is not enforced for male employees within the Food and Beverage department.

135.    Defendants rarely, if ever, enforced this "10%" policy for male employees within Defendants' Food and Beverage department who are promoted.

136.    Female Food and Beverage employees are/were restricted to a maximum of a 10% pay increase when they are/were promoted.

137.    Accordingly, Defendants compensated Pay Plaintiffs and Texas Pay Plaintiffs less than similarly situated male employees on the basis of their sex.

### 2.  *Promotions*

138.    As alleged above, Defendants intentionally fostered a corporate culture and practice of a male dominated workplace within their Food and Beverage department where males were openly given an advantage over similarly situated female employees when seeking promotional opportunities. As a result, male Food and Beverage supervisory employees were promoted at a significantly higher rate than similarly situated female employees.

**FIRST AMENDED COMPLAINT**

139.    Defendants implemented this unlawful promotion policy and practice by purposefully constructing barriers to prevent Promotion Plaintiffs and Texas Promotion Plaintiffs from seeking and/or receiving promotions.

140.    Defendants implemented this policy and practice through several different means. One of Defendants' unlawful promotional practice is/was disproportionally hiring males for their premier properties' supervisory Food and Beverage positions.

141.    For example, in or around 2014 at a Food and Beverage conference, Ms. Lindsley simply mentioned Defendants' new premier hotel property located in Louisville, Kentucky, to Mr. Morgan. Mr. Morgan immediately began to laugh at Ms. Lindsley and stated: "that's a joke; I told you that you are not going anywhere."

142.    A supervisory Food and Beverage employee employed at a premier property has significantly higher odds of receiving a promotion to a corporate position, such as Vice President, than a Food and Beverage supervisory employee employed at a lower-end property.

143.    As for another example, male Food and Beverage supervisory employees were given "shout outs" or company-wide performance recognition via a mass emails and/or a postings to Defendant Omni Hotels' website.

144.    "Shout outs" increased the likelihood that an employee would receive a promotion based upon the positive exposure and recognition it brought to the employee who was "shouted out."

145.    As for another example, as stated above, Defendants hosted company trips and/or retreats for Food and Beverage employee, where men were only frequently invited. The sexist selective invitations were designed to limit Promotion Plaintiffs' and Texas Promotion Plaintiffs'

22

**FIRST AMENDED COMPLAINT**

exposure to corporate employees who had a significant influence upon a Food and Beverage employee's promotional prospects.

146.    As for another example, Promotion Plaintiffs and Texas Promotion Plaintiffs were denied positions on committees in favor of similarly situated male employees. Committees, were responsible for organizing and managing things such as beverages, health, and promotional events.

147.    Being a committee member is beneficial to an employee as Defendants' corporate employees, who have significant influence over a Food and Beverage employee's prospects for promotion, view committee membership as a desirable qualification for advancement.

148.    Moreover, as stated above, Defendants fostered and maintained a corporate culture openly referred to as a "boys club."

149.    This "boys club" culture only exacerbated the barriers and obstacles all females faced in obtaining an equal opportunity for advancement and promotion.

150.    This "boys club" created a workplace where male employees became close knit with their male supervisor in the Food and Beverage department where they frequented bars and strip clubs together.  These men frequently objectified women as a club, whether they were female employees of Defendants or women then encountered during their outings.

151.    Male employees were regularly invited to these social events and females were excluded from events whether they were work-related or not.

152.    Accordingly, Defendants tactically and intentionally deprived Promotion Plaintiffs and Texas Promotion Plaintiffs of promotional opportunities by placing barriers and obstacles to advancement that that similarly situated male employees were not subjected too.

   **b.  *EPA Collective Facts***

153.    EPA Plaintiffs are all females.

**FIRST AMENDED COMPLAINT**

154.    EPA Plaintiffs are/were employed within Defendants Food and Beverage department as Food and Beverage Directors.

155.    EPA Plaintiffs were employed for Defendants throughout the relevant time period.

156.    EPA Plaintiffs are/were employed by Defendants throughout the United States for their various hotels.

157.    EPA Plaintiffs were subjected to Defendants' policies and practices of compensating female Food and Beverage Directors less than similarly situated male employees.

