UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SARAH LINDSLEY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:17-cv-02942-X |
| | § | |
| TRT HOLDINGS, et. al, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

The plaintiff in this action, Sarah Lindsley, alleges the defendants TRT Holdings, Inc. ("TRT") and Omni Hotel Management Corp., Inc. ("Omni") violated Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 and the Lily Ledbetter Fair Pay Act of 2009 ("Title VII"), the Equal Pay Act of 1963 ("Equal Pay Act"), Title II of the Texas Labor Code ("Texas Labor Code"), and the Family and Medical Leave Act ("FMLA"). Omni and TRT move for summary judgment to dismiss all of Sarah Lindsley's claims with prejudice. Lindsley is suing TRT in its capacity as Omni's parent corporation and so she does not raise any independent claims against TRT. The Court concludes that, viewing the evidence in the light most favorable to Lindsley, Omni has shown there is no genuine dispute of material fact and is entitled to a judgment on Lindsley's claims as a matter of law. As no independent claims have been brought against TRT, the Court will permit TRT to file an amended motion for summary judgment in light of this ruling.

1

Therefore, the Court **GRANTS** Omni's motion for summary judgment [Doc. No. 73] and **DISMISSES WITH PREJUDICE** Lindsley's claims against Omni. Taking this ruling into consideration, the Court also permits TRT to file an amended motion for summary judgment within 14 days of the issuance of this order.

## I.

Lindsley started her career at Omni as a fine dining server at Omni Tucson National Resort in Arizona at approximately February 14, 2001. Working her way up at Tucson National Resort, Lindsley was first promoted to an hourly supervisor within Tucson National's Food and Beverage Division in 2007, then to the Food and Beverage Division's outlet manager position in 2008, and lastly to Tucson National's General Manager position at Bob's Steak and Chop House in 2009. In 2010, Lindsley applied, and received an offer, to be the Assistant Director of the Food and Beverage Division at the Omni hotel location in Corpus Christi. Although initially rejecting the offer, Lindsley wound up accepting it and moved to Corpus Christi in June 2010. In July 2011, Omni Corpus Christi's Food and Beverage Director, Daniel Cornelius, resigned and Lindsley was asked to take on the role. Lindsley accepted the offer and was given a salary of $64,000. Lindsley provides undisputed evidence that her starting salary as a Food and Beverage Director was below Cornelius's starting salary of $82,500 and below the starting salaries of two of Cornelius's male predecessors, Jason Pollard and Robert Walker, who started with $77,000 and $75,000 respectively.

Years later, in 2015, Lindsley interviewed for the Food and Beverage Director position at Omni Houston. Lindsley alleges the interview went so well that the Houston Human Resources Director started discussing salary, relocation, and an

offer letter. However, during the final interview, Lindsley alleges Omni Houston's General Manager, Barry Sondern, informed her that David Morgan, Omni's Food & Beverage Vice President,[1] told him that he did not think Lindsley was qualified for the position. After the interview, Lindsley talked to Corpus Christi Human Resources Director Susan Gilbert who suggested she withdraw her name from consideration if the interview went as poorly as Lindsley described. Lindsley subsequently withdrew her name from consideration. After she did so, Sondern met with her in person and asked her to reconsider her withdrawal. Lindsley refused.

On September 23, 2015, Lindsley filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was later forwarded to Omni Corpus Christi. Lindsley alleges an open envelope with the charge was put on her desk. Lindsley alleges several retaliatory actions by Omni Corpus Christi's General Manager followed suit, including holding meetings with Lindsley's team without her, repeatedly ostracizing Lindsley, reducing her team's review scores, implementing a menu promotion without consulting her, and yelling at her in her office after she reported this alleged retaliatory behavior.

On January 26, 2016, Lindsley met with Gilbert to discuss the possibility of taking FMLA leave. Lindsley alleges Gilbert mistakenly told her she was a critical employee and so could not take leave without losing her position and forfeiting all her paid time off. Lindsley alleges Gilbert later corrected her mistake and told Lindsley

---

[1] Lindsley in her second amended complaint alleges that Morgan has repeatedly harassed her throughout her career.
[2] FED. R. CIV. P. 56(a).

she could take FMLA leave without losing her position. Lindsley took her medical leave in March 2016 and returned in April 2016. Upon her return, Lindsley alleges Omni retaliated against her again. This time, Lindsley states that when she returned, every document she had saved on her computer was deleted. The IT department told her the documents were not recoverable. Additionally, the day she came back in April 2016, the General Manager reduced Lindsley's annual review rating from 5 to 3. Her reviews of her staff were subsequently reduced as well without her consent. As a result of the culmination of these alleged slights, Lindsley took FMLA leave in May 2016 and left Omni in June 2016.

