UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SARAH LINDSLEY | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION NO. |
| | § | |
| | § | 3:17-CV-2942-B |
| | § | |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| TRT HOLDINGS, INC. and OMNI | § | |
| HOTELS MANAGEMENT | § | |
| CORPORATION, | § | |
| | § | |
| *Defendants.* | § | |

---

DEFENDANTS' BRIEF IN SUPPORT OF
RENEWED MOTIONS FOR SUMMARY JUDGMENT

---

Pursuant to the Court's Orders of March 2, 2021, [Dkt. 148, 149], Defendants, Omni Hotels

Management Corporation's ("OHMC" or "Omni"), and TRT Holdings, Inc. ("TRT") hereby files

this their Brief in Support of their Renewed Motions for Summary Judgment and respectfully show

as follows:

I.
INTRODUCTION

Plaintiff is a former Omni employee who was promoted from a part-time server all the way

up to Director of Food and Beverage, overseeing a hotel's Food and Beverage Department.  In

June 2016, Plaintiff resigned from Omni.  At the time, Plaintiff was the highest paid Director of

Food and Beverage in the history of the Omni Corpus Christi Hotel.  Plaintiff's only remaining

claims stem from her allegations that Omni discriminated against her on the basis of her gender

with respect to her pay.  As more fully set forth herein, the summary judgment evidence demonstrates that Plaintiff's remaining claims are wholly without merit and should be dismissed.

## II.
## PROCEDURAL HISTORY

2.1     Plaintiff sued Omni and its parent company, Defendant TRT Holdings, Inc. ("TRT"), in October 2017, alleging various causes of action.  [Dkt. 1].  Plaintiff sued TRT in its capacity as Omni's parent corporation and did not raise any independent claims against TRT.  [Dkt. 33].

2.2     Defendants timely filed Motions for Summary Judgement and evidence, arguments, and briefing in support thereof.  [Dkt. 70-75, 88, 88-1, 89, 89-1, 90-94].  This Honorable Court granted Defendants' Motions.  [Dkt. 121, 136].

2.3     Plaintiff appealed.  [Dkt. 138].

2.4     On appeal, the grant of summary judgment for Plaintiff's pay discrimination claims was affirmed in part and reversed in part.  The grant of summary judgment for Plaintiff's pay discrimination claims as it pertains to Plaintiff's three male predecessors was reversed.  Finding that Plaintiff may not use pay comparators from other Omni locations to establish a prima facie case under the Equal Pay Act, the Appeals Court affirmed summary judgment for Defendants on Plaintiff's Equal Pay Act claim with regard to unnamed male food and beverage directors from different Omni hotels.  [Dkt. 142].  The matter was remanded for determination of a single issue: Whether Plaintiff established a prima facie case under Title VII and the Texas Labor Code based on other male food and beverage directors at different Omni locations.  [Dkt. 142, p. 8-10].

2.5     On February 26, 2021, Defendants filed Renewed Motions for Summary Judgment ("Motions") contemporaneously with this their Brief in Support of their Motions ("Brief")

pursuant to and in light of the Appeals Court's ruling.[1]  Defendants' Motions and Brief were timely and made with the Court's authorization.  [Dkt. 141,144, 145].

2.6     Pursuant to the Court's Orders of March 2, 2021, [Dkt. 148, 149], Defendants file this public version of their Brief that omits confidential material.  To that end, Defendants have replaced the names of Plaintiff's three male predecessors herein with the pseudonyms "Predecessor 1", "Predecessor 2", and "Predecessor 3" and redacted confidential and proprietary financial information belonging to these individuals and/or Defendant Omni.

### III.
### STATEMENT OF MATERIAL FACTS

3.1     Omni owns and operates approximately 47 luxury hotels throughout North America. App. 003, Rothschild Aff. ¶ 4.  Omni is firmly committed to providing a work environment free of discrimination or harassment of any kind.  *Id.*  Specifically, it is Omni's policy to be fair and impartial in all of its relations with its associates and applicants for employment and to make all employment decisions without regard to sex or any other criteria prohibited by federal, state, or local law.  *Id.*, Ex. A. App. 013-014.  Omni's policy applies to recruitment, hiring, training, promotion and compensation and disciplinary measures.  *Id.*  Importantly, Omni's policy states that decisions relating to employment and promotion will be based solely upon job-related factors. *Id*.

3.2     Omni groups its hotels into three broad categories: (1) core properties, (2) convention properties, and (3) resort properties.  App. 004, Rothschild Aff. ¶ 6. Even within these three categories, there is significant variance amongst the hotels within each group, as can be measured in a multitude of ways, including by number of rooms, number of outlets, and average daily rate.  *Id;* App. 161-162, Pl. Dep. p. 45:23–46:6.

---

[1] As no independent claims have been brought against TRT, TRT joined Omni herein.

3.3     Generally, each Omni hotel has a Food and Beverage ("F&B") department.  App. 004, Rothschild Aff. ¶ 7.  Most hotels have an F&B Director, who is responsible for managing the F&B outlets and Banquets/Catering at that property.  *Id.*  Some hotels have a Director of Operations, who is responsible for overseeing the F&B department and Rooms department.  App. 196-197, Burns Dep. p. 57:24–58:24.

3.4     Each hotel's F&B department varies depending on the size of the hotel, the hotel's location, market, ranking, the property's F&B budget and revenue generated from the hotel's F&B outlets, the number of F&B outlets at the hotel, and other factors.  App. 004, Rothschild Aff. ¶ 7; App. 280, Burns Aff. ¶ 7.

3.5     As the Appeals Court correctly noted, "the job duties of each food and beverage director differ by location."  [Dkt 142].  For example, the Omni Dallas Hotel at the Dallas Convention Center ("Dallas Omni"), one of Omni's largest hotels, typically generates more than $███████ dollars annually in F&B revenue.  App. 280, Burns Aff. ¶ 7.  By contrast, the Omni Corpus Christi typically generates less than $██████ dollars annually in F&B revenue.  *Id.*  The Dallas Omni has 10 F&B outlets, and the Director of F&B at the Dallas Omni oversees over 500 F&B employees, including more than a dozen F&B outlet managers, an Executive Chef, an Executive Sous Chef, a Chef de Cuisine, and a Pastry Chef.  *Id.*  The Omni Corpus Christi has only 3 F&B outlets and less than 100 F&B employees.  *Id.*  The Omni Houston's F&B department also consistently brings millions of dollars more in F&B revenues annually than the Omni Corpus Christi does; it also has a larger F&B budget, more F&B employees, and larger F&B outlets than Omni Corpus Christi.  *Id.*

