# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISON

| | | |
|---|---|---|
| SARAH LINDSLEY | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 3:17-cv-02942-C |
| | § | |
| TRT HOLDINGS, INC. and OMNI | § | |
| HOTELS MANAGEMENT | § | JURY TRIAL DEMANDED |
| CORPORATION, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO DEFENDANTS OMNI HOTEL MANAGEMENT CORPORATION AND TRT HOLDINGS, INC.'S <u>RENEWED MOTION FOR SUMMARY JUDGMENT</u>

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................... 1

II.   PROCEDURAL HISTORY ..................................................................................... 2

III.  RESPONSE TO STATEMENT OF FACTS ........................................................... 3

   A.   Defendants' Failure to Follow Written Policies ................................................ 3

   B.   Omni's Business and Hotel Structure ................................................................ 6

   C.   Omni's Compensation System ........................................................................... 8

   D.   Assistant Director of Food & Beverage Position ............................................. 9

   E.   Director of Food & Beverage Position ........................................................... 11

      1.   Daniel Cornelius ....................................................................................... 11

      2.   Robert Walker and Jason Polland ............................................................. 14

IV.   ARGUMENT AND AUTHORITIES .................................................................... 15

   A.   Defendants Have Still Failed to Offer Non-Discriminatory Explanations for the Pay Disparities Compared to Plaintiff's Predecessors ................................ 15

   B.   Plaintiff Has Proven a Prima Facie Case Regarding Pay Discrimination Compared to Other Food And Beverage Directors ........................................... 17

   C.   Defendants' Newly Raised Arguments Are Outside the Scope of the Court of Appeals Remand ............................................................................................... 19

      1.   Defendants' Statute of Limitations Affirmative Defenses are Forfeited and/or Waived ............................................................................................ 19

      2.   It is Undisputed That Plaintiff was Compensated Less Than Her Three Predecessors ............................................................................................... 24

V.    CONCLUSION ..................................................................................................... 25

## Cases

Berquist v. Wash. Mut. Bank
  500 F.3d 344, 349 (5th Cir. 2007) ..................................................................................... 16
Bostock,
  2020 WL 3146686 at *5 ........................................................................................................ 16
Brobst v. Columbus Serv. Int'l,
  761 F.2d 148, 155 (3d Cir. 1985) ...................................................................................... 18, 19
Buntin v. Breathitt Cty Bd. of Educ.,
  134 F.3d 796, 800 (6th Cir. 1998) .................................................................................... 17
Day v. McDonough,
  547 U.S. 198, 202, 126 S. Ct. 1675, 1679, 164 L. Ed. 2d 376 (2006) ............................... 20
EEOC v. State of Del. Dep't of Heath and Soc. Servs.,
  865 F.2d 1408, 1414 (3d Cir. 1989) .................................................................................... 17
Frame v. City of Arlington,
  657 F.2d 215, 239 (5th Cir. 239) ...................................................................................... 21
Ikossi-Anastasiou v. Bd. of Supervisors of Louisiana State Univ.,
  579 F.3d 546, 553 (5th Cir. 2009) ....................................................................................... 21
Johnson v. Maestri Murrell Property Mngmt,
  555 Fed. Appx. 309. 311 (5th Cir. 2014) ......................................................................... 24
Jones v. Flagship Int'l,
  793 F.2d 714, 722–723 (5th Cir.Tex.1986) ........................................................................ 22
McDonnell Douglas Corp.,
  411 U.S. 802-804; Moss v. BMC Software, Inc., 610 F.3d 917, 922 (5th Cir. 2010) ............ 16
Pearce v. Wichita County, City of Wichita Falls, Texas, Hospital Bd.,
  590 F.2d 128, 133 (5th Cir.1979) ........................................................................................ 23
Perales v. American Retirement Corp.,
  2005 WL 2367772 at *3 (W.D. Tex. 2005) ......................................................................... 17
Prairie View A & M U. v. Chatha,
  381 S.W.3d 500, 507 (Tex. 2012) ....................................................................................... 23
Siler-Khodr v. University of Tex. Health Science Ctr San Antonio,
  261 F.3d 542, 546 (5th Cir. 2001) .................................................................................... 16
Stephens v. C.I.T. Group/Equip. Fin., Inc.,
  955 F.2d 1023, 1026 (5th Cir. 1992) ................................................................................ 20, 21
Taylor v. United Parcel Serv., Inc.,
  554 F.3d 510, 522 (5th Cir. 2008) .................................................................................... 18
U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.,
  816 F.3d 315, 322 (5th Cir. 2016) ....................................................................................... 20
United States v. Pineiro,
  470 F.3d 200, 205 (5th Cir. 2006) .................................................................................... 24
Vela v. City of Houston,
  276 F.3d 659, 679 (5th Cir. 2001) ....................................................................................... 21
Webb v. Barnes Grp., Inc.,
  2004 WL 1749519 at *5 (N.D. Tex. 2004) .......................................................................... 19
Wojcieschowski v. Nat'l Oilwell Varco, L.P.,
  763 F.Supp.2d 832, 849 (S.D. Tex. 2011) ....................................................................... 18, 19

*Wood v. Milyard*,
   566 U.S. 463, 470, 132 S. Ct. 1826, 1832, 182 L. Ed. 2d 733 (2012) .................................................. 20

**Rules**

42 U.S.C. § 2000e
   5(e)(3)(A) ............................................................................................................................................. 23

iv

# I.    <u>INTRODUCTION</u>

Defendants' previous motions for summary judgment on Plaintiff's pay discrimination claims were granted by this Court and then reversed by the Court of Appeals. The Court of Appeals reversed the grant of summary judgment and issued specific instructions for remand. Appreciating the gravity of Plaintiff's pay discrimination claims, the Court of Appeals began its opinion by stating:

> Equality of opportunity is fundamental to who we are, and to who we aspire to be, as a nation. Our commitment to this ideal is deeply engrained in our Constitution and in numerous federal and state laws. And a core component of our promise of equal opportunity, regardless of the circumstances of one's birth, is non-discrimination in pay. Pay disparities can of course exist for any number of reasons, including disparities that are rational in relation to value added or driven by the pool of labor available. <u>But what we do not accept are pay disparities due to the employee's race or sex. And that is the problem here: Sarah Lindsley has put forth a prima facie case of sex discrimination. It is undisputed that she was paid less than all three men who preceded her as food and beverage director of the Omni hotel in Corpus Christi, Texas. If there is a good explanation for that disparity, Omni is required to put one forth if it wishes to prevail in this litigation. Omni failed to do so.</u> Yet, the district court granted summary judgment to Omni anyway. That was wrong – the lack of a plausible, non-discriminatory explanation for the pay disparity may very well mean that Lindsley has a viable claim of sex discrimination.[1]

Therefore, the only issues remaining before the court are two-fold and simple. First, whether under Title VII and the EPA, the Defendants set forth a sufficient "plausible, non-discriminatory explanation for the pay disparity" between her and her three predecessor food and beverage directors at the Defendants' Corpus Christi location.[2] Second, whether Plaintiff has set forth a prima facie case of pay discrimination pursuant to Title VII as to other male food and beverage directors outside of the Defendants' Corpus Christi location, given that it "undisputed that Lindsley was paid less than other male food and beverage directors at other Omni locations."[3]

---

[1] Dkt. No. 142 at 1. The full citation for the Fifth Circuit's opinion is *Lindsley v. TRT Holdings, Inc.,* 984, F.3d 460 (5th Cir. Jan. 7, 2021) (emphasis added).
[2] Dkt. No. 142 at 1.
[3] Dkt. No. 142 at 1, 10.

