UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SARAH LINDSLEY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:17-cv-2942-x |
| TRT HOLDINGS, INC. and OMNI | § | |
| HOTELS MANAGEMENT | § | |
| CORPORATION, | § | |
| | § | |
| *Defendants.* | § | |

## JURY INSTRUCTIONS

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or either defendant in arriving at your verdict.

Do not let bias, prejudice, or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

## Preponderance of the Evidence

Plaintiff Sarah Lindsley has the burden of proving her case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove

something is more likely so than not so. If you find that Plaintiff Lindsley has failed to prove any element of her claim by a preponderance of the evidence, then she may not recover on that claim.

**Evidence**

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

**Stipulations**

A "stipulation" is an agreement. When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

The parties stipulate to the below facts, which are set forth in individually numbered paragraphs, and which require no proof.

1. Plaintiff Lindsley is a female.

2. Plaintiff Lindsley is a member of a protected class.

3. Defendant Omni Hotels Management Corporation ("Omni Hotels") is subject to the Equal Pay Act.

4. Defendant Omni Hotels is subject to Title VII of the Civil Rights Act.

5. Defendant Omni Hotels is subject to the Texas Labor Code.

6. Defendant Omni Hotels is an employer and was Plaintiff's employer within the meaning of Title VII and the Equal Pay Act.

7. Defendant Omni Hotels Management Corporation has more than 500 employees.

8. Daniel Cornelius is a male.

9. Jason Polland is a male.

10. Robert Walker is a male.

11. Omni Hotels's written employee handbook has anti-discrimination and anti-harassment policies that apply to recruitment, hiring, training, promotion, and compensation and disciplinary measures. Omni Hotels's policy states that decisions relating to employment and promotion will be based solely upon job-related factors.

12. Any salary decisions that constitute exceptions to the Omni Hotels compensation guidelines may require additional approval, pursuant to the guidelines.

13. Compensation decisions are generally determined by the hiring hotel, not at the corporate level.

14. Omni Hotels's compensation policy specifically states that "[o]ften times, an individual will be promoted into a position with little experience or is unproven for that particular position.  In these cases, that person should be paid at or below the minimum of the range . . . it is acceptable for a new manager to have a salary below people on his or her team."

15. For all hires, Omni Hotels takes into account the amount budgeted by the hotel for the position, as well as the Hotel Industry Compensation Survey ("HICS") salary range, the market, the property, the position, and the person's experience, among other considerations.

16. Omni Hotels has a written wage policy for internal transfers and promotions which limits promotional salary increases to 10% of the employee's wage.  This structure is standard in the hospitality industry. Male employees are also subject to this same policy.

17. Omni Hotels hires on a property-by-property basis and has no wage agreement.

18. Plaintiff Lindsley was initially hired by Omni Hotels as a part-time server at the Omni Tucson National Resort in February 2001. Plaintiff was promoted to a supervisory position at the Tucson Resort in 2007.

19. In July 2008, Plaintiff Lindsley was promoted to Food & Beverage Outlet Manager at the Omni Tucson National Resort with a starting salary of $40,000.

20. In November 2009, Plaintiff was promoted to General Manager of Bob's Steak and Chophouse at the Tucson Resort with a starting salary of $42,500. Plaintiff's offer letter stated that if she received her sommelier certification, her salary would be increased to $45,000. As a result, Plaintiff's salary was increased to $45,000 in December 2009. Her final salary in the position was $45,468.75.

21. In June 2010, Plaintiff was promoted to Assistant Director of Food and Beverage at Omni's Corpus Christi hotel, with a salary of $57,000. She received a 25.36% salary increase for this promotion.

22. The position of Assistant Director of Food and Beverage at the Omni Corpus Christi hotel had not existed prior to Plaintiff Lindsley assuming the position.

23. In July 2011, Plaintiff Lindsley was promoted to Director of Food and Beverage at Omni's Corpus Christi hotel, the highest position in the F&B division at that hotel. Plaintiff Lindsley's salary was increased by 10%, consistent with Omni Hotels's promotional guidelines, to $70,841.00 in connection with the promotion.

24. Plaintiff Lindsley's starting salary was less than the starting salary of her three male predecessors who were employed as food and beverage directors at the Omni Corpus Christi hotel.