158.    Defendants' sole motive for compensating EPA Plaintiffs at a rate less than similarly situated male employees was because of gender.

159.    EPA Plaintiffs performed equal or more work when compared to the similarly situated male employees who earned more than them.

160.    EPA Plaintiffs were equally or more qualified for their positions than the similarly situated male employees who earned more than them.

161.    EPA Plaintiffs had equal or more tenure with Defendants than the similarly situated male employees who earned more than them.

162.    The decision to pay EPA Plaintiffs less than similarly situated male employees was not motivated by seniority, merit, quantity or quality of work, or any other factor other than sex.

163.    For example, Ms. Lindsley significantly improved Omni Corpus Christi's Food and Beverage revenue from a below average earning property to one of Defendants' top earning properties, but was still compensated less than similarly situated male employees who were employed at underperforming properties.

**FIRST AMENDED COMPLAINT**

164.     EPA Plaintiffs re-allege all relevant statistical facts and examples of male Food and Beverage Directors' pay compared to similarly situated female employees alleged in section II(a)(1), as if fully set forth herein.

165.     Accordingly, EPA Plaintiffs were compensated less than male Food and Beverage Directors because of their sex.

## RULE 23 CLASS ACTION ALLEGATIONS

### I.     TITLE VII PAY CLASS

166.     Ms. Lindsley additionally seeks to maintain this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of those who, during the relevant time period, were subjected to violations of Title VII ("Title VII Pay Class").

167.     The Class which Ms. Lindsley seeks to define includes:

> All females employed by Defendants in supervisory positions within the Food and Beverage department during the relevant time period, who have been subject to Defendants' policies of paying female Food and Beverage supervisory employees less than similarly situated male employees on the basis of their sex.

168.     The number of class members protected by Title VII and who have suffered under Defendants' violation of Title VII as set forth herein, are too numerous to join in a single action, necessitating class recognition.

169.     All questions relating to the Class's allegations under Title VII share a common factual basis with those raised by the claims of Ms. Lindsley.  No claims under Title VII relating to sex discrimination are specific to Ms. Lindsley or any proposed Title VII Pay Class member[1] and the claims of Ms. Lindsley are typical of those asserted by the proposed Title VII Pay Class.

---

[1]     Hereinafter referred the Title VII Pay Class Plaintiffs.

**FIRST AMENDED COMPLAINT**

170.    Ms. Lindsley will fairly and adequately represent the interests of all members of the proposed Title VII Pay Class.

171.    A class action is superior to all other methods of adjudication and is necessary in order to fairly and completely litigate the Class's allegations that Defendants violated Title VII by paying Ms. Lindsley and the Title VII Pay Class Plaintiffs less than similarly situated male employees on the basis of their sex.

172.    The class members of the proposed Title VII Pay Class are readily discernable and ascertainable.  Contact information for all members of the proposed Title VII Pay Class is readily available from Defendants since such information is likely to be contained in their personnel files. Notice of this class action can be provided by any means permissible under Fed. R. Civ. P. 23 requirements.

173.    Ms. Lindsley asserts these claims on her own behalf as well as on behalf of the Title VII Pay Class Plaintiffs through her attorneys who are experienced in class action litigation as well as employment litigation.

174.    Ms. Lindsley is able to fairly represent and properly protect the interests of the absent members of the proposed Title VII Pay Class and have no interests conflicting with those of the Class.

175.    The public will benefit from this case being brought as a class action because it serves the interests of judicial economy by saving the Court's time and effort and by reducing a multitude of claims to a single litigation.  Prosecution of separate actions by individual Title VII Pay Class Plaintiffs creates a risk of varying results based on identical fact patterns as well as disposition of the class's interests without their knowledge or contribution.

**FIRST AMENDED COMPLAINT**

176.     Because of the nature of these claims brought during the course of employment, class members are often fearful of filing claims against their employers and would benefit from Ms. Lindsley's willingness to proceed against Defendants.  The anonymity inherent in a class action suit further provides insulation against retaliation and/or undue stress and fear for the Title VII Pay Class Plaintiffs' jobs and continued employment.

177.      The questions of law and fact that are nearly identical for all class members make proceeding as class action ideal.  Without judicial resolution of the claims asserted on behalf of the proposed Title VII Pay Class, continued violations of Title VII will undoubtedly continue.