On October 25, 2017, Lindsley filed her initial complaint [Doc. No. 1]. She has subsequently amended her complaint to include class claims, with the current operating complaint being her second amended complaint filed on July 12, 2018 [Doc. No. 33]. In her second amended complaint, Lindsley alleges the defendants TRT and Omni violated Title VII, the Equal Pay Act, and the Texas Labor Code by engaging in promotion and pay discrimination against her on the basis of sex and retaliating against her when she reported these actions to the EEOC. Lastly, Lindsley alleges the defendants violated the FMLA by retaliating against her for seeking and taking medical leave. Lindsley moved to certify the class on October 10, 2018, which the Court denied on July 1, 2019 [Doc. Nos. 49 & 111]. Thus, Lindsley's claims only apply to legal harms she has suffered individually.

## II.

Before the Court is TRT Holding and Omni's motions for summary judgments [Doc. Nos. 70 & 73]. Summary judgment is appropriate only if, viewing the evidence

in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] "A fact is material if it 'might affect the outcome of the suit'" and "[a] factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[3]

### III.

### A.

Omni argues in its motion for summary judgment that Lindsley has failed to show it discriminated against her under Title VII or the Texas Labor Code by failing to promote her to the Food and Beverage Director position at the Omni Houston location.[4] The Court agrees. Without a showing of such discrimination, Lindsley has failed to raise a genuine dispute of material fact against Omni under the Federal Rule of Civil Procedure 56(a) summary judgment standard.

Lindsley seeks to show promotion discrimination through circumstantial evidence. Thus, under Title VII, Lindsley's claim is subject to the burden-shifting framework elucidated in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973). The Fifth Circuit and the Texas Supreme Court have established that this framework also applies for discrimination suffered under the Texas Labor Code, which was

---

[2] FED. R. CIV. P. 56(a).

[3] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (alteration in original) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[4] For her promotion discrimination claims, Lindsley cites 42 U.S.C. §§ 2000e *et seq.* under Title VII and Tex. Lab. Code Ann. §§ 21.001 *et seq.*

designed to execute Title VII.[5]

Under the *McDonnell* framework for promotion discrimination, Lindsley has the initial burden to establish a *prima facie* case of discrimination—she must produce evidence that: (1) she was a member of a protected class; (2) she was qualified for the position sought; (3) she was rejected for the position; and (4) the position sought was filled by someone outside the protected class.[6] Implicit in element (3) is the idea that a plaintiff that voluntarily withdraws from consideration for promotion cannot later complain of discrimination.[7]

The *prima facie* case, once established, creates a presumption of discrimination and the burden then shifts to Omni to articulate a legitimate, non-discriminatory reason for the adverse employment action. If Omni articulates a legitimate, non-discriminatory reason for the termination, the burden shifts back to Lindsley who then must put forward evidence rebutting Omni's nondiscriminatory reasons.[8] Lindsley may do so under one of two alternatives: the pretext alternative or the mixed-motives alternative.[9]

Under the pretext alternative, Lindsley must produce evidence sufficient to create a genuine dispute of material fact that the proffered explanation was a pretext

---

[5] Tex. Lab. Code § 21.001(1); *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 764 n.5 (Tex. 2018); *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 259 (5th Cir.2011) (applying the *McDonnell Douglas* framework to a Texas Labor Code claim).

[6] *See Stringer v. N. Bolivar Consol. Sch. Dist.*, 727 F. App'x 793, 803 (5th Cir. 2018).

[7] *McDonald v. Mentor 4, Inc.*, 2007 WL 9717288, at *4 (N.D. Tex. Feb. 1, 2007).

[8] *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

[9] *Id.*

for discrimination.[10]  She may also provide evidence that the proffered explanation is false or unworthy of credence.[11]  Under the mixed-motives alternative, Lindsley must offer sufficient evidence to create a genuine dispute of material fact that Omni's reason, while true, was only one of the reasons for its conduct, and another "motivating factor" was Lindsley's protected characteristic, her sex.[12]

Lindsley falls short of establishing her *prima facie* case because she cannot show that she was ever rejected for the Omni Houston Food and Beverage Director position under element (3).  Lindsley cannot show rejection because she withdrew her name from consideration after her final interview with Sonder from Omni Houston. In withdrawing herself from consideration, it was not possible for her to have been rejected.  A plaintiff that voluntarily withdraws from consideration for promotion cannot complain of employment discrimination.[13]  What's more, even after Lindsley's withdrawal, Sonder went out of his way to meet with her in person to urge her to reconsider, which she refused to do.  Lindsley's own testimony, although reflecting her reservations, also illustrates that she understood she would have been given the offer if she reconsidered: "I felt at that point that he was being forced to take me and I want to earn my promotions on my own merits[.]"[14]  Not only did Lindsley withdraw herself from consideration, but she refused to reconsider, even when she understood

---

[10] *Id.*

[11] *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

[12] *Rachid*, 376 F.3d at 312.