3.6     Each hotel's F&B department's responsibilities will vary greatly depending on each property's unique characteristics.  App. 280-281, Burns Aff. ¶ 8.  For example, each hotel has

unique banquet/meeting spaces to which F&B caters.  The Dallas Omni can accommodate up to 2,500 people in its largest ballroom, has 41 meeting rooms, and 110,000 sq. ft. of total meeting/banquet space; the largest meeting space at the hotel is over 30,000 sq. ft.  *Id.*  The Omni Houston has 18 meeting rooms and over 40,000 sq. ft. of indoor and outdoor meeting/banquet space.  *Id.*  The largest meeting space at the Omni Houston is over 10,000 sq. ft. and can host up to 1,000 people.  *Id.*  The Omni Mandalay Las Colinas has 27 meeting rooms, 50,0000 sq. ft. of total indoor meeting/banquet space, and multiple outdoor meeting/banquet spaces.  *Id.*  In contrast, the Omni Corpus Christi has only 11 meeting rooms and just 24,000 sq. ft. of meeting/banquet space.  *Id.*  The Omni San Antonio Colonnade, the Omni La Mansion Del Rio, the Omni Dallas Park West, the Omni Austin Downtown, and the Omni Austin Westside all have more than 11 meeting/banquet rooms.  *Id.*

3.7     Not every Omni hotel has an F&B Director.  App. 281, Burns Aff. ¶ 9.  Some hotels' F&B departments are overseen by a Department Director, not an F&B Director.  *Id.*  For example, the Omni La Mansion Del Rio and Omni's Mokara Spa & Hotel, a nearby, non-adjacent property with a luxury spa and separate accommodations, are both under the direction of a single Department Director, who is responsible for F&B at both properties.  *Id.*  In contrast, the Omni Corpus Christi has an F&B Director, not a Department Director, who is responsible for a single property only.  *Id.*  Like the Omni La Mansion, the Omni San Antonio Colonnade, the Omni Houston, and the Omni Houston Westside have had Department Directors overseeing their F&B departments.  *Id.*

3.8     Each property is unique in terms of F&B department employees, also, since the total number of F&B department employees and the number of F&B managers at each hotel will vary depending on the size and location of the hotel's F&B outlets, the size and location of the

hotel itself, the local market, and other factors.  App. 281-282, Burns Aff. ¶ 10.  For example, the Omni La Mansion has more F&B employees, more F&B managers, more F&B outlets, and more meeting/banquet rooms than the Omni Corpus Christi does.  *Id.*  It is also located on a major tourist attraction, the San Antonio River Walk.  *Id.*  Notably, three of the F&B outlets at the Omni La Mansion are riverfront, and two are open to the River Walk itself, *e.g.*, customers can walk into these outlets from the River Walk without having to enter the hotel itself.  *Id.*  The property's F&B revenue is consistently higher than Omni Corpus Christi's F&B revenues.  *Id.*  Like the Omni La Mansion, the Omni Mandalay Las Colinas is located by a popular tourist attraction, the Mandalay Canal.  Likewise, the Omni Austin Downtown is located in a significantly larger metropolitan area and has more meeting/banquet rooms, a larger F&B budget, and higher F&B revenues than Omni Corpus Christi.  *Id.*

3.9     Each F&B Director position has different job duties and levels of responsibilities as dictated by the needs of the hotel.  App. 199-203, Burns Dep. 124:22 – 125:21, 131:6, 133:25; The job descriptions for F&B Directors contain only general duties – the actual duties of each position vary by hotel and the complexities of each hotel, and the specific nuances and needs and operation of that specific hotel are vastly different.  *Id.*

3.10    Omni maintains a robust and objective compensation system designed to fairly compensate its employees.  App. 004-005, 019-32, Rothschild Aff. ¶ 8, Ex. D.  Omni utilizes the Hotel Industry Compensation Survey ("HICS") where data is available to create salary ranges for each salaried position at each hotel each year.  *Id.*  For all hires, Omni takes into account the amount budgeted by the hotel for the position – which is generally based on the amount paid to the person who held the position previously – as well as the HICS salary range, the market, the property, the position, and the person's experience.  App. 120, 118-119, Rothschild Dep. 47:17-

6

20; 45:21–46:7.  When an Omni employee is promoted and his or her current salary is below the minimum on the HICS range for the new position, Omni authorizes a promotion increase of up to 15 or 20% of the employee's current salary, with a six-month review cycle, unless market conditions warrant consideration for a higher increase.  App. 005, 019-032, Rothschild Aff. ¶ 10, Ex. D.  Generally, Omni recommends a 10% increase in salary upon promotion.  App. 130-131, Rothschild Dep. 127:18 – 128:12.  Omni's compensation policy specifically states that "[o]ften times, an individual will be promoted into a position with little experience or is unproven for that particular position.  In these cases, that person should be paid at or below the minimum of the range. . . it is acceptable for a new manager to have a salary below people on his or her team." App. 006, 019-032, Rothschild Aff. ¶ 11, Ex. D.

3.11    Omni strongly encourages its employees to seek challenging career alternatives within the company, and it encourages the promotion of employees from within the organization. App. 006, 033-036, Rothschild Aff. ¶ 12, Ex. E.

3.12    Plaintiff began working for Omni at the Omni Tucson National Resort in Arizona ("Tucson Resort") on February 14, 2001 as a server.  App. 163, Pl. Dep. p. 143:13-15; App. 007, Rothschild Aff. ¶ 14.  Plaintiff routinely received promotions and raises throughout her career.

3.13    Specifically, Plaintiff was promoted to a supervisory position at the Tucson Resort in 2007.  App. 007, 039-040, *Id.*, Ex. G.  Then, in July 2008, Plaintiff was promoted again, this time to F&B Outlet Manager.  App. 007, 041-047, *Id.*, Ex. H.  In November 2009, Plaintiff was promoted to GM of Bob's Steak and Chophouse at the Tucson Resort and given a raise to $42,500.00.  App. 007, 048-057, *Id.*, Ex. I.

3.14    Less than one year later, in June 2010, Plaintiff was promoted to Assistant Director of F&B at Omni's Corpus Christi hotel, with a salary of $57,000.00.  App. 007-008, 058-063,

Rothschild Aff. ¶ 15, Ex. J.  Shortly thereafter, in April 2011, Plaintiff was given a 13% merit salary increase to bring her salary to $64,410.00. App. 007-008, 064-071, *Id.*, Ex. K.