Defendants conflate these very simple directives from the Court of Appeals with newly raised, irrelevant arguments. While doing so, Defendants also continue to refuse to offer any evidence or proof regarding the specific issues on remand, despite both their burden of proof to show that there are no issues of material fact remaining and their recognition that the "matter was remanded for determination of a single issue: [w]hether Plaintiff established a prima facie case under Title VII and the Texas Labor Code based on other male food and beverage directors at different Omni locations." Defendants have failed to meet their burden of proving that there are no issues of material fact and therefore, Defendants' Renewed Motion should be denied.

## II.  <u>PROCEDURAL HISTORY</u>

This action was originally commenced by Plaintiff on October 25, 2017 when Plaintiff filed her Original Complaint against Defendants for violations of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 and the Lilly Ledbetter Fair Pay Act of 2009 ("Title VII"), 42 U.S.C. § 2000 *et seq*., the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA"); the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.; and Title 2 of the Texas Labor Code, Tex. Lab. Code § 21.001 *et seq*. ("TLC"). Plaintiff brought claims of pay discrimination; failure to promote; and retaliation; under Title VII, the TLC, the EPA, and the FMLA. (Dkt. No. 1).

Notwithstanding unresolved discovery disputes pertaining to critical information, on December 17, 2018, Defendants each filed a Motion for Summary Judgment on Plaintiff's claims. (Dkt. No. 67-1; Dkt. No. 81). These motions were filed eleven months prior to the court ordered close of discovery.[4] (Dkt. No. 116). Defendants refused to comply with Plaintiff's discovery requests throughout the discovery period, and Defendant TRT failed to comply with any of Plaintiff's discovery requests except for denying two of Plaintiff's Requests for Admissions. (Dkt. No. 95). At

---

[4] According to the Order Granting Joint Motion to Continue Trial and Amend Scheduling Order, the deadline for the completion of all discovery was November 22, 2019. (Dkt. No. 116).

this time, discovery was ongoing and Plaintiff was still conducting depositions, including the upcoming deposition of the former Vice President of Food & Beverage David Morgan, a crucial figure in Plaintiff's discrimination claim.

However, this Court granted summary judgment on Plaintiff's pay and promotion discrimination claims and found that Plaintiff failed to raise a genuine dispute of material fact (Dkt. No. 121; Dkt. No. 121; Dkt. No. 133; Dkt. No. 136).

Plaintiff filed a Notice of Appeal on March 6, 2020 and appealed this Court's grant of summary judgment on all of Plaintiff's claims. (Dkt. No. 138). The Fifth Circuit reversed this Court's grant of summary judgment on Plaintiff's pay discrimination claims against Defendants; Plaintiff's only claims on remand before this Court. Indeed, the findings of the Court of Appeals included that:

- "Sarah Lindsley has put forth a prima facie case of sex discrimination." (Dkt. No. 142 at 2).

- "It is undisputed that she was paid less than all three men who preceded her as food and beverage director at Omni hotel in Corpus Christi, Texas. If there is a good explanation for that disparity, Omni is required to put one forth if it wishes to prevail in this litigation. Omni failed to do so." (Dkt. No. 142 at 2).

- "It is undisputed that Lindsley was paid less than other male food and beverage directors at other Omni locations." (Dkt. 142 at 2).

Defendants filed a renewed motion for summary judgment on February 26, 2021. (Dkt. No. 148). Plaintiff responds herewith.

## III.    RESPONSE TO STATEMENT OF FACTS

### A.  Defendants' Failure to Follow Written Policies

Plaintiff does not dispute that Omni has an employee handbook with a written discrimination policy that prohibits harassment.[5] Plaintiff does dispute that Omni enforces these policies in a non-

---

[5] Dfs. Brief at 3.

discriminatory manner,[6] and disputes that the Human Resources executives responsible for enforcing these polices receive the training to ensure that they are followed.[7]

While Defendants state that "all employment decisions [are made] without regard to sex or any other criteria prohibited by federal, state, or local law,"[8] the testimony provided demonstrates that Defendants wholly failed to conduct any analysis of their compensation plan to determine whether they are discriminating against employees on the basis of sex.[9] Indeed, Omni's corporate representative, Joy Carol Rothschild (hereinafter "Ms. Rothschild"), testified that Defendants do not conduct any regular analysis on whether it is discriminating against its employees on the basis of sex.[10]

Further, Susan Gilbert, the Director for Human Resources at the Corpus Christi property, (hereinafter "Ms. Gilbert") testified that she could not even recall receiving any training on equal employment, retaliation, or sex discrimination:

> Q.   When I initially asked you about specific training you had to get to do your job, I asked you about discrimination, and then that led to our discussion about harassment. Does Omni draw a distinction between discrimination and harassment?
>
> A.   I don't recall any training specific on discrimination. Again, we talk about diversity, inclusion, things like that.[11]
>
> ………
>
> Q:   What about the subject of equal employment? Have you received any training that relates to the subject of equal employment in your role as the director of human resources?
>
> A:   There has been no formal training program for -- regarding equal employment.[12]

---

[6] Ex. Y, Lindsley deposition, 296:18-25. *See* App. 179-190 describing Defendants' "boys club" culture that required women to work harder than men in order to succeed.

[7] Ex. T, Gilbert deposition, 78:17-24; 81:24-82:2-17. *See* App. 145-160.

[8] Dfs. Brief at 3.

[9] Ex. Z, Rothschild deposition, 85:23-86:9. *See* App. 030-040.

[10] *Id*.

[11] Ex. T, Gilbert deposition, 78:17-24. *See* App. 145-160. Ms. Gilbert's deposition testimony was not before this Court when it granted summary judgment and was not part of the record before the Court of Appeals. Since Defendants' moved for summary judgment nearly a year before the close of discovery, her deposition was not part of the record. Ms. Gilbert's deposition took place on November 20, 2019.  This Court granted summary judgment on December 2, 2019 (Dkt. No. 121, 136), and Defendants had filed for summary judgment on December 17, 2018 (Dkt. No. 67).

[12] Ex. T, Gilbert deposition, 81:24-82:2-17. *See* App. 145-160.