25. Prior to being promoted to Director of Food and Beverage at Omni's Corpus Christi hotel, Plaintiff Lindsley had 3 years of management-level hotel experience.

26. In February 2012, Plaintiff Lindsley received a 3.5% salary increase as a result of a merit review, bringing her salary up to $73,330.79.

27. In March 2013, her salary increased to $78,463.95, which represented a 7% increase as a result of a merit review. This increase doubled Omni Hotels's standard merit review increases.

28. In March 2014, Plaintiff Lindsley's salary was again increased 3.5% to $81,210.19.

29. In September 2014, Plaintiff Lindsley's salary was increased another 3.5%, to $84,052.55, as a result of an out-of-cycle 6-month review.

30. In March 2015, Plaintiff Lindsley received another 3.5% merit salary increase to $87,414.65.

31. In February 2016, Plaintiff Lindsley received a 3% merit salary increase to $90,037.09.

32. In June 2016, Plaintiff Lindsley resigned from Omni. Her salary was $90,037.09 at the time—$6,300 more than any predecessor had been paid in the position.

33. In approximately six and a half years, Plaintiff Lindsley's salary more than doubled, and she advanced from General Manager of a single restaurant to Director of Food and Beverage for an entire property.

34. From her first managerial position in July 2008 to her resignation in June 2016, Plaintiff Lindsley's salary increased about 125%, which is much higher than Omni Hotels's standard increases pursuant to its compensation guidelines.

35. Over the course of 10 years, Plaintiff Lindsley was promoted at least 5 times before ultimately being promoted to the title of Director of Food & Beverage at the Omni Corpus Christi Hotel. Ms. Lindsley went from making $12.45 an hour to a salary of $90,037 during her employment with Omni Hotels.

36. On September 23, 2015, Plaintiff Lindsley filed an EEOC charge against Omni Hotels.

37. Plaintiff Lindsley's EEOC charge against Omni Hotels was received by the EEOC on October 27, 2015.

38. Plaintiff Lindsley's average compensation was higher than the average compensation paid to alleged pay comparators Daniel Cornelius, Robert Walker, and Jason Polland.

39. Plaintiff Lindsley surpassed the highest salary of all her predecessor Directors of Food & Beverage at the Omni Corpus Christi Hotel after 3 years in the position.

40. Plaintiff Lindsley started her sixteen-year career with Omni Hotels as a server at the Omni Tucson National Resort. Plaintiff Lindsley was first promoted to an hourly supervisor position within the resort's food and beverage division in 2007, then to an outlet manager position within the

same division in 2009, and finally to a general manager's position at the resort's steakhouse in 2009.

41. In 2010, Plaintiff Lindsley successfully applied to be the assistant director of the food and beverage division at the Omni hotel in Corpus Christi. At first, she reported to Daniel Cornelius, Omni Corpus Christi's food and beverage director. When Cornelius resigned, Plaintiff Lindsley took Cornelius's position.

42. During Plaintiff Lindsley's tenure as Director of Food & Beverage at the Omni Corpus Christi, the Marina Tower—a separate building operated as part of the Omni Corpus Christi—was sold.

43. At the time Plaintiff Lindsley became the Director of Food & Beverage and her initial salary was set, the Marina Tower was still open.

44. Plaintiff Lindsley held no executive committee membership positions prior to her promotion to Director of Food & Beverage.

45. Plaintiff Lindsley did not possess a collegiate degree at the time of her promotion to and during her tenure as Director of Food & Beverage.

46. Plaintiff Lindsley is suing TRT Holdings, Inc. in its capacity as Omni Hotels's parent corporation and so she does not raise any independent claims against TRT Holdings, Inc.

47. Plaintiff Lindsley's immediate predecessor as Director of Food and Beverage at the Omni Corpus Christi was Daniel Cornelius.

48. Mr. Cornelius was promoted to Director of Food and Beverage at the Corpus Christi hotel on March 14, 2009.

49. Mr. Cornelius' starting salary in the position of Director of Food and Beverage at the Omni Corpus Christi was $82,824.50. This represented a 10% increase from his prior salary as Director of Catering at the Omni Houston hotel.

50. Mr. Cornelius was hired in September 2007 as the Director of Catering and Conference Services at the Omni Houston Hotel.  Mr. Cornelius's starting salary as the Omni Houston's Director of Catering and Conference Services was $74,000.