178.     Whether Ms. Lindsley and the Title VII Pay Class Plaintiffs were paid the same as similarly situated male employees is a common question which can readily be resolved through the class action process.

## II.     TITLE VII PROMOTION CLASS

179.     Ms. Lindsley additionally seeks to maintain this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of those who, during the relevant time period, were subjected to violations of Title VII ("Title VII Promotion Class").

180.      The Class which Ms. Lindsley seeks to define includes:

> All females employed by Defendants within the Food and Beverage department during the relevant time period, who have been subject to Defendants' policies of not providing them with the same promotional opportunities as similarly situated male employees.

181.     The number of class members protected by Title VII and who have suffered under Defendants' violation of Title VII as set forth herein, are too numerous to join in a single action, necessitating class recognition.

182.      All questions relating to the Class's allegations under Title VII share a common factual basis with those raised by the claims of Ms. Lindsley.  No claims under Title VII relating

**FIRST AMENDED COMPLAINT**

to sex discrimination are specific to Ms. Lindsley or any proposed Title VII Promotion Class member[2] and the claims of Ms. Lindsley are typical of those asserted by the proposed Title VII Promotion Class.

183.    Ms. Lindsley will fairly and adequately represent the interests of all members of the proposed Title VII Promotion Class.

184.    A class action is superior to all other methods of adjudication and is necessary in order to fairly and completely litigate the Class's allegations that Defendants violated Title VII by creating and fostering policies and a work environment that favors male employees by giving them an advantage when seeking promotional opportunities over similarly situated female employees.

185.    The class members of the proposed Title VII Promotion Class are readily discernable and ascertainable.  Contact information for all members of the proposed Title VII Promotion Class is readily available from Defendants since such information is likely to be contained in their personnel files.  Notice of this class action can be provided by any means permissible under Fed. R. Civ. P. 23 requirements.

186.    Ms. Lindsley asserts these claims on her own behalf as well as on behalf of Title VII Promotion Class Plaintiffs through her attorneys who are experienced in class action litigation as well as employment litigation.

187.    Ms. Lindsley is able to fairly represent and properly protect the interests of the absent members of the proposed Title VII Promotion Class and have no interests conflicting with those of the Class.

188.    The public will benefit from this case being brought as a class action because it serves the interests of judicial economy by saving the Court's time and effort and by reducing a

---

[2]        Hereinafter referred the Title VII Promotion Class Plaintiffs.

**FIRST AMENDED COMPLAINT**

multitude of claims to a single litigation.  Prosecution of separate actions by individual Title VII Promotion Class Plaintiffs creates a risk of varying results based on identical fact patterns as well as disposition of the class's interests without their knowledge or contribution.

189.   Because of the nature of these claims brought during the course of employment, class members are often fearful of filing claims against their employers and would benefit from Ms. Lindsley's willingness to proceed against Defendants.  The anonymity inherent in a class action suit further provides insulation against retaliation and/or undue stress and fear for the Title VII Promotion Class Plaintiffs' jobs and continued employment.

190.   The questions of law and fact that are nearly identical for all class members make proceeding as class action ideal.  Without judicial resolution of the claims asserted on behalf of the proposed Title VII Promotion Class, continued violations of Title VII will undoubtedly continue.

191.   Whether Ms. Lindsley and the Title VII Promotion Class Plaintiffs were given equal opportunity for advancement as compared to similarly situated male employees is a common question which can readily be resolved through the class action process.

## III.   TEXAS PAY CLASS

192.   Ms. Lindsley additionally seeks to maintain this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of those who, during the relevant time period, were subjected to violations of the TLC ("Texas Pay Class").

193.   The Class which Ms. Lindsley seeks to define includes:

> All females employed within the state of Texas by Defendants in supervisory positions for the Food and Beverage department during the relevant time period, who have been subject to Defendants' policies of paying female Food and Beverage supervisory employees less than similarly situated male employees on the basis of their sex.

29

**FIRST AMENDED COMPLAINT**

194.     The number of class members protected by the TLC and who have suffered under Defendants' violation of the TLC as set forth herein, are too numerous to join in a single action, necessitating class recognition.