[13] *McDonald*, 2007 WL 9717288, at *4.

[14] Appendix to Lindsley's Response to Omni's Motion for Summary Judgment p.19 [Doc. No. 87].

that doing so would likely have led to her receiving the offer. In short, it was not Omni who rejected Lindsley, but Lindsley who rejected Omni. And Title VII and the Texas Labor Code do not impose liability on employers when employees reject them.

Lindsley's counterarguments do not pass muster. Lindsley contends that she was actually rejected during her interview with Sonder, who she alleges told her that David Morgan did not see her as qualified. She further argues that she only withdrew her name from consideration after talking to Human Resources Director Gilbert, who suggested she do so if the interview went as poorly as Lindsley described. First, nothing in Lindsley's interview indicated that Sondern had rejected her for the position. Taking Lindsley's testimony of what happened at the interview as true, the interview at most illustrates that Sondern had reservations about giving her the position due to Morgan's comments. But expressing reservations do not constitute a rejection. Sonder never removed her name from consideration or otherwise expressly rejected her. Second, taking Lindsley's testimony as true regarding her conversation with Gilbert, Gilbert at most only suggested she withdraw her name. In no way does Lindsley's testimony show Gilbert required or otherwise threatened Lindsley to do so. Lindsley, exercising her own judgment, decided to withdraw her name.

Because Lindsley was never rejected for the promotion, Lindsley has failed to establish her *prima facie* case for discrimination under Title VII and the Texas Labor Code. In failing to establish her *prima facie* case, Lindsley also fails to raise a genuine dispute of material fact as to her promotion discrimination claims under Federal Rule of Civil Procedure 56(a). Thus, the Court **GRANTS** Omni's motion for summary judgment on Lindsley's promotion discrimination claims and **DIMISSES** these

claims **WITH PREJUDICE**.

B.

Omni's summary judgment motion also contends Lindsley has failed to show Omni violated the Equal Pay Act, Title VII, and the Texas Labor Code by discriminating against Lindsley for not paying her an equal salary to men working in similar positions.[15] The Court agrees here too. Without a showing of pay discrimination, Lindsley has failed to raise a genuine dispute of material fact under the Federal Rule of Civil Procedure 56(a) summary judgment standard.

Pay discrimination under the Equal Pay Act, pursuant to 29 U.S.C. § 206(d)(1), prohibits employers from paying employees of one sex more wages than employees of the other sex in an establishment for equal work "on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions[.]" The applicable interpretive federal regulations define an "establishment" as "a distinct physical place of business rather than to an entire business or 'enterprise' which may include several separate places of business."[16] The regulations elaborate that only in "unusual circumstances" will two distinct physical locations of a business enterprise be considered a single establishment.[17] For instance, a single establishment will exist when "a central administrative unit . . . hire[s] all employees, set[s] wages, and assign[s] the location of employment;

---

[15] For her pay discrimination claims, Lindsley cites 42 U.S.C. §§ 2000e *et seq.* under Title VII, 29 U.S.C. §§ 206(d) *et. seq.* under the Equal Pay Act and Tex. Lab. Code Ann. §§ 21.001 *et seq.* under the Texas Labor Code.

[16] 29 C.F.R. § 1620.9.

[17] *Id.*

employees may frequently interchange work locations; and daily duties may be virtually identical and performed under similar working conditions."[18]

To establish a *prima facie* case under the Equal Pay Act, Lindsley must show "(1) that her employer is subject to the Act; (2) that she performed work in a position requiring equal skill, effort and responsibility under similar working conditions; and (3) that she was paid less than members of the opposite sex."[19]  To establish equal work in element (2), Lindsley will need to "prove that the 'skill, effort, and responsibility' required in the performance of the jobs is 'substantially equal.'"[20]  In doing so, Lindsley must compare "her skill, effort, responsibility and salary with a person who is or was similarly situated."[21]  The applicable regulations further clarify that actual job requirements and performance, and not job classifications or titles, are controlling.[22]  At this stage, Lindsley has both the burden of production and persuasion.[23]  If Lindsley meets her *prima facie* case, the burden of production and persuasion will shift to Omni, who must show that the pay differential was made pursuant to any of four affirmative defenses: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."[24]

---

[18] *Id.* (alteration of original).