3.15    Approximately three months later, in July 2011, Plaintiff was promoted to Director of F&B at Omni's Corpus Christi hotel, the highest position in the F&B division at that hotel. App. 175, 129, Pl. Dep. p. 257:20-23; App. 007-008, 072-080, Rothschild Aff. ¶15, Ex. L. Plaintiff's salary was increased by 10%, consistent with Omni's guidelines, to $70,841.00 in connection with the promotion.  *Id.*  In February 2012, Plaintiff received a 3.5% salary increase as a result of a merit review, bringing her salary up to $73,330.79.  App. 007-008, 081-082, Rothschild Aff. ¶15, Ex. M.  In March 2013, her salary increased to $78,463.95, which represented a 7% increase as a result of a merit review.  App. 007-008, 083-084, Rothschild Aff. ¶15, Ex. N. In March 2014, Plaintiff's salary was again increased 3.5% to $81,210.19.  App. 007-008, 085-086, Rothschild Aff. ¶15, Ex. O.  In September 2014, Plaintiff's salary was increased another 3.5% to $84,052.55 as a result of an out-of-cycle 6-month review.  App. 007- 008, 087-088, Rothschild Aff. ¶15, Ex. P.  In March 2015, Plaintiff received another 3.5% merit salary increase to $87,414.65.  App. 007-008, 089-090, Rothschild Aff. ¶ 15, Ex. Q.  In February 2016, Plaintiff received a 3% merit salary increase to $90,037.09.  App. 007-008, 091-092, Rothschild Aff. ¶ 15, Ex. R.

3.16    All told, in approximately six and a half years, Plaintiff's salary more than doubled, and she advanced from GM of a single restaurant to Director of Food and Beverage for an entire property.  Plaintiff's compensation adjustments were always made consistent with Omni's compensation guidelines. App. 277, Keenan Decl. ¶12.  Plaintiff only worked at two Omni hotels during her career at Omni.  App. 160-161, Pl. Dep. p. 44:24 – 45:18.

3.17     The EEOC received Plaintiff's charge of discrimination on October 27, 2015.  App. 304-305.  Plaintiff's charge states: "Upon promoting her to the Food & Beverage Director at the Omni Corpus Christi, Ms. Lindsley was paid $20,000 less than her male predecessor[.]".  App. 306-307.  In response to the EEOC's request for further information, Plaintiff told the EEOC that her predecessor showed her his paystubs when she was promoted to Director.  App. 309-310.  She claimed he told her, "[T]his is what you should be making."  *Id.*

3.18     On June 8, 2016, while Plaintiff was out on FMLA leave, she resigned from Omni.  App. 010, 103-105, Rothschild Aff. ¶ 21; Ex. W; App. 178-179, Pl. Dep. p. 286:21–287:1.  At the time of her resignation, Plaintiff was the highest paid F&B Director in the history of the Corpus Christi hotel.  App. 010, Rothschild Aff. ¶ 21.

3.19     In sum, from her first managerial position in July 2008 to her resignation in June 2016, Plaintiff's salary increased about 125%, which is much higher than Omni's standard increases pursuant to its compensation guidelines.  App. 010, 033-092, Rothschild Aff. ¶ 22, Exs. E-R.

3.20     Plaintiff's immediate predecessor, Predecessor 1, was offered $82,824.50 when he was promoted to Director of Food and Beverage at the Corpus Christi hotel in 2009.  App. 010, Rothschild Aff. ¶ 21.  This represented a 10% increase from his prior salary as Director of Catering at the Omni Houston hotel.  App. 219, Gilbert Decl. ¶ 14.

3.21     Although Plaintiff's immediate predecessor was initially offered a higher salary than Plaintiff in this position, he had significantly more management experience, more industry experience, and more education than Plaintiff at the time of his hire.  App. 010, Rothschild Aff. ¶ 21, App. 219, 220-225, Gilbert Decl. ¶ 4, Ex. A, B; App. 286-288, 291-294, Burns Aff. ¶¶ 21-24, Ex. R.  At the time, Predecessor 1 had been in the hotel industry for over twenty years and had

previously held a Director position at another Omni location.  App. 286-288, 291-294, Burns Aff. ¶ 21-24, Ex. R; App. 010, Rothschild Aff. ¶ 21, App. 219, 220-225, Gilbert Decl. ¶ 4, Ex. A, B. Prior to that, he had held key F&B managerial positions with Marriott Hotels such as Director of Catering, Director of Food and Beverage, and Corporate Project Manager over fifteen years at several Marriott locations.  App. 286-288, 291-294, Burns Aff. ¶ 21-24, Ex. R.  Predecessor 1 had also owned his own business for over ten years, and, unlike Plaintiff, Predecessor 1 has an Associate's degree.  *Id.*

  3.22 Predecessor 1 had also demonstrated success at a distinguished Omni property with higher F&B revenue, more meeting/banquet rooms, and more meeting space than Omni Corpus Christi.  App. 286-287, 294, 297-298, Burns Aff. ¶ 22, Ex. R, T.  Predecessor 1 was hired in September 2007 as the Director of Catering and Conference Services at the Omni Houston.  *Id.* Omni Houston and Omni Corpus Christ are also vastly different properties.  *Id.*  In 2014, the year before Plaintiff interviewed for a promotion to Omni Houston, Omni Houston's F&B department brought in $█████, while Omni Corpus Christi's F&B revenues for the same year were only $████.  *Id.*  Aside from its location in a significantly larger metropolitan area, the Omni Houston is also considerably larger in size than the Omni Corpus Christi and has more F&B outlets, more F&B employees, and more meeting/banquet space.  *Id.*

  3.23 Predecessor 1's starting salary as the Omni Houston's Director of Catering and Conference Services was $74,000.00.  App. 278-288, 295-296, Burns Aff. ¶23, Ex. S.  In May 2008, Predecessor 1's title was changed to Director of Catering.  *Id.*  He was awarded the 2008 Omni Hotels Director of Catering of the Year, and his team was awarded the 2008 Omni Hotels Sales and Catering Team of the Year.  App. 287-288, 297-298, Burns Aff. ¶23, Ex. T.  He remained

in that position until March 2009, when he became the Director of F&B position at the Omni Corpus Christi. *Id.*

3.24    Predecessor 1 also had a higher prior salary than Plaintiff did before becoming F&B Director at Omni Corpus Christi. App. 287-288, 295-296, Burns Aff. ¶24, Ex. S. Predecessor 1's prior salary as Director of Catering at Omni Houston—his position immediately preceding his position as F&B Director at Omni Corpus Christi—was $75,295.00. *Id.* Like Plaintiff, Predecessor 1 received a pay increase of 10 percent when he became the Director of F&B at Omni Corpus Christi. *Id.*; App. 219, Gilbert Decl. ¶ 14; App. 007-008, 072-080, Rothschild Aff. ¶15, Ex. L. In February 2010, Predecessor 1 received a merit increase in salary of only 1.5 percent. He was making $83,737.50 at the time of his resignation in April 2011. *Id.*; App. 010, Rothschild Aff. ¶ 21.