Plaintiff also disputes that Omni takes all allegations of discrimination and harassment seriously and that its Human Resources department investigates all such complaints made by employees. In fact, Ms. Gilbert testified that she could not even remember the last time she received training on the handling employee complaints:

> Q:    When's the last time you recall receiving any training on investigating complaints that are made to human resources?
> A:    I can't recall a specific date. I don't know.
> Q:    Do you know if it's been weeks, months, or years?
> A:    I'm guessing years.
> Q:    Do you have a sense of how many years?
> A:    No.[13]

Importantly, Ms. Gilbert is the most senior Human Resources employee on-site at the Corpus Christi property.[14] With respect to Plaintiff's pay disparity claims, Ms. Gilbert testified that Plaintiff came to her to discuss the fact that she was being underpaid, but that Ms. Gilbert did not keep any notes or take any action because she did not believe it was a "formal complaint."[15] When questioned on the difference between a conversation and a formal complaint, Ms. Gilbert stated that the conversations she had with Plaintiff about being underpaid were "general" conversations that in her opinion, did not rise to the level of a formal complaint even though she recognized that Plaintiff's compensation was below the minimum range of the salary.[16]

Plaintiff also testified that she complained to Ms. Gilbert about sexual harassment on multiple occasions.[17] However, yet again, Ms. Gilbert did not take Plaintiff's complaints seriously:

> Q.    Okay. And what did she [Susan Gilbert] say or do, to your knowledge?
> A.    She honestly didn't seem interested and that's – she did not seem that interested, to be honest.[18]

---

[13] Ex. T, Gilbert deposition, 147:24-25-148:1-7. *See* App. 145-160.
[14] Ex. Z, Rothschild deposition, 155:2-5. *See* App. 030-040.
[15] Ex. T, Gilbert deposition, 200:1-24. *See* App. 145-160.
[16] Ex. T, Gilbert deposition, 194:16-195:1. *See* App. 145-160.
[17] Ex. Y, Lindsley deposition, 269:15-19. *See* App. 179-190.
[18] Ex. Y, Lindsley deposition, 270:1-5. *See* App. 179-190.

Q.    All right. So to finish up that list, any other instances where you can -- that you would cite to the Court or to the jury where Ms. Gilbert did not act with honesty and integrity in her dealings with you?

A.    I believe that when I would go to Susan Gilbert with complaints on David Morgan on many instances, and there are several, that she did not report them to corporate as she should and she did not handle them as a general manager as she should.[19]

While Defendants may have the appropriate written policies, they failed to (1) apply the policies; (2) investigate or properly handle policy violation complaints; and (3) ensure that those in charge of enforcing the written policies were provided with training to effectively implement them.[20]

## B.  Omni's Business and Hotel Structure

Plaintiff does not dispute that Omni groups its hotels into three separate categories,[21] nor that the properties may have different numbers of rooms and Food & Beverage outlets. Plaintiff does dispute Defendants' incomplete description of the Omni Corpus Christi. During the first one to two years of Plaintiff's employment as the Food & Beverage Director, the Omni Corpus Christi consisted of two properties. As a result, Plaintiff oversaw Food & Beverage for two hotels, including the accompanying room service, food outlets, and meeting/banquet space. In addition, throughout her entire employment as Director of Food & Beverage, Plaintiff was also responsible for the procurement department.[22]

Further, while Plaintiff does not dispute that it may be true that each property's Food & Beverage Division may vary based on the size of the hotel,[23] Defendants have refused to provide any company-wide evidence that is necessary to support their argument that Food and Beverage Director

---

[19] Ex. Y, Lindsley deposition, 32:24-33:8. See App. 179-190.
[20] Ex. Z, Rothschild deposition, 202:8-11. *See* App. 030-040; Ex. Y, Lindsley deposition, 150:2-4. *See* App. 179-190; Ex. Y, Lindsley deposition, 151:16-18. *See* App. 179-190; Ex.T, Gilbert deposition, 78:17-24.*See* App. 145-160 Ex. T, Gilbert deposition, 81:24-82:2-17. *See* App.145-160.
[21] Dfs. Brief at 3.
[22] Ex. A, Lindsley deposition, 244:25-245:7. *See* App. 001-029.
[23] Dfs. Brief at 4.

positions are too different at each of Defendants' locations to be comparators for Plaintiff's pay discrimination claims.[24] Defendants have not produced <u>any</u> evidence regarding each of their 47 hotels; indeed, they have not even produced a list of these hotels, so they certainly have not provided the salary information of each of their Food and Beverage Directors. Defendants have, however, produced job descriptions for Directors of Food & Beverage at various locations, which are identical.[25]

Defendants have also cherry-picked the difference in revenue and outlets at certain hand-picked locations. While Defendants have refused to provide the information necessary to conduct a company-wide analysis, and have failed to provide it here to the Court, they did represent to the Equal Employment Opportunity Commission that the following salaries were provided to Food & Beverage Directors at the following select locations, which indicates that Plaintiff's was paid less than male Food & Beverage Directors.[26] This proves that Plaintiff was in fact compensated less than all of her male comparators at Defendants' limited hand-selected locations:[27]

| Sex | Date of Hire as Director of Food & Beverage | Starting Salary | Starting Salary Adjusted as of Plaintiff's date of hire as F&B Director[28] | Location |
|---|---|---|---|---|
| Male | 9/1998 | $55,032 | $75,995.96 | Austin Southpark |
| **Female** | 4/2013 | $55,412 | $53,837.08 | Houston Westside |
| **Female*** **(Plaintiff)** | 7/2011 | $70,851 | $70,851 | Corpus Christi |
| Male | 3/2007 | $74,000 | $81,412.54 | Dallas/Mandalay |
| Male | 8/2011 | $75,000 | $74,793.75 | Dallas Park West |

---

[24] *See* Plaintiff's Motion to Compel, RFP 9, Dkt. 44; see also the Court's Order, Dkt. 107, denying Plaintiff's Motion to Compel that information.

[25] Ex. H; Exhibit 49 to D. Burns deposition, (OMNI00002333-0002374). *See* App. 064-106.

[26] Ex. I, EEOC 92. *See* App. 107-108.

[27] *Id.*

[28] *See* Bureau of Labor Statistics inflation calculator at https://data.bls.gov/cgi-bin/cpicalc.pl.

| Male | 4/2006 | $80,000 | $89,696.08 | San Antonio |
| Male | 9/2013 | $80,000 | $77,189.14 | Tucson |
| Male | 3/2011 | $93,356 | $94,381.61 | Austin Downtown |
| Male | 4/2012 | $97,500 | $95,735.90 | Omni La Mansion del Rio, San Antonio |
| Male | 6/2012 | $105,000 | $103,372.92 | Houston |
| Male | 9/2015 | $110,449 | $104,868.18 | San Antonio |

**C. Omni's Compensation System**

Plaintiff does not dispute that Omni has a compensation system, but does dispute Defendants' characterization of this compensation system as "objective" and "designed to fairly compensate its employees."[29] Defendants' own former Compensation Analyst performed an analysis of pay within the Food & Beverage Division at multiple Omni properties and found sex-based disparities.[30] In particular he found pay disparities between male and female Food & Beverage employees in Texas, Tennessee, Florida, and California, and testified that he observed "systemic issues in pay" throughout multiple properties.[31]

Plaintiff's unequal pay began from the beginning of her management career with Defendants.[32] Despite the universal truth that a pay gap that starts at the beginning of employment continues to grow and widen over time, Defendants continue to use the argument that Plaintiff's