51. The Omni Houston Hotel had higher F&B revenue, more meeting/banquet rooms, more meeting space, and more F&B employees than Omni Corpus Christi at the time of Mr. Cornelius' promotion.

52. In May 2008, Mr. Cornelius's title was changed to Director of Catering at the Omni Houston Hotel.  Mr. Cornelius was awarded the 2008 Omni Hotels Director of Catering of the Year, and his team was awarded the 2008 Omni Hotels Sales and Catering Team of the Year.

53. Mr. Cornelius remained in that position until March 2009, when he became the Director of F&B position at the Omni Corpus Christi.  Mr. Cornelius's prior salary as Director of Catering at Omni Houston—his position immediately preceding his position as Food & Beverage Director at Omni Corpus Christi—was $75,295.

54. In February 2010, Mr. Cornelius received a merit increase in salary of 1.5 percent. He was making $83,737.50 at the time of his resignation in April 2011.

55. Plaintiff Lindsley was aware of Mr. Cornelius' salary when she accepted the promotion to the position of Food & Beverage Director.

56. At the time of his promotion to Director of Food and Beverage at the Corpus Christi hotel, Mr. Cornelius had been in the hotel industry for over twenty years.

57. Mr. Cornelius had previously held Food & Beverage managerial positions with Marriott Hotels over fifteen years at several Marriott locations, including Director of Catering.

58. Mr. Cornelius had owned his own business for over ten years prior to his promotion to Director of Food and Beverage at the Corpus Christi hotel.

59. Mr. Cornelius has an Associate's degree.

60. Plaintiff Lindsley's average compensation in the position of Director of Food & Beverage Director at the Omni Corpus Christi Hotel was higher than the average compensation paid to the alleged pay comparators Daniel Cornelius, Robert Walker, and Jason Polland in the same position.

61. Plaintiff Lindsley was employed in the position for more than twice as long as all of her predecessors.

62. Mr. Cornelius's immediate predecessor, Robert Walker, took the position of Food & Beverage Director at Omni Corpus Christi in September 2007. His starting salary was $75,000.

63. Prior to his promotion to Food & Beverage Director, Mr. Walker had served as Manager of Banquets at Omni Corpus Christi since December 2006.

64. Mr. Walker had served as Omni Corpus Christi's Interim Food & Beverage Director for several months prior to his promotion to Director of Food & Beverage in September 2007.

65. Mr. Walker's salary immediately preceding his promotion to Food & Beverage Director was $67,500.

66. Mr. Walker received a ten percent pay increase upon his promotion to Director of Food & Beverage at Omni Corpus Christi.

67. In March 2008, Mr. Walker received a 1.49 percent merit increase in salary.

68. Mr. Walker was making $76,116 at the time his employment at Omni Corpus Christi ended on January 23, 2009.

69. Jason Polland was hired in the position of Director of Food & Beverage for the Omni Corpus Christi Hotel on March 7, 2006. His starting salary in this position was $77,000

70. In March 2007, Mr. Polland received a 3 percent merit increase in salary. Mr. Polland was making $79,310.00 at the time his employment at Omni Corpus Christi ended on August 31, 2007.

71. Plaintiff's immediate successor became the Corpus Christi Food & Beverage Director in August 2016 following Plaintiff Lindsley's resignation. His initial salary was $71,776, which represented a 10 percent increase from his previous salary as Director of Banquets.

72. Plaintiff's successor, Shawn Campbell, became the Corpus Christi Food & Beverage Director in August 2016 following Plaintiff's resignation.

73. Campbell's current salary as of December 2018 was $79,954.51.

**Witnesses**

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

**Impeachment by Witness's Inconsistent Statements**

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

**Deposition Testimony**

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under

oath, in the form of a deposition. Some time before the testimony was presented here, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers have been read to you. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

## Limiting Instructions

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

## No Inference from Filing Suit

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

## Plaintiff's Claims

I will now instruct you on the law that you must apply to Plaintiff Lindsley's claims.

### A. Plaintiff Lindsley's Title VII Pay Discrimination Claim

#### 1. Proving Pay Discrimination

Plaintiff Lindsley claims that Defendant Omni Hotels intentionally discriminated against her in her position as Director of Food & Beverage at the Omni Corpus Christi Hotel because of her sex. Specifically, Plaintiff Lindsley contends that she was paid less than her predecessors, Jason Polland, Robert Walker, and Daniel Cornelius, in this position, and that she would not have been compensated less than them but for her sex.