195.     All questions relating to the Class's allegations under the TLC share a common factual basis with those raised by the claims of Ms. Lindsley.  No claims under the TLC relating to sex discrimination are specific to Ms. Lindsley or any proposed Texas Pay Class member[3] and the claims of Ms. Lindsley are typical of those asserted by the proposed Texas Pay Class.

196.     Ms. Lindsley will fairly and adequately represent the interests of all members of the proposed Texas Pay Class.

197.     A class action is superior to all other methods of adjudication and is necessary in order to fairly and completely litigate the Class's allegations that Defendants violated the TLC by paying Ms. Lindsley and the Texas Pay Class Plaintiffs less than similarly situated male employees on the basis of their sex.

198.     The class members of the proposed Texas Pay Class are readily discernable and ascertainable.  Contact information for all members of the proposed Texas Pay Class[4] is readily available from Defendants since such information is likely to be contained in their personnel files. Notice of this class action can be provided by any means permissible under Fed. R. Civ. P. 23 requirements.

199.     Ms. Lindsley asserts these claims on her own behalf as well as on behalf of the Texas Pay Class Plaintiffs through her attorneys who are experienced in class action litigation as well as employment litigation.

---

[3]     Hereinafter referred the Texas Pay Class Plaintiffs.

30

**FIRST AMENDED COMPLAINT**

200.    Ms. Lindsley is able to fairly represent and properly protect the interests of the absent members of the proposed Texas Pay Class and have no interests conflicting with those of the Class.

201.    The public will benefit from this case being brought as a class action because it serves the interests of judicial economy by saving the Court's time and effort and by reducing a multitude of claims to a single litigation.  Prosecution of separate actions by individual Texas Pay Class Plaintiffs creates a risk of varying results based on identical fact patterns as well as disposition of the class's interests without their knowledge or contribution.

202.    Because of the nature of these claims brought during the course of employment, class members are often fearful of filing claims against their employers and would benefit from Ms. Lindsley's willingness to proceed against Defendants.  The anonymity inherent in a class action suit further provides insulation against retaliation and/or undue stress and fear for the Texas Pay Class Plaintiffs' jobs and continued employment.

203.    The questions of law and fact that are nearly identical for all class members make proceeding as class action ideal.  Without judicial resolution of the claims asserted on behalf of the proposed Texas Pay Class, continued violations of the TLC will undoubtedly continue.

204.    Whether Ms. Lindsley and the Texas Pay Class Plaintiffs were paid the same as similarly situated male employees is a common question which can readily be resolved through the class action process.

**IV.    TEXAS PROMOTION CLASS**

205.    Ms. Lindsley additionally seeks to maintain this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of those who, during the relevant time period, were subjected to violations of the TLC ("Texas Promotion Class").

31

**FIRST AMENDED COMPLAINT**

206.     The Class which Ms. Lindsley seeks to define includes:

> All females employed within the state of Texas by Defendants for the Food and Beverage department during the relevant time period, who have been subject to Defendants' policies of not providing them with the same promotional opportunities as similarly situated male employees.

207.     The number of class members protected by the TLC and who have suffered under Defendants' violation of the TLC as set forth herein, are too numerous to join in a single action, necessitating class recognition.

208.     All questions relating to the Class's allegations under the TLC share a common factual basis with those raised by the claims of Ms. Lindsley.  No claims under the TLC relating to sex discrimination are specific to Ms. Lindsley or any proposed Texas Promotion Class member[5] and the claims of Ms. Lindsley are typical of those asserted by the proposed Texas Promotion Class.

209.     Ms. Lindsley will fairly and adequately represent the interests of all members of the proposed Texas Promotion Class.

210.     A class action is superior to all other methods of adjudication and is necessary in order to fairly and completely litigate the Class's allegations that Defendants violated the TLC by creating and fostering policies and a work environment that favors male employees by giving them an advantage when seeking promotional opportunities over similarly situated female employees.

211.     The class members of the proposed Texas Promotion Class are readily discernable and ascertainable.  Contact information for all members of the proposed Texas Promotion Class is readily available from Defendants since such information is likely to be contained in their

---

[5]     Hereinafter referred the Texas Promotion Class Plaintiffs.