[19] *Jones v. Flagship Int'l*, 793 F.2d 714, 722–23 (5th Cir. 1986).

[20] *Id.* at 723.

[21] *Id.*

[22] 29 C.F.R. 1620.13(a), (e).

[23] *Jones*, 793 F.2d at 722.

[24] 29 U.S.C. § 206(d)(1); *Jones*, 793 F.2d at 722 (applying the affirmative defenses to an employer).

Pay discrimination under Title VII and the Texas Labor Code, although similar to the Equal Pay Act test, has some differences. Under Title VII, 42 U.S.C. § 2000e-2(a)(1) prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin[.]" As with her promotion discrimination claims, Lindsley here too relies on circumstantial evidence to establish discrimination, and so the *McDonnell Douglas* burden-shifting framework applies.[25] Moreover, as noted in Part II.A., the standard for discrimination under the Texas Labor Code is identical to the Title VII standard.[26]

To establish a *prima facie* case of discrimination under Title VII, Lindsley has the burden of production and persuasion to show that she was (1) a member of a protected class and (2) paid less than a non-member for work requiring substantially the same responsibility.[27] Under element (2), Lindsley must show that her circumstances are "nearly identical to those of a better-paid employee who is not a member of the protected class."[28] If Lindsley meets her *prima facie* case, Omni has the burden of production to show a legitimate, non-discriminatory reason for the pay disparity.[29] For pay discrimination claims, non-discriminatory reasons consists of

---

[25] *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012)).

[26] *Id.*

[27] *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008); *Jones*, 793 F.2d at 722.

[28] *Taylor*, 554 F.3d at 522.

[29] *Id.*; *Jones*, 793 F.2d at 722.

the four affirmative defenses listed in section 206(d)(1) of the Equal Pay Act: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."[30]  If Omni meets its burden, the burden shifts back to Lindsley, who has the burden of persuasion to show Omni's reasons are pretextual.[31]

Lindsley, for her claims under the Equal Pay Act, lists as pay comparators male Food and Beverage Directors from other Omni locations.  For her claims under the Equal Pay Act, Title VII, and the Texas Labor Code, Lindsley lists as pay comparators her immediate predecessor Cornelius and two of his male predecessors, Jason Pollard and Robert Walker.  For the reasons listed below, none of these comparators can be used for her pay discrimination claims under the Equal Pay Act, Title VII, and the Texas Labor Code.

Under the Equal Pay Act, the Food and Beverage Directors from the other Omni locations are not part of the "establishment" Lindsley worked at, Omni Corpus Christi, and so none of these Directors can be used as pay comparators.  Omni Corpus Christi is a "distinct physical place of business" under section 1620.9(a) and the unusual circumstances in which multiple physical locations would consist of a single establishment does not apply here.  An example where the Fifth Circuit found multiple locations to be a single establishment, *Marshall v. Dallas Independent School District*, had very unique facts not present here.  605 F.2d 191, 194 (5th Cir.

[30] 29 U.S.C.A. § 206(d)(1); *Siler-Khodr v. Univ. of Texas Health Sci. Ctr. San Antonio*, 261 F.3d 542, 546 (5th Cir. 2001).

[31] *Taylor*, 554 F.3d at 522; *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1136 (5th Cir. 1983).

1979).  In *Marshall*, the Fifth Circuit looked at whether a school district violated the Equal Pay Act by paying female custodial employees more than male custodial employees.[32]  The Fifth Circuit found all the schools in the defendant school district to be part of a single establishment because the school district's functions were highly centralized.[33]  In reaching its conclusion, the Fifth Circuit detailed how wages were set in a single wage agreement, all hiring was done by a general supervisor working out of a central administration office, and there was no differentiation in pay based on where the employees worked.[34]

Here, Lindsley's evidence, taken as true, shows that Omni corporate's influence over its member locations is limited.  Lindsley's evidence on who makes salary determinations for Food and Beverage Directors shows that officers from the Omni member locations have a say in determining their Food and Beverage Director's salary.  Additionally, Lindsley's list of pay comparators, constituting Food and Beverage Directors across various Omni member locations, shows only two of the Food and Beverage Directors had the same starting salaries, which establishes pay differentiation among employees with the same classification.  Lastly, even taking as true Lindsley's allegation that Morgan from Omni corporate had some say over her hiring at Omni Houston, the fact that Sonder was the last person she interviewed, and not someone from Omni corporate, and the fact that Sonder was the person who would have given her the offer and went against Morgan's recommendation illustrate

---

[32] 605 F.2d at 193.