3.25    Predecessor 1's immediate predecessor, Predecessor 2, was offered $75,000.00 when he took the position of F&B Director at Omni Corpus Christi in September 2007. App. 288-289, 299-300, Burns Aff. ¶25, Ex. U. Although Predecessor 2 was initially offered a higher salary than Plaintiff in this position, he had significantly more management experience and more education than Plaintiff did at the time of his hire: Predecessor 2 was hired at Omni Corpus Christi as Director of Banquets in December 2006, and, at the time of his hire as the Omni Corpus Christi F&B Director, had already been serving as the property's Interim F&B Director for several months. *Id.* In addition, Predecessor 2 had previously worked as the Director of Food & Beverage for another hotel, the Sheraton Hotel on South Padre Island, Texas and, prior to that, had owned and operated several restaurants, as well as his own catering company. *Id.* Predecessor 2 also has a culinary degree. App. 288, Burns Aff. ¶25.

11

3.26     Predecessor 2 also had a higher prior salary and more senior position (Interim F&B Director) than Plaintiff did before becoming the F&B Director at Omni Corpus Christi.  App. 288, Burns Aff. ¶26.  Predecessor 2's salary immediately preceding his promotion to F&B Director was $67,500.00.  App. 289, 299-300, Burns Aff. ¶26, Ex. U.  Like Plaintiff, he received a ten percent pay increase upon his promotion to Director of F&B at Omni Corpus Christi.  *Id*.  In March 2008, Predecessor 2 received only a 1.49 percent merit increase in salary.  *Id*.  Predecessor 2 was making $76,116.00 at the time his employment at Omni Corpus Christi ended.  *Id*.

3.27     Predecessor 2's immediate predecessor, Predecessor 3, was offered $77,000.00 when he took the position of F&B Director at Omni Corpus Christi in March 2006.  App. 289, 301-302, Burns Aff. ¶26, Ex. V.  Although Predecessor 3was initially offered a higher salary than Plaintiff in this position, Predecessor 3 had significantly more management experience and more education than Plaintiff at the time of his hire.  *Id*.  He had more than a decade of experience in the hotel industry and had previously held several management positions with Marriot hotels at several locations, including Director of F&B for the Denver Marriott West, Director of F&B for the Horseshoe Bay Resort Marriot, and Director of Event Operations for the Denver Marriot Tech Center.  Predecessor 3also had attended two years of junior college at his time of hire.  *Id*.  In March 2007, Predecessor 3 received only a 3 percent merit increase in salary.  *Id*.  Predecessor 3 was making $79,310.00 at the time of his employment at Omni Corpus Christi ended.  *Id*.

3.28     Plaintiff's immediate successor became the Corpus Christi F&B Director in August 2016 following Plaintiff's resignation.  His initial salary was $71,776.00, which represented a 10 percent increase from his previous salary as Assistant F&B Director.  App. 010, Rothschild Aff. ¶21.

**IV.
ARGUMENT AND AUTHORITIES**

**A.    Defendants are Entitled to Summary Judgment on Plaintiff's Pay Discrimination Claims.**

4.1    As discussed at length below and in Defendants' preceding Motions and Briefs, Defendants are entitled to summary judgment on Plaintiff's pay discrimination claims, and any and all of Plaintiff's remaining claims should be dismissed.

**1.    Plaintiff's Equal Pay Act claims are time-barred.**

4.2    As an initial matter, Plaintiff's EPA claims are time-barred because she failed to file suit within the applicable statute of limitations.

4.3    EPA claims are governed by a two-year statute of limitations, unless the plaintiff pleads and proves the violation was "willful", in which case a three-year statute of limitations governs. *See* 29 U.S.C. § 255(a); *Ikossi-Anastasiou v. Bd. of Supervisors of Louisiana State Univ.*, 579 F.3d 546, 552 (5th Cir. 2009). A violation of the EPA is willful only if the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Lenihan v. Boeing, Co*., 994 F. Supp. 776, 796 (S.D. Tex. 1998) (internal citation omitted). Generally, to prove a willful violation, a plaintiff must establish an employer either knew the particular practice at issue was illegal or acted with reckless disregard of its legality. *McLaughlin*, 486 U.S. at 133. This showing usually requires an employer to have received legitimate information putting it on notice that its pay practices are illegal.[2] Knowledge that a female employee is dissatisfied with her compensation is insufficient to prove a willful violation of the EPA.[3]

---

[2] *See, e.g., Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir. 1994) (employer's conduct willful because it was specifically told by local DOL office its pay practice was prohibited and employer continued such practice without further investigation).

[3] *See Ikossi-Anastasiou*, 579 F.3d at 553 (facts that female employee was paid less than many of her male colleagues and that employer knew she was dissatisfied with compensation difference are not enough to

4.4     Here, Plaintiff alleges Defendant's "conduct"—paying her a lower starting salary than her predecessors because of their superior experience and education and raising her salary so that she was, at the time of her resignation, the highest paid employee in her position in the history of the Corpus Christi hotel—constitutes a willful violation of the EPA.[4]

4.5     However, as explained at length above, Plaintiff's predecessors were paid higher initial salaries than she was because of their superior experience and education.  In contrast to her male predecessors, Plaintiff had less than ten years' experience in the hotel industry when she became Director at Omni Corpus Christi, had no prior experience as a hotel director, had very limited managerial experience, had only worked at one other hotel location, had never owned or operated her own business, and had no college or culinary degree.

4.6     Plaintiff has absolutely no evidence to support a willful violation of the EPA. Plaintiff has no evidence demonstrating that paying her predecessors higher initial salaries because of their superior experience and education is a violation of the EPA, or that Omni was put on notice that such practice could be illegal wage discrimination.  Indeed, courts consistently hold that wage differentials based on experience or education are "factors other than sex" as a matter of law.[5]

---

raise a fact question as to whether LSU knew or recklessly disregarded that its pay scale was prohibited). Likewise, mere knowledge that the EPA is "in the picture," is also insufficient.  *See e.g., McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988).

[4] Plaintiff's Complaint vaguely alleges Defendant willfully violated the EPA by paying her "lower wages and other forms of compensation" than it paid her "male predecessors and/or comparators" who, she claims, "held the exact same job, in the same establishment, performed equal work that required equal skill, effort, and responsibility, and the work was performed under the same conditions".  [Dkt. 33 at ¶246-247]. Plaintiff's remaining EPA claims are limited to her three male predecessors.  [Dkt. 142, p. 8-10].

[5] *See, e.g., Browning v. Sw. Research Inst.*, 288 Fed. Appx. 170, 174 (5th Cir. 2008) (factors other than sex include, among other things, employees' "[d]ifferent job levels, different skill levels, previous training, and experience); *Ghiselli v. Greyhound Lines, Inc.*, CIV. A. H-12-990, 2014 WL 1022887, at *2 (S.D. Tex. Mar. 17, 2014), appeal dismissed (June 26, 2014) (difference in management experience is a factor other than sex justifying differences in starting salaries).  Moreover, where, as here, a defendant advances a valid defense to the alleged EPA claim, the defendant's alleged willfulness is immaterial to a plaintiff's claims. *Tarrango v. Johnson & Johnson Med., Inc.*, 949 F. Supp. 1285, 1289 (W.D. Tex. 1996).