---

[29] Dfs. Brief at 6.
[30] Dkt. 49-7, Exhibit 6.
[31] *Id.*
[32] Ex. C, Lindsley Decl. ¶ 6. See App. 041-046. When Plaintiff became an Outlet manager in the Food & Beverage Division at Omni Tucson National, she was paid less than the previous male in the position. *Id.* When Plaintiff became the General Manager of Bob's Steak and Chop House, the premium fine dining restaurant within Omni Tucson National, she was again paid less than the previous male General Manager. *Id.* at ¶ 6. The budgeted salary for the position was $45,000.000, which represents the salary the previous General Manager earned. (Ex. Z, Rothschild deposition, 47:17-20. *See* App.030-040). The salary range for the position was $43,000-$63,000. *Id.* Plaintiff was not only paid less than the previous male General Manager, but also paid less than the salary range. *Id.*

predecessors were paid more for doing the same exact job in the same exact location because they had a "higher prior salary," while failing to concede that their previous salary was determined by Defendants as well.[33]

Further, Defendants attempt to argue that Plaintiff frequently received merit raises that increased her salary.[34] Yet, they fail to detail that she was placed on a 6-month review cycle *because her salary was below the minimum range for the position*.[35] As Ms. Gilbert explained, "…if someone is below the [salary] range, we can offer them, in addition to their annual review, a six-month follow-up review to accelerate them getting into the range…."[36]

**D. Assistant Director of Food & Beverage Position**

When Defendants were seeking an Assistant Director of Food & Beverage in Corpus Christi, Texas, an Associate Requisition form was filled out which specified that the rate of pay for the position was $65,000 and that it was an "addition to staff" position, which meant that there was not a previous employee in that role for whom a budgeted salary could be used.[37] The Offer Letter Worksheet, which was an internal document not provided to Plaintiff, confirms that the Budgeted Salary for the position was $65,000, but that the proposed salary for Plaintiff was $57,000.[38] Initially, Plaintiff was verbally offered a $65,000 salary for the position, which was confirmed by her general manager.[39] She had a meeting with her staff at the Tucson property to inform them about the transfer to Corpus Christi.[40]

---

[33] Dfs Brief at 10. Indeed, Defendants hired Mr. Cornelius as the Director of Catering and Planning in 2007 with a starting salary of $74,000, which was higher than Plaintiff's starting salary as the Director of Food & Beverage (a higher position in the organization) in 2011. *See also* Ex. C, Lindsley Decl. ¶ 6. See App. 041-046.

[34] Dfs Brief at 8.

[35] Ex. Y, Lindsley deposition, 213: 12-16. *See* App. 179-190

[36] Ex. T, Gilbert deposition, 156:14-17. *See* App. 145-160.

[37] Ex. V, Rothschild deposition, Exhibit 4. *See* App. 171-172.

[38] Ex. W, Rothschild deposition, Exhibit 3. *See* App. 173-174.

[39] Ex. C, Lindsley Decl. ¶¶ 10-11

[40] *Id.* at 11.

During this same time-period, in a concurrent internal email exchange, Ms. Rothschild questioned the proposed salary and the then Director of Human Resources for Omni Corpus Christi responded:

> This is the Assistant Director of F&B, #2 in F&B. She will supervise all other F&B managers. The current director [who she will supervise] makes $62,400. This is within the range and is an internal candidate, whom has exceed [sic] in our company for 9 years. I would not find or hire a qualified external candidate for less than that…."[41]

The $57,000 offer was ultimately approved.[42] This salary decrease was never discussed with Plaintiff who was still expecting a written offer of $65,000.[43] When the written offer for $57,000 was sent to Plaintiff via email, she received no explanation for the change in the verbal offer made.[44] Plaintiff immediately turned down the offer.[45]

Ultimately, however, David Morgan pressured Plaintiff to take the position at the $57,000 salary despite her protests that it was an unfair salary.[46] While Defendants point out that Plaintiff was given a 13 percent merit increase to bring her salary to $64,410.00 as the Assistant Food & Beverage Director,[47] they fail to note that the "merit increase" in April 2011 was provided *because Plaintiff was serving as the interim Director of F&B when Daniel Cornelius' employment ended in the same month*:[48]

> Q.     [Reading Exhibit 1 to deposition] We had a small side discussion on the F&B director opening at Corpus Christi as it was not on the open positions list. In talking with Mark, we had been waiting to see how Alica [Plaintiff] would do on an interim basis and she has done well. We were wondering if you would support Alica to move up at some point. **She has been in the interim role since April 15th**, so I was thinking after 90 days let's see how we feel then. Thanks and any thoughts.[49]

---

[41] Ex. X, Rothschild deposition, Exhibit 5. *See* App. 175-178.
[42] *Id.*
[43] Ex. C, Lindsley Decl. ¶ 11.
[44] *Id.*
[45] *Id.*
[46] *Id.* at ¶ 12.
[47] Dfs. Brief at 7.
[48] Dfs. Brief at 11: "[Cornelius] was making $83,737.50 at the time of his resignation in April 2011."
[49] Ex. Y, Lindsley deposition, 183: 1-5. *See* App. 179-190.

In fact, as Plaintiff testified, prior to officially becoming the Director of Food & Beverage, she "was doing the job without a boss, without the pay."[50] Thus, at the time Plaintiff was serving as the Interim Director of F&B her salary was $64,410.00 while her predecessor's salary was $83,737.50 at the time his employment ended.[51]

### E. Director of Food & Beverage Position

#### 1. Daniel Cornelius

When Plaintiff officially became the Director of F&B in July 2011, she was offered a $70,851.00 salary.[52] This was almost $13,000 less than the $83,737.50 salary earned by Daniel Cornelius, her immediate predecessor[53] and almost $12,000 less than his $82,824.50 starting salary for the same position.[54]

Ms. Rothschild testified that Omni looks at a "candidates' experience and tenure" when determining salary.[55] In Defendant Omni's First Motion for Summary Judgment, Omni then argued that they look at prior experience and previous salary history to determine salary.[56]

First, Defendants' have included Mr. Cornelius' <u>current</u> resume[57] to support their arguments regarding his experience, even though the first job on his current resume is his employment as Food and Beverage Director at Omni. His current experience is completely irrelevant to any of Defendants' arguments regarding his experience at the time of his hire. There is nothing on this resume regarding

---

[50] Ex. A, Lindsley deposition, 184: 19-20. *See* App. 001-029.
[51] Dfs Brief at 11.
[52] Dfs Brief at 8. Defendants incorrectly state that Plaintiff's salary was $70,8**4**1.00 [sic].
[53] *Id*.
[54] Dfs Brief at 9.
[55] Ex. J, Exhibit A to Defendant's Objections and Responses to Plaintiff's First Set of Interrogatories (*See* App. 109-111) in conjunction with Exhibit K, EEOC 230; 279-281. *See* App. 112-117.
[56] Defendant Omni Hotels Management Corporation's Brief in Support of its Motion for Summary Judgment, Dkt. 67-2 at 29.
[57] Defendants' Exhibit R, APP.000292.

his <u>previous</u> experience, which is the only experience relevant to his compensation as compared to Plaintiff's.