The employer, Defendant Omni Hotels, denies Plaintiff Lindsley's claims. Specifically, it contends that Lindsley was compensated more than her alleged male pay comparators for some of her tenure as Director of Food & Beverage and that any pay disparity between Plaintiff Lindsley and her male comparators was based on factors other than sex.

It is unlawful for an employer to discriminate against an employee because of the employee's sex. An employer may, however, pay one employee less than another for the same or similar work for other reasons, good or bad, fair or unfair.

To prove unlawful discrimination under Title VII, Plaintiff Lindsley must prove by a preponderance of the evidence that:

1. Defendant Omni Hotels compensated Plaintiff Lindsley less than her male predecessors (Jason Polland, Robert Walker, and Daniel Cornelius), for work requiring substantially the same responsibility; and

2. Defendant Omni Hotels would not have compensated Plaintiff Lindsley less than her male predecessors for work requiring substantially the same responsibility in the absence of—in other words, but for—her sex.

Plaintiff Lindsley does not have to prove that unlawful discrimination was the only reason Defendant Omni Hotels compensated her less than her male predecessors. But Plaintiff Lindsley must prove that Defendant Omni Hotels's decision to compensate her less than her male predecessors would not have occurred in the absence of such discrimination.

You must consider any legitimate, nondiscriminatory reason or explanation stated by Defendant Omni Hotels for its decision regarding Plaintiff Lindsley's compensation. If you determine Defendant Omni Hotels has stated such a reason, then you must decide in favor of Defendant Omni Hotels unless Plaintiff Lindsley proves by a preponderance of the evidence that the stated reason was not the true reason but was only a pretext or excuse for Defendant's discriminating against Plaintiff because of her sex.

In determining whether Defendant Omni Hotels's stated reasons for its actions is a pretext for discrimination, you may not question Defendant's business judgment. Pretext is not established just because you disagree with the business judgment of Defendant Omni Hotels, unless you find that Defendant Omni Hotels's reasons were a pretext for intentional discrimination because of Plaintiff Lindsley's sex.

## 2. Title VII Actual Damages

If you found that Defendant Omni Hotels violated Title VII, then you must determine whether it has caused Plaintiff Lindsley damages and, if so, you must determine the amount of those damages. You should not conclude from the fact that I am instructing you on damages that I have any opinion as to whether Plaintiff Lindsley has proved liability.

Plaintiff Lindsley must prove her damages by a preponderance of the evidence. Your award must be based on evidence and not on speculation or guesswork. On the other hand, Plaintiff Lindsley need not prove the amount of her losses with mathematical precision, but only with as much definitiveness and accuracy as the circumstances permit.

You should consider the following elements of actual damages, and no others:

(1)  the amount of back pay and benefits Plaintiff Lindsley would have earned in her employment with Defendant Omni Hotels if she had not been paid less than males on the basis of her sex in the timeframe addressed in Question 2 of the verdict form, minus the amount of earnings and benefits that Plaintiff Lindsley received from employment during that time;

(2)  the amount of other damages sustained by Plaintiff Lindsley, such as emotional distress, pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

Back pay includes the amounts the evidence shows Plaintiff Lindsley would have earned had she not been discriminated against with respect to her

compensation. These amounts include wages or salary and such benefits as life and health insurance, stock options, and contributions to retirement. You must subtract the amounts of earnings and benefits Defendants prove by a preponderance of the evidence Plaintiff Lindsley received during the period in question.

There is no exact standard for determining actual damages. You are to determine an amount that will fairly compensate Plaintiff Lindsley for the harm she has sustained. Do not include as actual damages interest on wages or benefits.

### 3. Title VII Punitive Damages

In addition to actual damages, you may consider whether to award punitive damages with respect to Plaintiff Lindsley's Title VII claims. Punitive damages are damages designed to punish a defendant and to deter similar conduct in the future.

You may award punitive damages if Plaintiff Lindsley proves by a preponderance of the evidence that:

(1) the individual who engaged in the discriminatory act or practice was acting in a managerial capacity;

(2) that individual engaged in the discriminatory act or practice while acting in the scope of his or her employment; and

(3) that individual acted with malice or reckless indifference to Plaintiff Lindsley's federally protected right to be free from discrimination.