**FIRST AMENDED COMPLAINT**

personnel files.  Notice of this class action can be provided by any means permissible under Fed. R. Civ. P. 23 requirements.

212.    Ms. Lindsley asserts these claims on her own behalf as well as on behalf of the Texas Promotion Class Plaintiffs through her attorneys who are experienced in class action litigation as well as employment litigation.

213.    Ms. Lindsley is able to fairly represent and properly protect the interests of the absent members of the proposed Texas Promotion Class and have no interests conflicting with those of the Class.

214.    The public will benefit from this case being brought as a class action because it serves the interests of judicial economy by saving the Court's time and effort and by reducing a multitude of claims to a single litigation.  Prosecution of separate actions by individual Texas Promotion Class Plaintiffs creates a risk of varying results based on identical fact patterns as well as disposition of the class's interests without their knowledge or contribution.

215.    Because of the nature of discrimination claims brought during the course of employment, class members are often fearful of filing claims against their employers and would benefit from Ms. Lindsley's willingness to proceed against Defendants.  The anonymity inherent in a class action suit further provides insulation against retaliation and/or undue stress and fear for the Texas Promotion Class Plaintiffs' jobs and continued employment.

216.    The questions of law and fact that are nearly identical for all class members make proceeding as class action ideal.  Without judicial resolution of the claims asserted on behalf of the proposed Texas Promotion Class, continued violations of the TLC will undoubtedly continue.

**FIRST AMENDED COMPLAINT**

217.    Whether Ms. Lindsley and the Texas Promotion Class Plaintiffs were given equal opportunity for advancement as compared to similarly situated male employees is a common question which can readily be resolved through the class action process.

## EPA COLLECTIVE ACTION ALLEGATIONS

218.    Ms. Lindsley seeks to bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on her own behalf as well as those in the following collective:

> All female Food and Beverage Directors employed by Defendants during the relevant time period, who have been subject to Defendants' policies of paying them less than male Food and Beverage Directors on the basis of their sex.

219.    At all relevant times, Ms. Lindsley was similarly situated to all such individuals in the EPA Collective because while employed by Defendants, Ms. Lindsley and all EPA Plaintiffs performed similar tasks, were subject to the same laws and regulations, were paid in the same or substantially similar manner, were paid the same or similar rate, were subject to Defendants' policies and practices of compensating female Food and Beverage Directors less than similarly situated male employees on the basis of their sex.

220.    Defendants are and have been aware of the requirement to Ms. Lindsley and the EPA Plaintiffs at a rate equal to their male counter parts, yet willfully chose not to do so.

221.    The EPA Plaintiffs, under Ms. Lindsley's EPA claim, are readily discernable and ascertainable. All EPA Plaintiffs' contact information is readily available in Defendants' records. Notice of this collective action can be made as soon as the Court determines.

222.    The number of EPA Plaintiffs in the collective are too numerous to join in a single action, necessitating collective recognition.

223.    All questions relating to Defendants' violation of the EPA share the common factual basis with Ms. Lindsley.  No claims under the EPA relating to the failure to pay to female

**FIRST AMENDED COMPLAINT**

Food and Beverage Directors are specific to Ms. Lindsley and the claims asserted by Ms. Lindsley are typical of those of members of the collective.

224.    Ms. Lindsley will fairly and adequately represent the interests of the collective and have no interests conflicting with the collective.

225.    A collective action is superior to all other methods and is necessary in order to fairly and completely litigate violations of the EPA.

226.    Ms. Lindsley's attorneys are familiar and experienced with collective and class action litigation, as well as employment and labor law litigation.

227.    The public will benefit from the case being brought as a collective action because doing so will serve the interests of judicial economy by reducing a multitude of claims to a single litigation.  Prosecution of separate actions by individual EPA Plaintiffs creates a risk for varying results based on identical fact patterns as well as disposition of the collective's interests without their knowledge or contribution.

228.    The questions of law and fact are nearly identical for all EPA Plaintiffs and therefore proceeding as a collective action is ideal.  Without judicial resolution of the claims asserted on behalf of the proposed collective, Defendants' continued violations of the EPA will undoubtedly continue.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, Made by Ms. Lindsley on Behalf of all Title VII Pay Class Plaintiffs
(Discrimination in Pay)**

229.    Ms. Lindsley and the Title VII Pay Class Plaintiffs are members of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

**FIRST AMENDED COMPLAINT**

230.     The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*,  as Defendants have engaged in the practice of discrimination against Ms. Lindsley and the Title VII Pay Class Plaintiffs.