[33] *Id.* at 194.

[34] *Id.*

that Omni hotels have significant autonomy in employment decisions. All of the aforementioned practices by Omni are a far cry from the *Marshall* school district's practices of having a single wage agreement, directly hiring through a centralized office, and having no pay differentiation among employees. For these reasons, Lindsley has failed to show that a single establishment encompasses more than Omni Corpus Christi. Consequently, none of the Food and Beverage Directors from other Omni locations are eligible pay comparators for Lindsley's Equal Pay Act claim.

Next, under the Equal Pay Act, Title VII, and the Texas Labor Code, Lindsley has failed to establish a *prima facie* case with regards to including Cornelius's two predecessors, Pollard and Walker, as pay comparators. As such, Lindsley may not use Walker and Pollard as pay comparators for her pay discrimination claims. Under the Equal Pay Act, Lindsley, to make her *prima facie* case, has the burden of persuasion and production to show that she performed work in a position requiring equal skill, effort, and responsibility as someone in similar working conditions.[35] Similarly, under Title VII and the Texas Labor Code, Lindsley, to make her *prima facie* case, must show that her circumstances are "nearly identical to those of a better-paid employee who is not a member of the protected class."[36] Lindsley provides no evidence that her job as Food and Beverage Director was in any way similar to Pollard and Walker's jobs, aside from the fact that they all shared the same job title. Section 1620.13(a) and (e) under the Equal Pay Act state that job classifications and titles

---

[35] *Jones*, 793 F.2d at 722–23.

[36] *Taylor*, 554 F.3d at 522.

are not enough to show equal work and that the actual job content is controlling.  As Title VII and the Equal Pay Act are to be read harmoniously, this same rationale applies to Title VII's *prima facie* standard, which is identical to the Texas Labor Code's standard.[37]  In failing to meet the *prima facie* standards for the Equal Pay Act, Title VII, and the Texas Labor Code, Lindsley cannot include Pollard and Walker as pay comparators for her pay discrimination claims.

The remaining claimed comparator is Cornelius.  Under the Equal Pay Act, Title VII and the Texas Labor Code, Lindsley has failed to show Cornelius was paid more than her for legitimate, non-discriminatory reasons.  Omni does not dispute that Lindsley has met her *prima facie* case as to Cornelius for her pay discrimination claims—and for good reason.  The record reflects that Lindsley worked with Cornelius for a year as the Assistant Director of Food and Beverage at Omni Corpus Christi and took over the position once he resigned.  At the time of his hiring as Food and Beverage Director in 2009, Cornelius's salary was $82,500 while Lindsley's salary at the time of her hiring in 2011 was $70,851.

The issue here is whether Omni meets its burden to explain why Cornelius's initial salary was higher than Lindsley's initial salary.  In meeting its burden, Omni must establish, under The Equal Pay Act, Title VII, and the Texas Labor Code, that Cornelius's initial salary was higher than Lindsley's due to one of the four Equal Pay Act affirmative defenses.  Omni argues, and provides evidence showing, that prior to his working at Omni, Cornelius had more than 15 years of director-level management

---

[37] *Orr v. Frank R. MacNeill & Son, Inc.*, 511 F.2d 166, 170 (5th Cir. 1975).

experience (12 of which were at Marriott Hotels), and 14 years of experience as a general manager and owner of his own business. Omni initially hired Cornelius as Director of Catering and Conference Services at Omni Houston in September 2007 and was subsequently promoted two years later to Food and Beverage Director at Omni Corpus Christi. In contrast, Omni argues, and Lindsley does not dispute, that she had no prior director-level hotel experience before assuming her role as Food and Beverage Director in Corpus Christi.

The Court holds that Omni has met its burden of production and persuasion by establishing its affirmative defense that it paid Cornelius a higher salary based on a factor other than sex. In this case, Omni has shown that Cornelius's extensive director-level management experience was a non-discriminatory reason for it to give Cornelius a higher initial salary than Lindsley. This finding is consistent with Fifth Circuit precedent, which has found "different skill levels, previous training, and experience" to be non-discriminatory reasons for differences in pay.[38] Under the Equal Pay Act, once Omni has established its burden, the inquiry ends there. So, Lindsley cannot use Cornelius as a pay comparator under the Equal Pay Act. However, under Title VII and the Texas Labor Code, Lindsley still has the burden of persuasion to prove Omni's reasons are pretextual. Lindsley has failed to meet her burden. Lindsley argues that Cornelius's experience was in sales and was not relevant to the food and beverage industry, which she alleges Cornelius had no experience in. Omni counters that director-level management experience was the

---

[38] *Pouncy v. Prudential Ins. Co. of Am.*, 668 F.2d 795, 803 (5th Cir. 1982).

relevant experience for their salary decisions. So long as Omni's metrics for hiring are not discriminatory, as is the case here, this Court, like other courts, declines to substitute its judgment for Omni's.[39] Lindsley does not give sufficient evidence to raise a genuine dispute of material fact as to whether Omni's non-discriminatory reason for giving Sonder a higher salary (extensive prior director level experience) was pretextual. Lindsley has therefore failed to meet her burden of persuasion under Title VII and the Texas Labor Code and may not use Cornelius as a pay comparator under these laws.