4.7     In view of the foregoing, Plaintiff's EPA claims are governed by a two-year statute of limitations.  Thus, since Plaintiff filed suit on October 25, 2017, [Dkt. 1], the statute of limitations bars all claims of underpayment occurring prior to October 25, 2015.  *See* 29 U.S.C. § 255(a).

4.8     Plaintiff was not paid less than her male counterparts after October 25, 2015.  After September 2014, Plaintiff was paid more than all three of her predecessors, so any alleged underpayment necessarily occurred prior to September 2014 and, as a result, Plaintiff's claims are time-barred.

4.9     In fact, as explained above, in September 2014, over a year prior, Plaintiff's salary was increased to $84,052.55, making her salary higher than her immediate predecessor's starting *and* ending salaries ($82,500.00 and $83,737.50, respectively).  And, prior to that, in March 2013, her salary increased to $78,463.95, making her salary higher than both of her non-immediate predecessors' starting salaries.  At that point, Plaintiff's salary was also higher than one of her non-immediate predecessor's ending salaries; then, in March 2014, Plaintiff's salary increased again to $81,210.19, making her salary higher than her other non-immediate predecessor's ending salary.  Thus, even if the Court were to consider the three-year statute of limitations, which it should not, Plaintiff's EPA claims would still be barred.

4.10    Given these facts, Plaintiff's EPA claims are clearly barred by the applicable statute of limitations and must be dismissed.

**2.     Plaintiff's EPA claims fail as a matter of law because her compensation was higher than the average compensation of male employees in her position.**

4.11    Notwithstanding the foregoing, Omni is also entitled to summary judgment because Plaintiff's compensation was higher than the average compensation paid to all male employees

who have held the position of Director of Food and Beverage at Omni Corpus Christi since March 2006.[6]

4.12    Under the EPA, the term "wages" generally includes all payments made to [or on behalf of] an employee as remuneration for employment.  29 C.F.R. § 1620.10.[7]  A "plaintiff must prove that she received lower pay than the average wages paid to all male employees performing substantially equal work."  *Clemente v. Oregon Dept. of Corrections*, 2006 U.S. Dist. LEXIS 47393, at *11 (emphasis added) (internal citations omitted), aff'd, 315 Fed. Appx. 657 (9th Cir. 2009).[8]  "If it should turn out that [the plaintiff] earns ***more*** than males performing substantially equal work, it is axiomatic that the Equal Pay Act does not afford her relief."  *Hein v. Oregon College of Education*, 718 F.2d 910, 916 (9th Cir.1983) (emphasis in original).

4.13    Even assuming arguendo that every Food and Beverage Director at the Omni Corpus Christi since 2006 performed substantially equal work, which they did not, Plaintiff's total compensation during 2015 (when the limitations period for her EPA claims began) was significantly higher than the average annual compensation of males who worked in the same

---

[6] Courts adhere to the principle that compensation of all relevant comparators must be considered in determining whether pay disparity exists.  *See, e.g., Ambrose v. Summit Polymers, Inc*., No. 05-1048, 2006 U.S. App. LEXIS 7911 (6th Cir. Mar. 24, 2006).

[7] "The term includes all forms of compensation irrespective of the time of payment, whether paid periodically or deferred until a later date, and whether called wages, salary, profit sharing, expense account, monthly minimum, bonus, uniform cleaning allowance, hotel accommodations, use of company car, gasoline allowance, or some other name."  29 C.F.R. § 1620.10.

[8] *Ghirardo v. Univ. of S. Cal*., 156 Fed. Appx. 914 (9th Cir. 2005) (plaintiff could not establish an EPA claim because her total compensation was not less than the average total compensation earned by her male colleagues); *Ellis v. Smithkline Beecham Corp*., 2008 U.S. Dist. LEXIS 60740, at * 29 (W.D. Wash. Aug. 4, 2008) (holding that the plaintiff's EPA claim failed as a matter of law because the plaintiff failed to establish that she was receiving lower wages than the average of wages paid to all employees of the opposite sex); *Diamond v. T. Rowe Price Associates, Inc*., 852 F. Supp. 372, 395 (D. Md. 1994) (concluding that the plaintiff's EPA claim failed because she actually received more compensation than her alleged comparators).

16

position:  Since March 2006, Omni has employed four males in the same position; the average annual compensation of these individuals was $69,077.25.  By contrast, Plaintiff's compensation in 2015 was $87,414.65—nearly $20,000.00 more than the average annual compensation of her male counterparts.

4.14    In fact, as explained above, Plaintiff made more compensation than the average compensation paid to males in the same position in the two preceding years, as well: In 2014, she made $84,052.55, the prior year, $78,463.95.  Indeed, from July 2011 and June 2016, Plaintiff's total compensation was approximately $565,360.22, which is $80,765.74, on average, for each year she was employed as the Omni Corpus Christi Food and Beverage Director.

4.15    Since Plaintiff's compensation was higher than the average compensation paid to the males in the same position, her EPA claims fail as a matter of law and should be dismissed.[9]

**3.    Plaintiff's EPA claims fail as a matter of law because her predecessors were paid higher initial salaries due to factors other than sex.**

4.16    Even if Plaintiff established a prima facie case for her EPA claims, the burdens of production and persuasion shift to Omni to show that any disparity in pay is justified by one of the EPA exceptions.  *See, e.g., Jones v. Flagship Int'l*, 793 F.2d 714 (5th Cir. 1986), cert. denied, 479 U.S. 1065 (1987).[10]

---

[9] *See e.g., Kern v. GE Capital Info. Tech. Solutions*, No. 3:01-CV-2109-P, 2003 U.S. Dist. LEXIS 10797, at *14 (N.D. Tex. Feb. 19, 2003) (granting employer's motion for summary judgment on plaintiff's EPA claim because, considering plaintiff's total compensation, she earned more than her male comparators); *see also Gallagher v. Kleinwort Benson Gov't Sec., Inc.*, 698 F. Supp. 1401, 1404-05 (N.D. Ill. 1988) (dismissing plaintiff's EPA claim because, though her base salary was lower than her male comparators, she admitted that her total compensation exceeded that of her male colleagues); *see also Marting v. Crawford & Company*, 203 F.Supp.2d 958, 966 (N.D.Ill.2002) (prima facie EPA claim not established even if plaintiff could prove that her base salary was less than that of her comparator because she earned more than any comparable male when total salary considered); *Bertotti v. Philbeck, Inc.*, 827 F.Supp. 1005, 1010 (S.D.Ga.1993) (EPA claim failed where plaintiff received greater wages).