Defendants now argue that Mr. Cornelius' higher salary can be explained, in part, by the fact that he had "more education than Plaintiff at the time of his hire."[58] Defendants have never argued previously that this was in fact relevant. Regardless of that discrepancy between Defendants' past and current statements, it remains evident that Mr. Cornelius had experience and tenure in *sales*, but unlike Plaintiff's decade of experience, did not have experience in Food & Beverage.[59]

While Plaintiff does not dispute that Mr. Cornelius was successful in his role as the Director of Catering at Omni, being a successful sales employee does not justify his 15% increase in compensation over Plaintiff's as Food and Beverage Director. Indeed, Defendant's own organizational chart confirms that the Director of Catering and Conference Services position reports to the Director of Sales and Marketing within the Sales Division of the Company; it is wholly separate from the Food & Beverage Division.[60]

Further, <u>prior to being hired by Defendants, Mr. Cornelius was not part of the hospitality industry for fourteen (14) years</u>, so while his sales experience is certainly noted, is not comparable to the ten (10) years of Food & Beverage industry experience that Plaintiff had when she became the Director of Food & Beverage.[61] Indeed, as Plaintiff testified, Mr. Cornelius was open with the team about his lack of experience in Food and Beverage, and repeatedly asked "basic, basic operation questions" that someone who worked in food and beverage should absolutely know.[62]

---

[58] *Id.*

[59] Further, while Defendants state that Mr. Cornelius served as the Director of Food & Beverage with Marriott Hotels (Dfs. Brief at 9-10), there is no evidence that this is true. Mr. Cornelius' resume details no Food & Beverage experience until after his employment with Defendants ended. Defendants' Exhibit R, APP.000292.

[60] Ex. L, (Omni 0001712, 0001714 and Omni 0001716) See App. 118-123.

[61] Exhibit R to Dfs Brief.

[62] Ex. A, Lindsley deposition, 169: 6-15. *See* App. 001-029.

Dean Sprague, the Executive Chef at Omni Corpus Christi who reported to the Director of Food & Beverage, including both Mr. Cornelius and Plaintiff during their respective tenures as Director, echoed Plaintiff's testimony that Mr. Cornelius had no experience in Food & Beverage:

> Q.    What do you mean by that?
> A.    He had no business being in his position.
> Q.    Can you tell me what you mean when you say that?
> A.    He was not qualified to be the director of food and beverage.
> Q.    And how so? I know that may sound like an obvious question, but your job takes a little skill. I don't completely understand. That's why I'm asking.
> A.    He had no background in the position, no culinary background, and from my experience working with him, was not a good leader.[63]

On the other hand, Mr. Sprague found Plaintiff to be hard working,[64] responsible, conscientious, and someone with whom he enjoyed working:

> Q.    I asked you this question generally earlier, but I want to make sure I understand you. If someone asked you to characterize the way she did her work for Omni, how would you describe her?
> A.    Very conscientious.
> Q.    Was she a good worker?
> A.    Yes.
> Q.    Was she someone that you enjoyed working with?
> A.    Yes.[65]

Ms. Gilbert echoed these sentiments:

> Q.    What kind of an employee did you consider Ms. Lindsley to be?
> A.    She was very good. She was great at her job. She did very well in the role of food and beverage. She made improvements in the department. She was a good associate.
> Q.    What type of improvements did she make in the department?
> A.    I just know they met their -- their numbers as far as like reducing food cost or labor goals, changes to service. I don't know specifics, but she met her goals. She -- she did very well. She was good at implementing new ideas.
> Q.    I thought you were going to say food and beverage. Would you describe her as a hard worker?
> A.    Yes.

---

[63] Ex. U, Sprague deposition: 67:3-69:10. See App. 161-170 Like Ms. Gilbert's testimony, Mr. Sprague's deposition testimony was not before this Court when it granted summary judgment and was not part of the record on appeal before the Court of Appeals. *See supra,* at fn. 12.
[64] Ex. U, Sprague deposition: 16:19-22. *See* App. 161-170.
[65] Ex. U, Sprague deposition: 66:10-67:1. *See* App. 161-170.

Q.     Would you describe her as a leader?

A.     Yeah. She earned the respect of her team.[66]


###     2.          Robert Walker and Jason Polland

First and foremost, Defendants have refused to provide any documentation regarding Robert

Walker and Jason Polland's employment, experience, or compensation, irrespective of one-page,

three-line documents detailing their salaries. Defendants refused to provide Mr. Walker's personnel

file despite Plaintiff's discovery request.[67] Similar to Mr. Walker, Plaintiff requested Mr. Polland's

personnel file and Defendants have refused to provide it as well.[68] Defendants' evidence consists

entirely of a newly filed declaration from the current Vice President of Rooms and Food and

Beverage, Devin Burns, who was not even employed in this position during <u>any</u> of Plaintiff's

predecessors employment as Food and Beverage Director.[69]  Further, despite the fact that as the

current Vice President, Mr. Burns has "access to and/or am familiar with personnel records for

Omni….and records relating to employee salaries," Defendants have refused to provide any of this

evidence to Plaintiff, and have also inexplicably failed to provide it here.[70]

Despite this lack of evidence, Defendants argue that Daniel Cornelius' predecessor, Robert

Walker, had a higher starting salary than Plaintiff because he had a more senior position as the Interim

F&B Director prior to becoming the official Director.[71] Yet, this does not explain the higher

---

[66] Ex. T, Gilbert deposition: 75:3-76:1. *See* App. 145-160.

[67] Ex. AA, Defendants' Objections and Responses to Plaintiff's Second Request for Production. *See* App. 198-212.

[68] Ex. AA, Defendants' Objections and Responses to Plaintiff's Second Request for Production. *See* App. 198-212.

[69] *See e.g.,* Dfs Brief at p. 11-12; Exhibit 9 to Defendants' Renewed Motion, at App. 000279-290.

[70] Exhibit 9 to Defendants' Renewed Motion, at ¶ 3.

[71] Dfs. Brief at 11. According to Defendants, Mr. Walker's salary as the Interim Food & Beverage Director was $67,500 in 2007, while Plaintiff's salary as the Interim Food & Beverage Director was $64,410 four years later in 2011. (Ex. Y, Lindsley deposition, 183: 1-5. *See* App. 179-190). When Mr. Walker was promoted to the Director position, he received a ten percent raise increasing his starting salary $75,000 in comparison with Plaintiff's starting salary of $70,851.00 when she became the official Director of Food & Beverage. (Exhibit U to Defendants' Renewed Motion, at App. 000300). Accordingly, Plaintiff was paid $3,090.00 less than Mr. Walker as acting Director and $3,400.00 less than Mr. Walker as the official Director for performing the same work.

compensation because Plaintiff also served as the Interim Food & Beverage Director for three (3) months prior to becoming the Director of Food & Beverage.[72] Mr. Walker's management experience and its relevance here remain a disputed material fact as Defendants' have refused to offer the necessary evidence to dispute Plaintiff's prima facie case beyond blanket unsupported statements that he "owned and operated several restaurants," and Plaintiff had not, and he had worked previously at other hotel chains, and Plaintiff had not.[73] Yet, Plaintiff had nearly a decade of experience in Defendants' Food and Beverage department, and Mr. Walker did not.

With respect to Jason Polland, who was Mr. Walker's predecessor, Defendants paid him a starting salary of $77,000 as the Director of Food & Beverage in 2006[74] in comparison to the $70,851.00 paid to Plaintiff five years later in 2011.[75] Defendants argue that Mr. Polland had "significant more management experience and more education than Plaintiff" including previous roles in other hotels Food and Beverage departments, but there is no evidence or testimony as to how long these positions lasted or if he was at all successful in them.[76] Again, Defendants fail to offer any support for this statement except for Mr. Burns' declaration. Mr. Polland's management experience and its relevance here remain a disputed material fact as Defendants' have refused to offer the necessary evidence to dispute Plaintiff's prima facie case beyond unsupported statements.