If Plaintiff Lindsley has proved these facts, then you may award punitive damages, unless Defendant Omni Hotels proves by a preponderance of the evidence

that the discriminatory conduct was contrary to its good-faith efforts to prevent discrimination in the workplace.

In determining whether the David Morgan who allegedly engaged in a discriminatory act were supervisors or managers for Defendant Omni Hotels, you should consider the type of authority that person or persons had over Plaintiff Lindsley and the type of authority for employment decisions Defendant Omni Hotels authorized that person or persons to make.

An action is in "reckless indifference" to Plaintiff Lindsley's federally protected rights if it was taken in the face of a perceived risk that the conduct would violate federal law.  Plaintiff Lindsley is not required to show egregious or outrageous discrimination to recover punitive damages.  Proof that Defendants engaged in intentional discrimination, however, is not enough in itself to justify an award of punitive damages.

In determining whether Defendant Omni Hotels made good-faith efforts to prevent discrimination in the workplace, you may consider whether it adopted antidiscrimination policies, whether it educated its employees on the federal antidiscrimination laws, how it responded to Plaintiff Lindsley's complaint of discrimination, and how it responded to other complaints of discrimination.

If you find that Defendant Omni Hotels acted with malice or reckless indifference to Plaintiff Lindsley's rights and did not make a good-faith effort to comply with the law, then in addition to any other damages you find Plaintiff Lindsley is entitled to receive, you may, but are not required to, award Plaintiff Lindsley an

additional amount as punitive damages for the purposes of punishing the Defendant Omni Hotels for engaging in such wrongful conduct and deterring Defendant Omni Hotels and others from engaging in such conduct in the future.  You should presume that Plaintiff Lindsley has been made whole for her injuries by any actual damages you have awarded.

If you decide to award punitive damages, you should consider the following in deciding the amount:

1.  How reprehensible Defendant Omni Hotels's conduct was.   You may consider whether the harm Plaintiff Lindsley suffered was physical or economic or both; whether there was violence, intentional malice, or reckless disregard for human health or safety; whether Defendant Omni Hotels's conduct that harmed Plaintiff Lindsley also posed a risk of harm to others; whether there was any repetition of the wrongful conduct or there was past conduct of the same sort that harmed Plaintiff Lindsley.

2.  How much harm Defendant Omni Hotels's wrongful conduct caused Plaintiff Lindsley and could cause her in the future.

3.  What amount of punitive damages, in addition to the other damages already awarded, is needed, considering Defendant Omni Hotels's financial condition, to punish Defendant Omni Hotels for its conduct toward Plaintiff Lindsley and to deter Defendant Omni Hotels and others from similar wrongful conduct in the future.

The amount of any punitive damages award, if any, should bear a reasonable relationship to the harm caused Plaintiff Lindsley.

## B. Plaintiff Lindsley's Equal Pay Act Claim

### 1. Proving an Equal Pay Act Violation

Plaintiff Lindsley claims Defendant Omni Hotels violated the Equal Pay Act. Specifically, Plaintiff Lindsley claims Defendant Omni Hotels paid her less than her male predecessors, Jason Polland, Robert Walker, and Daniel Cornelius, in the position of Food & Beverage Director at the Omni Corpus Christi Hotel even though she performed substantially equal work.

Defendant Omni Hotels claims that Plaintiff Lindsley's job was not substantially equal to the jobs performed by the male employees and that she was not paid less than the male employees. Further, Defendant Omni Hotels asserts that the differences in pay, if any, between Plaintiff Lindsley and the male employees was due to application of gender-neutral compensation policies or differences in education, experience, prior salaries, and prior performance.

To prove a violation of the Equal Pay Act, Plaintiff Lindsley must prove by a preponderance of the evidence that:

1. Defendant Omni Hotels employed Plaintiff Lindsley and one or more of her male predecessors (Jason Polland, Robert Walker, or Daniel Cornelius) in jobs requiring substantially equal skill, effort, and responsibility;

2. The two jobs were performed under similar working conditions; and

3. Defendant Omni Hotels paid Plaintiff Lindsley less than one or more of her male predecessors doing substantially equal work.