231.     Defendants intentionally discriminated against Ms. Lindsley and the Title VII Pay Class Plaintiffs by subjecting them to discriminatory compensation, in violation of Title VII of the Civil Rights Act of 1964.

232.     Ms. Lindsley's and the Title VII Pay Class Plaintiffs' requests for relief are set forth below.

**AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF**
**The Equal Pay Act, 29 U.S.C. §§ 206(d) *et seq.*, Made by Ms. Lindsley on Behalf of all EPA**
**Plaintiffs**
**(Discrimination in Pay)**

233.     Ms. Lindsley and the EPA Plaintiffs repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

234.     Defendants discriminated against Ms. Lindsley and the EPA Plaintiffs on the basis of sex by paying them lower wages and other forms of compensation than Defendants paid to male employees for equal work on jobs, the performance of which require equal skill, effort, and responsibility, and which are performed under similar working conditions, in violation of the Equal Pay Act.

235.     Ms. Lindsley's and the EPA Plaintiffs' male predecessors and/or comparators held the exact same job, in the same establishment, performed equal work that required equal skill, effort, and responsibility, and the work was performed under the same conditions.

236.     The differential in pay between Ms. Lindsley's and the EPA Plaintiffs' male predecessors was not due to seniority, merit, quantity or quality of production, or a factor other than sex. Instead, the differential in pay was due to Plaintiff's sex.

36

**FIRST AMENDED COMPLAINT**

237.     Defendants' actions were not done in good faith nor did they have any reasonable grounds for believing that their acts or omissions were not a violation of the Equal Protection Act.

238.     Defendants' actions were willful and lasted for the duration of the relevant time periods.

239.     As a result, Ms. Lindsley and the EPA Plaintiffs are entitled to liquidated damages.

240.     Defendants' foregoing conduct also constitutes a willful violation of the Equal Pay Act within the meaning of 29 U.S.C. § 255(a), entitling Ms. Lindsley and the EPA Plaintiffs to recover damages for three (3) years before the date that this action was commenced pursuant to 29 U.S.C. § 255(a).

241.     Plaintiff's requests for relief are set forth below.

**AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF**
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, Made by**
**Ms. Lindsley on Behalf of all Title VII Promotion Class Plaintiffs**
**(Discriminatory Promotional Practices)**

242.     Ms. Lindsley and the Title VII Promotion Class Plaintiffs are members of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

243.     The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, as Defendants have engaged in the practice of discrimination against Ms. Lindsley and the Title VII Promotion Class Plaintiffs.

244.     Defendants intentionally discriminated against Ms. Lindsley and the Title VII Promotion Class Plaintiffs by creating and fostering policies and a work environment that favors male employees by giving them an advantage when seeking promotional opportunities over similarly situated female employees, in violation of Title VII of the Civil Rights Act of 1964.

37

**FIRST AMENDED COMPLAINT**

245.     Ms. Lindsley's and the Title VII Promotion Class Plaintiffs' requests for relief are set forth below.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*
### (Retaliation)

246.     Ms. Lindsley is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

247.     Ms. Lindsley lodged complaints with Defendants and the EEOC regarding the discrimination to which she was subjected, and as such engaged in protected activity under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*

248.     Ms. Lindsley lodged complaints with Defendants and the EEOC regarding the discrimination to which she was subjected under Title VII, and as such engaged in protected activity.

249.     In response, Defendants retaliated against Ms. Lindsley by subjecting her to threatening behavior, denying her access to work files, and altering her performance review, in addition to other retaliatory behavior, which culminated in Plaintiff's constructive discharge as a result of her complaints of unlawful employment practices.

250.     The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*

251.     Plaintiff's requests for relief are set forth below.

## AS AND FOR A FIFTH CAUSE OF ACTION FOR A VIOLATION OF
### The Equal Pay Act of 1963, 29 U.S.C. §§ 206, *et seq.*
### (Retaliation)

252.     Ms. Lindsley repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

**FIRST AMENDED COMPLAINT**

253.     Ms. Lindsley lodged complaints with Defendants and the EEOC regarding the discrimination to which she was subjected under the EPA, and as such engaged in protected activity.