Because Lindsley has failed to meet her burden to show a violation of the Equal Pay Act, Title VII, or the Texas Labor Code for not paying her an initial salary equal to a pay comparator, Lindsley fails to raise a genuine dispute of material fact as to her pay discrimination claims under Federal Rule of Civil Procedure 56(a). Thus, the Court **GRANTS** Omni's motion for summary judgment on Lindsley's pay discrimination claims and **DIMISSES** these claims against Omni **WITH PREJUDICE**.

## C.

Lastly, Omni's summary judgment motion alleges Lindsley has failed to show a violation of the Equal Pay Act, Title VII, and the Texas Labor Code by retaliating against Lindsley for filing a charge of discrimination with the EEOC (hereinafter collectively referred to as "EEOC retaliation claims") and violated the FMLA by retaliating against Lindsley for requesting and taking medical leave. The Court agrees. Without a showing of retaliation, Lindsley has failed to raise a genuine

---

[39] *E.E.O.C. v. TXI Operations, L.P.*, 394 F. Supp. 2d 868, 879 (N.D. Tex. 2005).

dispute of material fact under the Federal Rule of Civil Procedure 56(a) summary judgment standard.

Courts analyze retaliation claims under the Equal Pay Act, Title VII, Texas Labor Code, and the FMLA pursuant to the *McDonnell Douglas* burden-shifting framework.[40] Under this framework, Lindsley must make a *prima facie* case of retaliation by demonstrating that "(1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action."[41] If Lindsley establishes her *prima facie* case, the burden shifts to Omni to state a legitimate, non-retaliatory reason for the employment action.[42] If Omni meets its burden, the final burden shifts back to Lindsley to show Omni's stated reason is actually a pretext for unlawful retaliation.[43] In establishing a *prima facie* case, a subjective belief of discrimination,

---

[40] Retaliation is prohibited under the Equal Pay Act, Title VII, and the FMLA pursuant to 29 U.S.C.A. § 215(a)(3), 42 U.S.C.A. § 2000e-3(a), and 29 U.S.C. § 2615(a), respectively. The Fifth Circuit in *Gorman v. Verizon Wireless Texas, L.L.C.* stated the substantive law governing Title VII and the Texas Labor Code retaliation claims are identical. 753 F.3d 165, 170 (5th Cir. 2014). So, section 2000e-3(a) also serves as the statutory test for retaliation for the Texas Labor Code. The Fifth Circuit and various district courts have held the *McDonnell Douglas* burden-shifting framework applies to all four of these statutes. *See Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016) (applying the *McDonnell Douglas* framework to the FMLA); *Gorman*, 753 F.3d, at 170–71 (applying the *McDonnell Douglas* framework to retaliation claims brought under Title VII and the Texas Labor Code); *Thibodeaux-Woody v. Houston Cmty. Coll.*, 593 F. App'x 280, 285 (5th Cir. 2014) (applying the same *McDonnell Douglas prima face* test to retaliation claims brought under Title VII and the Equal Pay Act); *Browning v. Sw. Research Inst.*, No. SA-05-CA-0245-FB, 2006 WL 8434061, at *10 (W.D. Tex. Oct. 6, 2006) (stating the *McDonnell Douglas* framework applies to retaliation claims brought under Title VII and the Equal Pay Act); *James v. MedicalControl, Inc.*, 29 F.Supp.2d 749, 752 (N.D. Tex. 1998) (applying the *McDonnell Douglas* framework to retaliation claims brought under Title VII and the Equal Pay Act).

[41] *Gorman*, 753 F.3d at 170 (quotation marks omitted).