[10] Omni bears a burden of production with respect to refuting Plaintiff's prima facie Title VII claim and a burden of persuasion with respect to Plaintiff's EPA claim.  Omni's summary judgment proof satisfies both

4.17    Disparate wage payments do not violate the EPA if they are made pursuant to "(1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) a differential based upon any other factor other than sex." *Id*. (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974)); 29 U.S.C. § 206(d)(1).  With regard to factors "other than sex," courts recognize several determinants that "pass judicial muster, including different job levels, different skill levels, previous training, and experience." *E.E.O.C. v. TXI Operations, L.P.*, 394 F. Supp. 2d 868, 878 (N.D. Tex. 2005) (quoting *Pouncy v. Prudential Ins. Co*., 668 F.2d 795, 802-03 (5th Cir.1982)).  Courts also recognize "prior salary history, performance, and competitors' offers," are "legitimate, nondiscriminatory reasons for paying [employees] different amounts." *Lyons v. Burlington Coat Factory Warehouse*, 2004 WL 515585, at *6, 2004 U.S. Dist. LEXIS 3575, at *16-17 (N.D. Tex. 2004).

4.18    As previously discussed at length above and in Defendants' preceding Motions and briefing, Plaintiff's predecessors were initially paid more because they each possessed greater industry and management experience and more education than Plaintiff did at the time of hire.  As such, Omni has satisfied its burden of showing any pay disparities were based on factors other than sex.  *See,* e.g., *E.E.O.C. v. J.H. Walker, Inc*., CIV.A.H-05-2232, 2007 WL 172626, at *16 (S.D. Tex. Jan. 18, 2007).  Furthermore, Plaintiff cannot establish a violation of the Equal Pay Act where, as here, the operation of a gender-neutral promotion raise based on objective and non-discriminatory criteria resulted in a difference in salary between her and a male predecessor in the same employment position.[11]

---

standards—i.e., it is undisputed that Plaintiff's predecessors all possessed superior experience and education, thereby justifying any actionable pay disparity, and Plaintiff cannot show pretext.

[11] *See e.g., Koerts v. MCI Telecommunications Corp*., No. 95 C 1039, 1997 U.S. Dist. LEXIS 618, *22-23 (N.D. Ill. Jan. 22, 1997).

4.19    For these reasons, Omni is entitled to summary judgment on all of Plaintiff's EPA claims.[12]

**4.    Plaintiff's Title VII claims as to her predecessors fail as a matter of law.[13]**

4.20    The ultimate burdens and intent requirements under Title VII and the EPA are technically different after a plaintiff establishes a prima facie case of wage discrimination. *See, e.g., King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 724 (5th Cir. 2011) (defendant bears the burden of persuasion to prove a defense under the EPA, whereas it has only a burden of production to show a legitimate nondiscriminatory reason for its actions under Title VII, with the ultimate burden of persuasion remaining with the plaintiff) (citing *Plemer v. Parsons--Gilbane*, 713 F.2d 1127, 1136-37 (5th Cir.1983)).    However, in view of the undisputed evidence that Plaintiff's predecessors possessed greater experience and education, such difference is of no consequence for the purpose of granting summary judgment. *See, e.g., E.E.O.C. v. J.H. Walker, Inc.*, CIV.A.H-05-2232, 2007 WL 172626, at *16 (S.D. Tex. Jan. 18, 2007).

4.21    Moreover, once a defendant has shown a non-sex based reason for a pay differential, a plaintiff must carry his or her summary judgment burden to prove the differential was simply pretextual. *Tarrango v. Johnson & Johnson Med., Inc.*, 949 F. Supp. 1285, 1289 (W.D.

---

[12] The ultimate burdens and intent requirements under Title VII and the EPA are technically different after a plaintiff establishes a prima facie case of wage discrimination. *See, e.g., King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 724 (5th Cir. 2011) (defendant bears the burden of persuasion to prove a defense under the EPA, whereas it has only a burden of production to show a legitimate nondiscriminatory reason for its actions under Title VII, with the ultimate burden of persuasion remaining with the plaintiff) (citing *Plemer v. Parsons--Gilbane*, 713 F.2d 1127, 1136-37 (5th Cir.1983)).    In view of the undisputed evidence that Plaintiff's predecessors possessed greater experience and education, such difference is of no consequence for the purpose of granting summary judgment. *See, e.g., E.E.O.C. v. J.H. Walker, Inc.*, CIV.A.H-05-2232, 2007 WL 172626, at *16 (S.D. Tex. Jan. 18, 2007).

[13] Discrimination claims brought under the Texas Labor Code are generally evaluated under the same analytical framework as Title VII claims. *See e.g., Jackson v. Honeywell Int'l, Inc.*, 601 F. App'x 280, 283 (5th Cir. 2015).    Therefore, the discussion herein of Plaintiff's Title VII claims applies equally to her Texas Labor Code claims.

Tex. 1996).  Plaintiff cannot make this showing, and her Title VII claims as to her predecessors fail as a matter of law.

4.22    Here, Plaintiff has no evidence that Omni's objective salary considerations were a pretext for discrimination.  Plaintiff may believe that she deserved a higher salary at the time of her promotion, but the fact that Omni did not does not raise a triable issue of fact that her starting salary as Director was based on her sex.  It is not the court's place to second-guess an employer's business decisions.  *See e.g., Caldwell v. Univ. of Houston Sys.*, 520 F. App'x 289, 293 (5th Cir.2013) (unpublished) (citing *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165 (5th Cir.1993)).

4.23    Moreover, "[t]his [showing] necessarily requires a plaintiff to compare her skill, effort, responsibility, and salary with a person who is or was similarly situated." *Caldwell v. Univ. of Houston Sys.*, No. H-11-2014, 2012 WL 2912033, at *8 (S. D. Tex. July 16, 2012) (quoting *Galvan v. Caviness Packing Co., Inc.*, 546 F. Supp. 2d 371, 380 (N.D. Tex. 2008)).  Merely having the same title is not enough to demonstrate that two positions are similar enough to bring a claim under the EPA.  *EEOC v. TXI Operations, L.P.*, 394 F.Supp.2d 868, 876 (N.D. Tex. 2005).  An EPA plaintiff must show that the actual content of the jobs was substantially equal.  *Id.*

4.24    Here, Plaintiff's predecessors worked in different circumstances, under different conditions, with different responsibilities—indeed, any contention that Plaintiff and her predecessors worked in equal circumstances is flatly contradicted by Plaintiff's own testimony: Plaintiff testified that the F&B department at the Corpus Christi hotel included two hotel properties a block apart from each other for only the first year or year and a half of her tenure as Director. *See* App. 316, Lindsley Dep. 245:8-24.  Despite this change in circumstances (and reduction in

responsibilities), Plaintiff's salary *increased* and she eventually became the highest paid Food and Beverage Director in the history of the Corpus Christi hotel.