## IV.    ARGUMENT AND AUTHORITIES

### A.    Defendants Have Still Failed to Offer Non-Discriminatory Explanations for the Pay Disparities Compared to Plaintiff's Predecessors

It is undisputed that Plaintiff has met her *prima facie* case as to her three predecessors under the EPA, Title VII and the Texas Labor Code.[77] It is therefore Defendants' burden to show that they

---

[72] Ex. Y, Lindsley deposition, 183: 1-5. *See* App. 179-190.
[73] Burn Affidavit, Dkt. 148-1, at App. 000288.
[74] Dfs. Brief at p. 12.
[75] Dfs. Brief at p. 8.
[76] Burn Affidavit, Dkt. 148-1 at App. 000289,
[77] Dkt. 142 at 2.

received higher compensation due to a factor other than sex. Indeed, not only are Defendants required to "establish" that they compensated them more for a reason other than sex, but Defendants must "prove by a preponderance of evidence" that they paid her three predecessors a higher salary based on a factor other than sex. *Siler-Khodr v. University of Tex. Health Science Ctr San Antonio,* 261 F.3d 542, 546 (5th Cir. 2001). Defendants have continued to fail to do so.[78]

Regarding Mr. Cornelius, there is now additional evidence before the Court that the Court of Appeals was not privy to, in the testimony of Dean Sprague, the Executive Chef at Omni Corpus Christi who reported to the Director of Food & Beverage.[79] After working closely with both Plaintiff and Mr. Cornelius, he has testified in no uncertain terms that Plaintiff was a more highly qualified Food and Beverage Director:

> Q. What do you mean by that?
> A. He [Cornelius] had no business being in his position.
> Q. Can you tell me what you mean when you say that?
> A. He was not qualified to be the director of food and beverage.
> Q. And how so? I know that may sound like an obvious question, but your job takes a little skill. I don't completely understand. That's why I'm asking.
> A. He had no background in the position, no culinary background, and from my experience working with him, was not a good leader.
> Q. Do you know why he was put in that position?
> A. I do.
> Q. Why was he put in that position, to your knowledge?
> A. He was not successful at his previous property, and was transferred to Corpus Christi.

---

[78] Although Title VII has a different standard of proof than the EPA's "proof by a preponderance of evidence,", once a plaintiff has proven a *prima facie* case of pay discrimination, the burden of proof shifts to the defendant under the *McDonnell* burden shifting analysis to provide a legitimate, non-discriminatory reason for the employment decision. *McDonnell Douglas Corp.,* 411 U.S. 802-804; *Moss v. BMC Software, Inc.,* 610 F.3d 917, 922 (5th Cir. 2010) (quoting *Berquist v. Wash. Mut. Bank,* 500 F.3d 344, 349 (5th Cir. 2007). As the Supreme Court recently held, this is "a sweeping standard" and a defendant cannot avoid liability just by citing some other factor that contributed to its challenged employment decision." *Bostock,* 2020 WL 3146686 at *5.

[79] *See supra,* fn. 12 & fn. 64.

This is synonymous with Plaintiff's own testimony regarding the fact that Plaintiff was in fact more qualified for the position that Mr. Cornelius.[80] Given this additional evidence, and the fact that the Court of Appeals cautioned that the court should "give a fresh look to whether Omni has proffered sufficient non-discriminatory reasons for the pay disparity,"[81] Defendants have failed to meet their burden. There are critical issues of material fact remaining regarding Plaintiff's pay discrimination claim as to Mr. Cornelius.

Defendants also failed to prove their non-discriminatory reasoning for compensating Mr. Polland and Mr. Walker more than Plaintiff. Despite the fact that the Court of Appeals found that Defendants failed to offer any reason as to why they compensated them more than Plaintiff, Defendants have still failed to produce <u>any</u> evidence or documents, and instead rely solely on blanket statements in a declaration from a newly hired Vice President that was not even employed at the corporate level when both Mr. Polland and Mr. Walker were employed.[82] Further, even these blanket assertions of more experience fail on their face, as only Plaintiff had nearly a decade of experience in Defendants' Food and Beverage departments.[83]

Given these critical issues of material fact regarding Defendants' reasoning for compensating Plaintiff less than all three of her male predecessors, Defendants have failed to prove so clearly "that no rational jury could find to the contrary." *Perales v. American Retirement Corp.,* 2005 WL 2367772 at *3 (W.D. Tex. 2005) (citing *Buntin v. Breathitt Cty Bd. of Educ.,* 134 F.3d 796, 800 (6th Cir. 1998) (citing *EEOC v. State of Del. Dep't of Heath and Soc. Servs.,* 865 F.2d 1408, 1414 (3d Cir. 1989).

**B.**    <u>**Plaintiff Has Proven a Prima Facie Case Regarding Pay Discrimination Compared to Other Food And Beverage Directors**</u>

---

[80] Exhibit A, Lindsley deposition, 169: 6-15. *See* App. 001-029.
[81] Dkt. No. 142, at p. 8.
[82] *See supra* at p. 16; Exhibit 9 to Defendant's Renewed Motion for Summary Judgment.
[83] *See supra* at p. 13-17.

While Defendants are correct that the Court of Appeals recognized that the "job duties of each food and beverage director differ by location," this was specific to their determination that the different Omni hotels were not a single establishment under the EPA.[84] The Court of Appeals then unequivocally stated that this standard does not apply to Plaintiff's Title VII claims and that the district court should therefore address whether Plaintiff has proven a prima facie case under Title VII and the Texas Labor Code based on male food and beverage comparators at different Omni locations.[85]

The Court of Appeals further found that "it is undisputed that Lindsley was paid less than other male and food beverage directors at other Omni locations."[86] Therefore, in order for Plaintiff to prove a *prima facie* case, she only must show that the work consisted of "substantially the same responsibility." *Taylor v. United Parcel Serv., Inc.,* 554 F.3d 510, 522 (5th Cir. 2008).