When evaluating whether Plaintiff Lindsley has established these elements, you must keep in mind that Plaintiff Lindsley does not have to prove that Defendant Omni Hotels intended to discriminate against her because she is female. In other words, Plaintiff Lindsley does not have to prove intent to discriminate.

In determining whether Plaintiff Lindsley's job required substantially equal skill, effort, and responsibility as that of her male predecessors, you must compare the jobs and not the individual employees holding those jobs. It is not necessary that the two jobs be identical; the Equal Pay Act requires proof that the performance of the two jobs demands "substantially equal" skill, effort, and responsibility. Insignificant, insubstantial, or trivial differences do not matter and may be disregarded. Job classifications, descriptions, or titles are not controlling. It is the actual work or performance requirements of the two jobs that is important.

In evaluating whether the performance requirements of the two jobs are substantially equal, you must consider the "skill," "effort," and "responsibility" required for these jobs. I will now tell you what is meant by these terms, "skill," "effort," and "responsibility."

*Skill:* In deciding whether the jobs require substantially equal "skill," you should consider such factors as the level of education, experience, training, and ability necessary to meet the performance requirements of the respective jobs. Jobs may require "equal skill" even if one job does not require workers to use these skills as

often as another job. Remember also that you are to compare the jobs, not the employees. So the fact that a male employee has a qualification that Plaintiff Lindsley does not is relevant only if the particular qualification is necessary or useful for performing the job.

*Effort*: In deciding whether the jobs require substantially equal "effort" you should consider the mental, physical, and emotional requirements for performing the job. Duties that result in mental or physical fatigue or emotional stress, as well as factors that alleviate fatigue and stress, should be weighed together in assessing the relative effort involved. "Equal effort" does not require people to use effort in exactly the same way. If there is no substantial difference in the amount or degree of effort to do the jobs, they require "equal effort." However, if the job of the male employee(s) require(s) additional tasks that consume a significant amount of extra time and effort that would not be expected of Plaintiff Lindsley, then the jobs do not require substantially equal effort.

*Responsibility*: In deciding whether the jobs involve substantially equal "responsibility," you should consider the degree of accountability expected by the employer for a person filling the jobs, as well as the amount of preparation required to perform the job duties. You should also take into account such things as the level of authority delegated to Plaintiff Lindsley as compared to the male employees, including whether Plaintiff Lindsley and the male employees were equally expected to direct the work of others, or to represent Defendant Omni Hotels in dealing with

customers or suppliers.    Finally, you should consider the consequences to the employer of effective performance in the respective jobs.

You should note that "skill," "effort," and "responsibility" constitute separate tests, each of which must be met in order for the equal pay requirement to apply.

With respect to the second element of Plaintiff Lindsley's claim, you must find that the jobs are performed under similar working conditions.  The conditions need only be similar; they need not be identical.  In deciding whether the working conditions of the two jobs are similar, you should consider the surroundings or the environment in which the work is performed, including any hazards or risks, travel, and weather to which the respective employees may be exposed.

With respect to the third element of Plaintiff Lindsley's claim, she must prove that she was paid a lower wage than male employees doing substantially equal work.  In determining the respective levels of pay, you are to consider all forms of compensation, whether called wages, salary, profit sharing, expense account, use of company car, gasoline allowance, or some other name.  Fringe benefits are also included in the comparison of wages under the Equal Pay Act, as are vacation and holiday pay and overtime pay.

## 2.  Equal Pay Act Defenses

If you find that Plaintiff Lindsley has proved each of the elements that she must establish in support of her claim under the Equal Pay Act, you must then consider Defendant Omni Hotels's defense.  Defendant Omni Hotels contends that the difference in pay between the two jobs was the result of a factor other than sex.

Specifically, Defendant Omni Hotels claims that the difference in pay is attributable to gender-neutral compensation policies and differences in the male employees' and Plaintiff Sarah Lindsley's education, experience, prior salaries, and prior performance. To establish this defense, Defendant Omni Hotels must prove by a preponderance of the evidence that Plaintiff Lindsley's sex played no part in the difference in wages.

Plaintiff Lindsley contends that Defendant Omni Hotels's explanation for the difference in pay is only a pretext, or excuse, for paying higher wages to men for equal work. Remember that Plaintiff Lindsley does not have to prove that Defendant Omni Hotels intended to discriminate. However, evidence of intent to discriminate may be considered in determining whether Defendant Omni Hotels's explanation is valid or instead is a cover-up for paying higher wages to men for equal work.