254.     In response, Defendants retaliated against Ms. Lindsley by subjecting her to threatening behavior, denying her access to work files, and altering her performance review, in addition to other retaliatory behavior, which culminated in Plaintiff's constructive discharge as a result of her complaints of unlawful employment practices.

255.     The conduct alleged herein violates The Equal Pay Act of 1963, 29 U.S.C. §§ 206, *et seq.*

256.     Plaintiff's requests for relief are set forth below.

### AS AND FOR A SIXTH CAUSE OF ACTION FOR A VIOLATION OF
**Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq*., as amended**
**(FMLA Retaliation)**

257.     Ms. Lindsley repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

258.     In response to Plaintiff's requests for medical leave pursuant to the FMLA, Defendants retaliated against Plaintiff.

259.     Defendants' retaliatory acts included but were not limited to threatening termination and the loss of accrued paid-time off, subjecting Ms. Lindsley to a hostile work environment, and causing Plaintiff's constructive discharge.

260.     The conduct alleged herein violates the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq*., because Defendants have engaged in the practice of retaliating against Ms. Lindsley by subjecting her to adverse employment actions because she exercised rights protected by the FMLA.  29 U.S.C. §§ 2615(a)(2).

**FIRST AMENDED COMPLAINT**

261.     Plaintiff's requests for relief are set forth below.

## AS AND FOR A SEVENTH CAUSE OF ACTION FOR A VIOLATION OF
**Title 2 of the Texas Labor Code, Tex. Lab. Code §§ 21.001 *et seq*., Made by Ms. Lindsley on Behalf of all Texas Pay Class Plaintiffs
(Discrimination in Pay)**

262.     Ms. Lindsley and the Texas Pay Class Plaintiffs are members of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

263.     The conduct alleged herein violates Title 2 of the Texas Labor Code, Tex. Lab. Code §§ 21.001 *et seq.*, as Defendants have engaged in the practice of discrimination against Ms. Lindsley and the Texas Pay Class Plaintiffs

264.     Defendants intentionally discriminated against Ms. Lindsley and the Texas Pay Class Plaintiffs  by subjecting them to discriminatory compensation, in violation of Title 2 of the Texas Labor Code, Tex. Lab. Code §§ 21.001 *et seq.*

265.     Plaintiff's requests for relief are set forth below.

## AS AND FOR AN EIGHTH CAUSE OF ACTION FOR A VIOLATION OF
**Title 2 of the Texas Labor Code, Tex. Lab. Code §§ 21.001 *et seq*., Made by Ms. Lindsley on Behalf of all Texas Pay Class Plaintiffs
(Discriminatory Promotional Practices)**

266.     Ms. Lindsley and the Texas Promotion Class Plaintiffs are members of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

267.     The conduct alleged herein violates Title 2 of the Texas Labor Code, Tex. Lab. Code §§ 21.001 *et seq.*, as Defendants have engaged in the practice of discrimination against Ms. Lindsley and the Texas Promotion Class Plaintiffs.

**FIRST AMENDED COMPLAINT**

268.     Defendants intentionally discriminated against Ms. Lindsley and the Texas Promotion Class Plaintiffs by creating and fostering policies and a work environment that favors male employees by giving them an advantage when seeking promotional opportunities over similarly situated female employees, in violation of Title 2 of the Texas Labor Code, Tex. Lab. Code §§ 21.001 *et seq.*

269.     Ms. Lindsley's and the Texas Promotion Class Plaintiffs' requests for relief are set forth below.

### AS AND FOR A NINETH CAUSE OF ACTION FOR A VIOLATION OF
**Title 2 of the Texas Labor Code, Tex. Lab. Code §§ 21.001 *et seq*.**
**(Retaliation)**

270.     Ms. Lindsley repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

271.     Ms. Lindsley lodged complaints within the meaning and scope of Title 2 of the Texas Labor Code, Tex. Lab. Code §§ 21.001 *et seq.* regarding the discrimination to which she was subjected.