[42] *Id.*

[43] *Id.*

without supporting evidence, cannot be the basis of judicial relief.[44]

An adverse employment action is a materially adverse action that might dissuade "a reasonable worker from making or supporting a charge of discrimination."[45] Meeting this standard is not easy. A reduction in job duties does not constitute an adverse employment action unless the reduction significantly diminishes the material responsibilities of the employee.[46] The Fifth Circuit has made clear that an employee's allegations of "unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment" are not actionable adverse employment actions.[47] Additionally, the "petty slights, minor annoyances, and simple lack of good manners that employees regularly encounter in the workplace" do not constitute retaliatory conduct.[48] The Seventh Circuit provides an example of such a significant diminishment: changing the duties of an assistant prosecutor from trying cases to sharpening pencils.[49] On employee reviews, the Fifth Circuit has held that an employer giving an employee a lower-than-expected performance review does not, in and of itself, constitute an adverse employment action.[50] And the Fifth Circuit has found that an employer's failure to give its

---

[44] *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016).

[45] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 54 (2006).

[46] *Schirle v. Sokudo USA, LLC*, 484 Fed.Appx. 893, 898 (5th Cir. 2012).

[47] *King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008).

[48] *Aryain v. Wal–Mart Stores Tex. LP*, 534 F.3d 473, 485 (5th Cir. 2008).

[49] *Dahm v. Flynn*, 60 F.3d 253, 257 n. 2 (7th Cir.1994).

[50] *Mitchell v. Snow*, 326 F. App'x 852, 855 (5th Cir. 2009); *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 373 n.11 (5th Cir. 1998).

employee a non-mandatory 4% pay increase in connection to the employee's performance review did not constitute an adverse action.[51]

Constructive discharge, however, may be considered an adverse employment action.[52] Demonstrating constructive discharge imposes a high burden on the employee, who "must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign."[53] In this inquiry, courts—looking at the working environment as a whole—must find that "resignation was reasonable under all circumstances."[54] Specifically, the courts look at six factors to help determine whether a reasonable employee would feel compelled to resign:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.

*Aryain v. Wal–Mart Stores Tex. LP*, 534 F.3d 473, 481 (5th Cir. 2008) (quoting *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 771–72 (5th Cir. 2001)). Under factor (5), being "treated rudely and with general hatefulness by other supervisors and employees," without any aggravating factors that would render the harassment intolerable, is insufficient to show that a reasonable employee would be compelled to

---

[51] *Wheat*, 811 F.3d, at 709.

[52] *Aryain*, 534 F.3d at 480.

[53] *Faruki v. Parsons*, 123 F.3d 315, 319 (5th Cir. 1997).

[54] *Robinson v. Waste Mgmt. of Texas*, 122 F. App'x 756, 758 (5th Cir. 2004).

resign.[55]  If Lindsley can demonstrate she was compelled to resign, or some similar concrete adverse action, then she will have met the adverse action element of her *prima facie* case.

Lindsley has failed to show adverse employment action so she cannot meet her *prima facie* case for retaliation under the Equal Pay Act, Title VII, the Texas Labor Code, and the FMLA.  For her EEOC retaliation claims, Lindsley alleges that, after she filed her EEOC complaint, the retaliatory acts were holding meetings with Lindsley's team without her, repeatedly ostracizing her, disciplining her team by reducing her team's review scores, assigning work directly to her team, implementing a menu promotion without consulting her, and yelling at her after she reported this alleged retaliatory behavior. For her FMLA retaliation claim, Lindsley alleges termination and the loss of her accrued paid-time off were threatened, she was subjected to a hostile work and environment, she received a decreased performance review, and her computer files were deleted for inquiring into and taking FMLA leave.

The Court does not find any of these actions rise to the level of adverse employment action.  Regarding Lindsley's EEOC retaliation claims, being repeatedly ostracized is the type of slight employees inevitably encounter in the workplace. Lindsley being yelled at in her office is also an unactionable verbal reprimand or, alternatively, an unpleasant work meeting.  Regarding the reduction of Lindsley's team scores, holding team meetings without her, and implementing a menu promotion without consulting her, Lindsley does not meet her burden to show how

---

[55] *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 440 (5th Cir. 2005).

any of these actions significantly diminished her material responsibilities as Food and Beverage Director. These allegations, taken as true, are unwelcome slights but are a far cry from reducing one's duties to sharpening pencils.

Regarding Lindsley's FMLA allegations, Lindsley alleges retaliation both before and after she took leave. Lindsley's allegations that she was threatened with termination and the loss of her accrued paid-time off and subjected to a hostile work environment all occurred in a meeting between Lindsley and Gilbert before she took leave. Lindsley specifically alleges that Gilbert seeming upset in that meeting created a hostile work environment. She also alleges that Gilbert's mistaken representation that Lindsley, due to being a critical employee, would not be able to return to her position and would lose her accrued paid-time off once she returned constitutes threatening termination and the loss of her paid-time off. However, Gilbert soon corrected her mistake and Lindsley took her leave. Lindsley provides no evidence, aside from her subjective belief, that Gilbert was threatening her or creating a hostile work environment. Subjective belief alone is not enough to establish Gilbert's actions constituted adverse employment actions.