4.25    Even assuming that Plaintiff makes out a prima facie case for a violation under EPA, Defendant offered legitimate non-discriminatory reasons for the pay disparities.   Any unequal pay was the result of differences in job responsibilities, experience, and work performance.  Plaintiff has simply not put forth persuasive evidence that the reasons articulated by Defendant are pretexts for discrimination.  Accordingly, Plaintiff's EPA claim fails as a matter of law, and Defendants are entitled to summary judgment.

**5.    Plaintiff's Title VII claims are also time-barred.**

4.26    A Title VII plaintiff must file a charge of discrimination with the EEOC within 180 days after the occurrence of the unlawful employment practice.  42 U.S.C. § 2000e-5(e)(1); *Webb v. Cardiothoracic Surgery Assoc.*, 139 F.3d 532, 537 (5th Cir. 1998).  However, in cases such as this one, when the plaintiff has contemporaneously instituted proceedings with the Texas Commission on Human Rights, the limitations period for filing extends to 300 days.  *Webb*, 139 F.3d at 537.

4.27    Here, Plaintiff's initial charge of discrimination was received by the EEOC—and therefore 'filed' for purposes of limitations—on October 27, 2015.[14]  Generally, the limitations period begins on the date the discriminatory act occurred, and a Title VII plaintiff cannot sustain claims based on incidents that occurred more than 300 days before the filing of a charge of discrimination.  *See Webb*, 139 F.3d at 537; *Messer v. Meno*, 130 F.3d at 134 (5th Cir. 1997).

---

[14] *See e.g., Deleon v. Gen. Insulation, Inc*., 575 F. App'x 292, 293 (5th Cir. 2014) (per curiam) (citing *Taylor v. Gen. Tel. Co. of the Southwest*, 759 F.2d 437, 442 (5th Cir. 1985)) (emphasis in original) ("A discrimination charge is filed for the purposes of Title VII on the date that EEOC *receives* the charge, however, not on the date that the charge is mailed.").

Accordingly, Plaintiff may only recover under Title VII for conduct that occurred *after* December 31, 2014, or 300 days before her charge of discrimination was filed.

4.28    Plaintiff's Complaint is lacking in sufficient dates to identify the conduct being complained of.  However, because any Title VII claim must be based on a timely filed charge, all of Plaintiff's Title VII claims will necessarily involve a review of Plaintiff's EEOC charge.  Such a review establishes that Defendant is entitled to summary judgment on Plaintiff's Title VII claims: Plaintiff's EEOC charge alleges the earliest date of discrimination occurred in 2011, the year she was hired as the Food and Beverage Director at Omni Corpus Christi.[15]

4.29    Specifically, Plaintiff's EEOC charge complained she was hired as Director at a lower salary than her immediate predecessor.  However, Plaintiff was promoted to the Director position well before December 31, 2014.  In fact, she was hired as Director on July 2, 2011—more than three years before.  Since Plaintiff did not file an EEOC charge within 300 days of her date of hire, her Title VII claims are time-barred.

4.30    Moreover, Plaintiff was not paid less than her predecessor after December 31, 2014.  In fact, as discussed above, in September 2014, Plaintiff's salary was increased to $84,052.55, making her salary higher than her predecessor's starting *and* ending salary.

4.31    Additionally, as noted above, according to Plaintiff herself, her predecessor showed her his paystubs when she was promoted to Director.  Plaintiff was hired as Assistant Director in June 2010 and promoted to the Director position in July 2011.  Plaintiff's predecessor was terminated four months prior to Plaintiff's promotion, in April 2011.  Since her claims with respect to him, if any, necessarily accrued in April 2011 (when he was terminated) or, at the latest, in June 2011 (when she was promoted), such claims are clearly barred by limitations.

---

[15] As noted above, Plaintiff's charge states: "Upon promoting her to the Food & Beverage Director at the Omni Corpus Christi, Ms. Lindsley was paid $20,000 less than her male predecessor[.]".  App. 307.

4.32    The Title VII limitations time frame begins to run from the time the plaintiff "knows or reasonably should have known that the challenged act has occurred." *Vadie v. Miss. State Univ.*, 218 F.3d 365, 371 (5th Cir. 2000) (citations omitted).  It is axiomatic then, that "the limitations period starts running when the plaintiff **knows** of the [allegedly] discriminatory act." *See e.g., Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1217 n. 2 (5th Cir.1992) (emphasis added).

4.33    In this case, Plaintiff knew of her predecessor's higher salary when she became Director.  Indeed, she also told the EEOC he had shown her his paystubs and told her, "this is what you should be making."  App. 309-310 (emphasis added).  She also told the EEOC "it is **well known** that male Food & Beverage Directors can expect starting salaries significantly higher than that of their female counterparts."  *Id.*  (emphasis added).  Plaintiff clearly knew of but did not complain of other Directors' higher salaries and, as a result, her Title VII claims are time-barred, since she failed to file a charge with the EEOC within 300 days of being hired as Director.

4.34    The continuing violation theory does not save Plaintiff's Title VII claims.  "If a plaintiff knows or with the exercise of reasonable diligence would have known that she suffered from discrimination, she 'may not sit back and accumulate all of the discriminatory acts and sue on all within the statutory period applicable to the last one.'"  *Martin v. Kroger Co.*, 65 F.Supp.2d 516, 532 (S.D. Tex. 1999) (citing *Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 282 (7th Cir. 1993).  Under this rule,

> A knowing plaintiff has an obligation to file promptly or lose [her] claim.  This can be distinguished from a plaintiff who is unable to appreciate that [she] is being discriminated against until [she] has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern.

*Sabree v. United Broth. Of Carpenters and Joiners*, 921 F.2d 396, 402 (1st Cir., 1990).

4.35     Plaintiff's own actions and statements demonstrate that she was aware of facts, if true, that supported Title VII claims long before October 2015, when her EEOC charge was filed. "Waiting to see what would happen next was pointless; the harm, if any, was already inflicted." *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d, 476, 483 (3rd Cir., 1997).   Accordingly, the continuing violation theory is not available to Plaintiff, and any and all of her Title VII claims are time-barred.

### 6.     The Texas Labor Code's 180 day limitations period bars Plaintiff's claims.

4.36     One of the differences between Title VII and the Texas Labor Code is that the limitations period for Plaintiff's state law pay discrimination claims is 180 days.   *See* TEX. LAB. CODE §§ 21.202(a) ("A complaint under this subchapter must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred.").   Thus, Plaintiff may only recover under the Texas Labor Code for conduct that occurred after April 30, 2015, which is 180 days before she filed her charge of discrimination.   As explained above, Plaintiff's charge complains of being paid less than her male predecessor when she was hired as Director, in 2011. Since Plaintiff did not file her charge within 180 days of her date of hire, her Texas Labor Code claims, if any, are also time-barred.   Moreover, as detailed above, Plaintiff was not paid less than her predecessor after April 30, 2015.   Accordingly, any and all of her Texas Labor Code claims are time-barred.

### 7.     Plaintiff cannot establish a prima facie case of pay discrimination under Title VII as to unnamed employees who worked at other Omni hotels.[16]

---

[16] Discrimination claims brought under the Texas Labor Code are generally evaluated under the same analytical framework as Title VII claims.   *See e.g., Jackson v. Honeywell Int'l, Inc.*, 601 F. App'x 280, 283 (5th Cir. 2015).   Therefore, the discussion herein of Plaintiff's Title VII claims applies equally to her Texas Labor Code claims.

4.37    As Plaintiff offers only circumstantial evidence of discrimination, her Title VII claims are analyzed using the modified McDonnell Douglas burden shifting paradigm.  *See Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010).  To survive a motion for summary judgment under the modified McDonnell Douglas paradigm, a Title VII plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

4.38    To establish a prima facie case, a Title VII plaintiff must show that: (1) she is a member of a protected class, (2) she was qualified for the position at issue, (3) she was the subject of an adverse employment action, and (4) she was treated less favorably because of her membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011).

4.39    Based on Plaintiff's Complaint, it appears the crux of her Title VII claims is that she was "subject[ed] . . . to discriminatory compensation."  [Dkt. 33].  But, as explained above, Plaintiff may only recover under Title VII for conduct that occurred *after* December 31, 2014, or 300 days before her charge of discrimination was filed.  There is no evidence here to even suggest that Plaintiff was the subject of any adverse employment action after that date—to the contrary, her salary *increased* after December 2014.

4.40    Moreover, as explained at length above, Plaintiff also cannot show that unnamed male employees who worked at other hotels were, in fact, similarly situated employees who worked under nearly identical circumstances.  Instead, the evidence here is that each Omni hotel is unique, not every Omni hotel has a Food & Beverage Director, and each hotel's food and

beverage department's responsibilities vary depending on a variety of factors.  Defendant's summary judgment evidence clearly demonstrates that there are substantial differences in responsibilities and duties between different hotel properties.  Plaintiff simply cannot put forth evidence showing that the Director of Food & Beverage position at any other hotel entailed equal work, skills and responsibilities.  Consequently, Plaintiff cannot establish that she was paid less than males for work in similar jobs, and her wage claims fail as a matter of law.

4.41    Not only does Plaintiff lack sufficient evidence to establish her prima facie case, all of Defendant's actions as they relate to her predecessor's salaries were based on legitimate, non-discriminatory reasons.

## V.
## PRIOR MOTIONS & BRIEFS

5.1    Finally, Defendants also respectfully refer the Court to the statement of material facts contained in Defendant's Brief in Support of its Motion for Summary Judgment [Dkt. 74 at III], the background facts contained in Defendant TRT's Brief in Support of its Motion for Summary Judgment [Dkt. 71 at II], and the cited to and incorporated exhibits, documents, and materials therein as they are contained in Defendants' Appendices [Dkt. 72, Dkt. 75], which are all hereby incorporated by reference as if fully set forth herein.  Defendants, pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, hereby adopt same as their own in this Brief, together with all documents in support thereof, and incorporates same herein by reference, as though fully set forth herein.

5.2    Defendants also respectfully refer the Court to the arguments and authorities contained in Defendant Omni's Brief in Support of its Motion for Summary Judgment [Dkt. 74 at IV], the arguments and authorities contained in Defendant TRT's Brief in Support of its Motion for Summary Judgment [Dkt. 71 at III (mistakenly labeled as II)], and the cited to and incorporated

exhibits therein as they are contained in Defendants' Appendices [Dkt. 72, Dkt. 75], which are all hereby incorporated by reference as if fully set forth herein.  Defendants, pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, hereby adopt same as their own in this Brief, together with all documents in support thereof, and incorporates same herein by reference, as though fully set forth herein.

5.3     Defendants also incorporate by reference the legal arguments and factual proof submitted by both Defendant TRT and Defendant Omni into the summary judgment record, which includes Defendants' Motions for Summary Judgment, Briefs, Replies, arguments, authorities, related Motions, and all cited to and incorporated exhibits, documents, and materials contained in Defendants' Appendices.  [Dkt. 70-75, 88, 88-1, 89, 89-1, 90-94].  Defendants, pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, hereby adopt same as their own in Brief, together with all documents in support thereof, and incorporates same herein by reference, as though fully set forth herein.

5.4     Defendants also respectfully request that the Court take judicial notice of these documents and materials and their contents, as well as the Court's Memorandum Opinion and Order granting summary judgment.  [Dkt. 121].

## VI.
## CONCLUSION

As the foregoing shows, there are no genuine issues of material fact in this case with respect to Plaintiff's pay discrimination claims, and Plaintiff has failed to present sufficient evidence to establish her claims against both Omni and its parent corporation, TRT.  Accordingly, Defendants request that the Court grant summary judgment and dismiss all of Plaintiff's claims against them with prejudice.  Based on the foregoing, Defendants respectfully request that the Court grant their Renewed Motions for Summary Judgment, dismiss any and all

claims against Defendants with prejudice, and grant it any and all further relief to which they may be entitled.

Dated:  March 4, 2021

Respectfully submitted,

*/s/ Michael D. Hudlow, Jr.*
R. Clay Hoblit
State Bar No. 09743100
Federal I.D. No. 7591
hoblit@hdr-law.com
Michael D. Hudlow, Jr.
Federal I.D. No. 34793
State Bar No. 24007403
mhudlow@hdr-law.com
Mariana Garza
Federal I.D. No. 1138409
State Bar No. 24075470
mgarza@hdr-law.com

**Hoblit Darling Ralls Hernandez & Hudlow LLP**
802 N. Carancahua, Suite 2000
Corpus Christi, Texas 78401
361.888.9392
361.888.9187 Facsimile

**ATTORNEYS FOR DEFENDANTS TRT HOLDINGS, INC. AND OMNI HOTELS MANAGEMENT CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of February, 2021, a true and correct copy of the foregoing document was served on all counsel of record via electronic mail pursuant to the Federal Rules of Civil Procedure.

### *CM/ECF E-Service*

Jay D. Ellwanger
jellwanger@equalrights.law
Ellwanger Law LLLP
400 South Zang Boulevard, Suite 1015
Dallas, Texas 75208
Facsimile: (737) 808-2262

James A. Vagnini
jvagnini@vkvlawyers.com
Monica Hincken
mhincken@vkvlawyers.com
Valli Kane & Vagnini, LLP
600 Old Country Road, Suite 519
Garden City, New York 11530
Facsimile: (516) 706-0248

**COUNSEL FOR PLAINTIFF**

/s/ Michael D. Hudlow, Jr.
Michael D. Hudlow, Jr.