First and foremost, whether two positions have "substantially the same responsibility" is a factual determination, such that "summary judgment will often be inappropriate." *Wojcieschowski v. Nat'l Oilwell Varco, L.P.,* 763 F.Supp.2d 832, 849 (S.D. Tex. 2011) (citing *Brobst v. Columbus Serv. Int'l,* 761 F.2d 148, 155 (3d Cir. 1985)). This is true here. Defendants have admitted that: generally speaking, each of the 47 hotels have a Food and Beverage Department (while not stating how many)[87]; that the vast majority of those have a F&B Director (while not stating how many do not)[88]; and have only provided documentation regarding the job descriptions of some hand-picked Food and Beverage Directors, which are identical.[89]  However, beyond this minimal information, Defendants have continued to refuse to provide Plaintiff with any documentation or evidence, which is in their sole

---

[84] Dkt. No. 142, at p. 4.
[85] *Id.*
[86] *Id.* at 8.
[87] Dfs. Brief at p. 3.
[88] *Id.*
[89] Ex. H; Exhibit 49 to D. Burns deposition, (OMNI00002333-0002374). *See* App. 064-106.

control.[90] Defendants have not shown that there are no issues of material fact that the compared jobs do not have a "common core of tasks" and that there are differing or additional tasks that make the work "substantially different." *Id.*

Given the complete lack of evidence provided by Defendants to negate Plaintiff's prima facie case (except for the identical job descriptions of the Food and Beverage Directors[91] and the undisputed fact that Plaintiff was compensated less than her male comparators), Defendants have failed to meet their fact-intensive burden of showing that there are no issues of material facts remaining regarding Plaintiff's prima facie case. *Wojcieschowski,* 763 F.Supp.2d at 849. Further, even assuming *arguendo,* that Defendants' sole vague allegation is true, that Food and Beverage departments do vary in size, this is not enough to negate Plaintiff's *prima facie* case. *See e.g., Webb v. Barnes Grp., Inc.,* 2004 WL 1749519 at *5 (N.D. Tex. 2004) (finding that even though the defendant argued that "the different sizes of the facilities managed by the four [comparators]" negated Plaintiff's claim, the plaintiff established a *prima facie* case of pay discrimination).

### C.    Defendants' Newly Raised Arguments Are Outside the Scope of the Court of Appeals Remand

#### 1.    Defendants' Statute of Limitations Affirmative Defenses are Forfeited and/or Waived

An affirmative statute of limitations defense must have been raised in the Defendants' pleadings or else it is forfeited and excluded from litigation. Rule 8(c) of the Federal Rules of Civil Procedure unambiguously sets out that in the first responsive pleading "a party must affirmatively state any avoidance or affirmative defense, including: … statute of limitations." FED. R. CIV. P. 8(c)1. The Supreme Court further espoused that "[o]rdinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto." *Wood v. Milyard,* 566

---

[90] Ex. I, EEOC 92; *See* App. 107-108.
[91] Ex. H; Exhibit 49 to D. Burns deposition, (OMNI00002333-0002374). *See* App. 064-106.

U.S. 463, 470, 132 S. Ct. 1826, 1832, 182 L. Ed. 2d 733 (2012) (citing *Day v. McDonough*, 547 U.S. 198, 202, 126 S. Ct. 1675, 1679, 164 L. Ed. 2d 376 (2006)). Once the affirmative defense has been forfeited, it is "excluded from the case." *Id* at 470 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1278, pp. 644–645 (3d ed. 2004)) (emphasis added).

Defendants have never before raised any statute of limitations defense as to Plaintiff's EPA claims.[92]  Defendants raise this new affirmative defense nearly three years beyond the proper time period to raise this affirmative defense – well after their initial pleadings, and after significant discovery, additional briefings, and an appeal on these specific claims, and decision. Courts will only allow a defendant to raise affirmative defenses beyond the first responsive pleadings when raised "at a pragmatically sufficient time" and the lawsuit is still in its "infancy." *See U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.,* 816 F.3d 315, 322 (5th Cir. 2016). This lawsuit is far beyond its infancy and the pragmatically sufficient time has long passed. As such, the Court should reject Defendants' EPA affirmative defense as forfeited.

Similarly, Defendants' Title VII statute of limitations defense fails. Even when a general affirmative defense has been raised in a responsive pleading, it is nevertheless waived when not effectively argued or raised until far later in the case. In *Stephens v. C.I.T. Group/Equipment Financing, Inc.*, the found that the even though the defendant had urged a general statute of limitations defense in its answer, "[b]y failing to assert the defense in the trial court proceedings, [Defendant] waived the statute of limitations defense." *Stephens v. C.I.T. Group/Equip. Fin., Inc.*, 955 F.2d 1023, 1026 (5th Cir. 1992). In *Stephens,* the Court specifically pointed to the fact

---

[92]*See* Defendant Omni Hotels Management Corporation's Original Answer to Plaintiff's Original Complaint at 16 [Dkt No. 9]; Defendant Omni Hotels Management Corporation's Answer to Plaintiff's Second Amended Complaint at 32 [Dkt No. 33]; Defendant TRT Holdings, Inc. Answer to Plaintiff's Second Amended Complaint at 36 [Dkt No. 38]. Defendants explicitly only raised a statute of limitations defense to any degree regarding claims that were "not presented to the EEOC in a timely fashion" or the "time frames prescribed by law under Title VII." *Id.*

that the Defendant failed to mention it in the pretrial conference or order, did not move for summary judgment based on the statute of limitations, and did not raise the statute of limitations issue until the case had been appealed. *Id.* at 1026*; see also Vela v. City of Houston*, 276 F.3d 659, 679 (5th Cir. 2001) (finding that when a defendant had raised a statute of limitations defense in its pleadings but there is a "complete absence of the issue in all subsequent documents" until a much later motion for summary judgment, the defense is waived).

Yet Defendants attempt to raise the statute of limitations defense even further beyond the point deemed too far in *Stephens* or in *Vela*. Defendants are raising this issue for the first time in a substantive fashion after not mentioning this defense in their motion to dismiss, TRT's first motion for summary judgement, Omni's motion for summary judgement, TRT's amended motion for summary judgment, or any of the briefings on these specific Title VII claims to the Court of Appeals. A limitations defense may not be revived when it "flickered once, dimly, on the radar screen of this litigation and then disappeared forever." *Vela,* 276 F.3d at 679. Defendants' have waived their Title VII statute of limitations affirmative defense and may not argue it here.

a) <u>Even if Defendants' Statute of Limitations Affirmative Defenses are Valid, Plaintiffs Claims are Timely</u>

Even assuming, *arguendo,* Defendants have not forfeited or waived their right to raise a timeliness defense, Plaintiff's claims are still not time barred.  The statute of limitations is an affirmative defense that places the "burden of proof on the party pleading it." *Frame v. City of Arlington,* 657 F.2d 215, 239 (5th Cir. 239). Defendants have failed to meet their burden.

With respect to the willfulness violation and applicable three-year statute of limitations, summary judgment is improper if Plaintiff can prove that Defendant knew that the pay structure violated the FLSA or that Defendants ignored or failed to investigate Plaintiff's complaints. *Ikossi-Anastasiou v. Bd. of Supervisors of Louisiana State Univ.,* 579 F.3d 546, 553 (5th Cir. 2009). Here,

21

Plaintiff complained repeatedly about her discriminatory compensation.[93] This evidence – that the Defendants knew that plaintiff was paid less than her male predecessors and counterparts but did not remedy the situation – supports a willfulness finding.[94]

Moreover, even if this Court determines that Plaintiff's EPA claims should be governed by a two-year statute of limitations, the defense still fails. Defendants argue that because Plaintiff was not paid less than her male counterparts after October 25, 2015, and was paid more than her male predecessors after September 2014, her claims are time barred. That is a misapplication of both the facts and the law.[95]

The test under the EPA is not whether Plaintiff eventually earns more than her male predecessors at some point in the future. It is, instead, that she performed work in a "position requiring equal skill, effort and responsibility under similar working conditions; and that she was paid less than members of the opposite sex." *Jones v. Flagship Int'l*, 793 F.2d 714, 722–723 (5th Cir.Tex.1986). To establish that her male counterparts engage in "equal work," the plaintiff need only prove that the "skill, effort and responsibility" required in the performance of the jobs is "substantially equal." *Id*. (citing *Pearce v. Wichita County, City of Wichita Falls, Texas, Hospital Bd*., 590 F.2d 128, 133 (5th

---

[93] When Plaintiff was offered $57,000 for the Assistant Director of Food & Beverage after being verbally offered the position for $65,000, she complained to her General Manager, Danny Goldman and Human Resources Director, Claudio Cid. She was so distraught at being underpaid for the position that she refused to take the position. (Ex. C, Lindsley Decl. ¶ 11. See App. 041-046). When Plaintiff was offered the Director of Food & Beverage position in 2011, she again complained to Human Resources about the unequal salary being offered. *Id.* While working as the Director of Food & Beverage, Plaintiff continued to complain about her pay, as Ms. Gilbert's testimony confirmed. (Ex. T, Gilbert deposition, 194:16-195:1. *See* App. 145-160).

[94] There is no question that the Defendants were aware that Plaintiff's pay was below the minimum salary range for her position. Ms. Gilbert testified that the Company runs annual reports which identifies those employees being paid below the minimum salary range and that Plaintiff was one of those employees. *Id.*

[95] As an initial matter, it is unclear who Defendants are identifying as Plaintiff's male counterparts. They do not identify them in their briefing, nor do they provide any substantive details about salary ranges, industry experience, or managerial experience. In terms of Plaintiff not being paid less than her male predecessors after September 2014, are Defendants suggesting that the Court should look at the ending salary of an employee *in 2007*, in the example of Jason Polland, and find that if Plaintiff earns more than *in 2014* after working for the Company for 13 years than Mr. Polland earned in 2007 after working for one year, she cannot maintain an EPA claim? That is nonsensical.

Cir.1979)). Defendants have not met their burden of proving otherwise. Accordingly, Plaintiff's EPA

claims are not time barred under either the three-year or two-year statute of limitations period.

Defendants attempt to argue that Plaintiff's Title VII claims are time barred because she cannot

sustain claims based on incidents that occurred before December 31, 2014.[96] Defendants are wrong.

Indeed, when Congress enacted the Ledbetter Act, which amended Title VII, it specifically stated:

> [A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, <u>or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice</u>.

42 U.S.C. § 2000e–5(e)(3)(A) (emphasis added)

Accordingly, the Fair Pay Act statutorily expanded the definition of when an "unlawful

employment practice" occurs "with respect to compensation." As drafted, the amendment to Title VII

provides three different times at which an unlawful employment practice will be considered to have

occurred for the purposes of triggering the charging period: (1) when a discriminatory compensation

decision or other practice is adopted; (2) when an individual becomes subject to a discriminatory

compensation decision or other practice, or; (3) when an individual is affected by application of a

discriminatory compensation decision or other practice, including each time wages, benefits, or other

compensation is paid, resulting in whole or in part from such a decision or other practice. *Id.*

Here, the disparity in wages received by Plaintiff during the time she worked did not end. It

continued until her constructive discharge. Plaintiff was paid less than her male predecessors (and

likely her male counterparts) from the time she began working in management and continued to earn

---

[96] Although Title VII and the TCHRA share the same legal standard with respect to establishing a prima facie case of discrimination based on compensation, TCHRA did not incorporate the Fair Pay Act that requires the limitation period to begin each time an employee receives a paycheck containing a discriminatory amount. *See Prairie View A & M U. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012). As a result, unlike Plaintiff's Title VII claim, the pay discrimination claims under TCHRA are subjected to a 180-day time period. *Id.* Plaintiff was subjected to unequal pay until she was constructively discharged. Indeed, the last change in her salary was in February 2016, well within 180 days of filing the charge.

less that her male predecessors would have earned if they were in the same position at the same time. Indeed, each time she received paycheck, it resulted from a discriminatory practice.

### 2. It is Undisputed That Plaintiff was Compensated Less Than Her Three Predecessors

Defendants' entirely new argument that Plaintiff was compensated more than her predecessors at the Corpus Christi location is both entirely too late and patently false. First, it is inapposite of what Defendants argued before the court in their first motion for summary judgment, where Defendants "concede[d] that Plaintiff can establish a *prima facie* case of discrimination with respect to Daniel Cornelius."[97] Second and most importantly, <u>this has already been determined by Court of Appeals</u>, who unequivocally held that Plaintiff was compensated less than all three of her predecessors:

- "It is undisputed that she was paid less than all three men who preceded her as food and beverage director of the Omni hotel in Corpus Christi, Texas." (Dkt. No. 142 at p. 2)
- "It is undisputed that Lindsley was paid less than Walker and $6,149 less than Pollard." (*Id.* at p.7). "It is also undisputed that Lindsley held the same job title at the same Omni hotel as those men." (*Id.*)

Under the law of the case doctrine, "an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *Johnson v. Maestri Murrell Property Mngmt,* 555 Fed. Appx. 309. 311 (5ᵗʰ Cir. 2014) (cleaned up) (overturning the district court's grant of summary judgment of plaintiff's Title VII claims again due to the district court's reliance on defendant's new arguments). Therefore, when a district court implements a remand from the appeals court, it "must proceed within the letter and spirit of the mandate by taking into account the appeals court's opinion and the circumstances it embraces." *United States v. Pineiro,* 470 F.3d 200, 205 (5ᵗʰ Cir. 2006). Defendants may not now argue against the explicit findings of the appellate court. In any case, not only is Defendants' newly hatched argument that Plaintiff was not

---

[97] Dkt. No. 67-2, at p. 28.

actually compensated less than her predecessors improperly raised, but it is patently false.[98] Defendants' argument fails.

## V.    <u>CONCLUSION</u>

For all the foregoing reasons, Defendants' Renewed Motion for Summary Judgment should be denied.


Dated: March 29, 2021                              Respectfully submitted,


                                                   <u>/s/ Jay D. Ellwanger</u>
                                                   Jay D. Ellwanger
                                                   Texas State Bar No. 24036522
                                                   jellwanger@equalrights.law
                                                   **Ellwanger Law LLLP**
                                                   400 South Zang Boulevard
                                                   Suite 1015
                                                   Dallas, Texas 75208
                                                   Telephone: (737) 808-2260
                                                   Facsimile: (737) 808-2262


                                                   James A. Vagnini (admitted *pro hac vice*)
                                                   N.Y. State Bar No. 2958130
                                                   jvagnini@vkvlawyers.com
                                                   Monica Hincken (admitted *pro hac vice*)
                                                   N.Y. State Bar No. 5351804
                                                   mhincken@vkvlawyers.com
                                                   **Valli Kane &Vagnini, LLP**
                                                   600 Old Country Road, Suite 519
                                                   Garden City, New York 11530
                                                   Telephone: (516) 203-7180
                                                   Facsimile: (516) 706-0248

                                                   **COUNSEL FOR PLAINTIFF**

---

[98] *See supra,* at p. 13-17.

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2021 a true and correct copy of Plaintiff's Response to Defendants' Renewed Motion for Summary Judgment was served via electronic mail on all counsel of record.

/s/ *Jay D. Ellwanger*
Jay D. Ellwanger