If you find that Defendant Omni Hotels has proved by a preponderance of the evidence that the difference in pay was the result of gender-neutral compensation policies or differences in the male employees' and Plaintiff Lindsley's education, experience, prior salaries, prior performance, or any factor other than sex, your verdict must be for Defendant Omni Hotels. However, if you determine that Defendant Omni Hotels has failed to prove that the difference in pay was caused by a factor other than sex, you must decide in favor of Plaintiff Lindsley.

### 3. Equal Pay Act Damages—Non-Willful Violations

If you find that Plaintiff Lindsley has proved by a preponderance of the evidence that she was paid less than her male predecessors for performing

substantially equal work and if you find that Defendant Omni Hotels has failed to show that the wage differential was based on a permissible factor on which I previously instructed you, then you must award damages to Plaintiff Lindsley. Plaintiff Lindsley has the burden of proving the amount of those damages by a preponderance of the evidence.

You must award Plaintiff Lindsley the amount of damages that compensates her for the difference between what she was paid (in both wages and benefits) and the average amount of what her male predecessors were paid (in both wages and benefits) during the period starting October 25, 2015 through June 8, 2016.

In assessing damages, you must not consider attorney fees or the costs of litigating this case. Attorney fees and costs, if relevant at all, are for the Court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.

### 4. Equal Pay Act Damages—Willful Violations

In this case, Plaintiff Lindsley alleges that Defendant Omni Hotels willfully violated the Equal Pay Act. If you find in favor of Plaintiff Lindsley on her Equal Pay Act claim, then you must also determine whether Defendant Omni Hotels "willfully" violated the Equal Pay Act. If Plaintiff Lindsley proves to you by a preponderance of the evidence that Defendant Omni Hotels's violation of the Equal Pay Act was willful, then this will have an effect on the damages that you must award. I will explain this effect in a minute, but first I will provide you more information on what it means to be a "willful" violation.

You must find Defendant Omni Hotels's violation of the Equal Pay Act to be willful if Plaintiff Lindsley proves by a preponderance of the evidence that Defendant Omni Hotels knew or showed reckless disregard for whether Plaintiff Lindsley's underpayment was prohibited by the law.  To establish willfulness, it is not enough to show that Defendant Omni Hotels acted negligently.  If you find that Defendant Omni Hotels did not know, or knew only that the law was potentially applicable, and did not act in reckless disregard for whether its conduct was prohibited by the law, then Defendant Omni Hotels's conduct was not willful.

If you find that Defendant Omni Hotels's violation was willful, then you must award Plaintiff Lindsley the amount of damages that compensates her for the difference between what she was paid (in both wages and benefits) and the average amount of what her male predecessors were paid (in both wages and benefits) during the period starting October 25, 2014 through June 8, 2016.  However, if you find that Defendant Omni Hotels's violation of the Equal Pay Act was not willful, then you must award Plaintiff Lindsley the difference between what she was paid (in both wages and benefits) and the average amount of what her male predecessors were paid (in both wages and benefits) during the period starting October 25, 2015 through June 8, 2016.  In other words, Plaintiff Lindsley is entitled to damages for an extra year if she proves that Defendant Omni Hotels's violation was willful.

**Treating Two Entities as a Single Enterprise**

Omni Hotels Management Corporation and TRT Holdings, Inc. are distinct entities.   In proving liability for discrimination, a plaintiff may prove by a preponderance of the evidence that two or more nominally separate business entities were part of an integrated enterprise, making the entities a single, integrated employer of the employee.   In determining whether Omni Hotels Management Corporation and TRT Holdings, Inc. should be viewed as a single, integrated employer, you should consider the following factors:

(1) interrelation of operations

(2) centralized control of labor relations

(3) common management; and

(4) common ownership or financial control.

While the presence or absence of any one factor is not controlling, and all four factors are not required, you should focus particular attention on the second factor—centralized control of labor relations and personnel.   You should consider relevant to this factor the sharing of personnel, equipment, services, and record keeping between the entities.

**Duty to Deliberate**

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict.   Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.   During your deliberations, do not hesitate to reexamine your own opinions and change your mind

if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question on the verdict form.

You may now proceed to the jury room to begin your deliberations.