272.     In response, Defendants retaliated against Ms. Lindsley by subjecting her to threatening behavior, denying her access to work files, and altering her performance review, in addition to other retaliatory behavior, which culminated in Plaintiff's constructive discharge as a result of her complaints of unlawful employment practices.

273.     Defendants' actions are in direction violation of Title 2 of the Texas Labor Code, Tex. Labor Code §§ 21.001 *et seq.*

274.     Plaintiff's requests for relief are set forth below.

**FIRST AMENDED COMPLAINT**

## PRAYER FOR RELIEF

**WHEREFORE**, Ms. Lindsley, on behalf of herself and all Class and Collective Plaintiffs, prays for the following relief:

275.     That the practices of the Defendants complained of herein be determined and adjudged to be in violation of the rights of Ms. Lindsley under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, and the Lilly Ledbetter Fair Pay Act of 2009, 42 U.S.C. §§ 2000e *et seq.*; the Equal Pay Act of 1963, 29 U.S.C. §§ 206(d) *et seq.*; the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*; Title 2 of the Texas Labor Code, Tex. Lab. Code §§ 21.001 *et seq.*; and any other cause(s) of action that can be inferred from the facts set forth herein;

276.     At the earliest possible time, Ms. Lindsley should be allowed to give notice of this collective action, or the Court should issue such notice, to all members of the purported collectives, defined herein.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they paid less than similarly situated male employees on the basis of their sex.

277.     Designation of Ms. Lindsley as representative of the EPA Collective and Rule 23 Classes defined herein, and Ms. Lindsley's counsel as Class and Collective Counsel;

278.     Certification of this action as a class action pursuant to Fed. R. Civ. P. 23 for the purposes of the claims brought on behalf of all proposed Class members

279.     All damages which Ms. Lindsley and Plaintiffs have sustained as a result of Defendants' conduct, including back pay, front pay, liquidated damages, punitive damages, general and special damages for lost compensation and job benefits she would have received but for Defendants' unlawful and retaliatory conduct;

42

**FIRST AMENDED COMPLAINT**

280.     An award to Ms. Lindsley and Plaintiffs of compensatory damages, including but not limited to damages for emotional distress, humiliation, embarrassment, and anguish;

281.     An award to Ms. Lindsley and Plaintiffs of pre-judgment interest at the highest level rate, from and after the date of service of the initial complaint in this action on all owed wages from the date such wages were earned and due;

282.     An award representing Defendants' share of FICA, FUTA, state unemployment insurance and any other required employment taxes;

283.     Awarding Ms. Lindsley  her costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

284.     Post-judgment interest, as provided by law; and

285.     That the Court retain jurisdiction over Defendants until such time as it is satisfied that it has remedied the practices complained of and is determined to be in full compliance with the law;

 Ms. Lindsley seeks injunctive relief, including but not limited to:

a.     Training on the subject of wage discrimination for all of Defendants' employees;

b.     Supervisory discipline up to and including termination for any supervisor who engages in unlawful discrimination;

c.     Monitoring by the Court or a Federal Agency to ensure that Defendants comply with all injunctive relief; and

Ms. Lindsley further demands that she be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

**FIRST AMENDED COMPLAINT**

Respectfully submitted,

_____

Jay D. Ellwanger
Texas State Bar No. 24036522
jellwanger@equalrights.law
Holt M. Lackey (admission pending)
Texas State Bar No. 24047763
hlackey@equalrights.law
**Ellwanger Law LLLP**
400 South Zang Boulevard
Suite 1015
Dallas, Texas  75208
Telephone:  (737) 808-2260
Facsimile:   (737) 808-2262

**Of Counsel:**

James A. Vagnini, admitted *pro hac vice*
jvagnini@vkvlawyers.com
Monica Hincken, admitted *pro hac vice*
mhincken@vkvlawyers.com
**Valli Kane &Vagnini, LLP**
600 Old Country Road, Suite 519
Garden City, New York 11530
Telephone: (516) 203-7180
Facsimile: (516) 706-0248

*Counsel for Plaintiffs*

44

**FIRST AMENDED COMPLAINT**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 21st day of December 2017, with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3).

_____

Jay D. Ellwanger

**FIRST AMENDED COMPLAINT**