The remaining FMLA retaliation allegations occurred after Lindsley returned to work. Lindsley's reduced performance review, received the day she came back, by itself, is insufficient to show an adverse action. Lindsley contends that this act should not be seen in isolation, as it happened close to when her computer files were deleted. However, Lindsley provides no evidence, other than her subjective belief, that deleting these files was intended to retaliate against her. As such, Lindsley has failed to meet her burden to show that either of these actions are adverse employment

actions.

Lindsley also alleges that the she was constructively discharged for both filing her EEOC complaint and requesting and taking FMLA leave. In determining whether a reasonable employee would feel compelled to resign in Lindsley's situation, the Court finds two factors of the six-factor test as applicable here: factors (3) and (5). Lindsley's allegations purportedly show under factor (3) that Omni reduced her job responsibilities and, under factor (5), that Omni harassed, badgered, and humiliated her with the intent to get her to resign. These allegations apply to both Lindsley's FMLA and EEOC constructive discharge allegations.

Regarding factor (3) for Lindsley's EEOC constructive discharge allegation, Lindsley's reduction in job responsibilities, as noted above, were not so significant diminishments as to compel an objectively reasonable employee to resign. Concerning factor (3) for Lindsley's FMLA constructive discharge allegation, Lindsley has not met her high burden to show that lacking access to her computer files reduced her job responsibilities to such an extent that would compel an objectively reasonable employee to resign. Lindsley only asserts that she did not have access to the files but does not show how an objectively reasonable employee would be compelled to resign in such circumstances.

Regarding factor (5) for Lindsley's EEOC constructive discharge allegation, being yelled at in her office by Omni Corpus Christi's General Manager and feeling ostracized by other employees would constitute being "treated rudely and with general hatefulness." As Lindsley does not provide evidence for any aggravating factors that would render such treatment intolerable, she has not shown how such

treatment would compel an objectively reasonable employee to resign. This same reasoning applies to the FMLA constructive discharge allegation, under factor (5), that Lindsley experienced a hostile work environment and received a bad performance review before and after taking FMLA leave. Here too, Lindsley does not provide evidence for any aggravating factors that would render such treatment intolerable. Lindsley has thus failed to establish her *prima facie* case for any of her EEOC retaliation claims and her FMLA retaliation claim.

Because Lindsley has failed to meet her burden to show a violation of the Equal Pay Act, Title VII, the Texas Labor Code, or the FMLA by retaliating against Lindsley for filing her EEOC complaint and inquiring into and taking medical leave, Lindsley has also failed to raise a genuine dispute of material fact as to her retaliation claims under Federal Rule of Civil Procedure 56(a). Thus, the Court **GRANTS** summary judgment on Lindsley's retaliation claims and **DIMISSES** these claims against Omni **WITH PREJUDICE**.

## IV.

We note that TRT did not advance any arguments pertaining to the merits of Lindsley's discrimination and retaliation claims [Doc. Nos. 70 & 71]. Instead, TRT opted to argue that it was not Lindsley's employer. Although Local Rule 56.2(b) generally allows a party to file only one motion for summary judgment, in light of this ruling and for the sake of judicial economy, the Court permits TRT to file an amended motion for summary judgment within 14 days of the issuance of this order. Pursuant to Local Rule 7.1(e), Lindsley will have 21 days from the date of TRT's filing of its motion to respond. Pursuant to Local Rule 7.1(f), TRT will have 14 days to reply to

Lindsley's response. Upon TRT's filing of its amended motion, the Court will dismiss as moot TRT's currently pending motion for summary judgment [Doc. No. 70].

V.

For the reasons stated above, the Court **GRANTS** Omni's motion for summary judgment and **DISMISSES WITH PREJUDICE** Lindsley's claims against Omni. The Court also permits TRT to file its amended motion for summary judgment within 14 days of the issuance of this order.

The Court has filed this order under seal because briefing has been filed under seal. It is not apparent, however, that any part of this order should remain sealed. Accordingly, unless within 14 days of the date this order is filed a party moves the Court to maintain specified parts under seal, the Court will order this order unsealed. Any such motion may be filed under seal but must articulate the specific basis for sealing the specific material. A statement that the material draws from documents marked "confidential" is not a specific reason for the Court to conceal from the public what the First Amendment entitles it to know.

**IT IS SO ORDERED** this 2nd day of December.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE