## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISON

| | | |
|---|---|---|
| SARAH LINDSLEY, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 3:17-cv-02942-X |
| | § | |
| v. | § | |
| | § | |
| | § | |
| TRT HOLDINGS, INC. and OMNI | § | JURY TRIAL DEMANDED |
| HOTELS MANAGEMENT | § | |
| CORPORATION, | § | |
| | § | |
| Defendants. | | |

### PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT ON THE VERDICT

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...............................................................................................iii

I.        INTRODUCTON ...........................................................................................1

II.       The Court Should Enter Judgment on the Jury's Verdict on Liability...................................3

III.      The Court Should Award Pre-Judgment Interest .......................................................7

IV.       The Court Should Award Post-Judgment Interest ....................................................9

V.        The Jury's Verdict and Damages Should Be Entered into Judgment Against Each

          Party .............................................................................................10

VI.       The Court Should Order Defendants to Institute Appropriate Policies to Remedy Past

          Discrimination ...................................................................................10

VII.      Conclusion........................................................................................11

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abner v. Kansas City S. R. Co.*,
   513 F.3d 154 (5th Cir. 2008)................................................................................. 3

*Albemarle Paper Co. v. Moody*,
   422 U.S. 405 (1975)..................................................................................... 5, 11

*Black v. Pan Am. Lab'ys, L.L.C.*,
   646 F.3d 254 (5th Cir. 2011).............................................................................. 10

*Bos. Old Colony Ins. Co. v. Tiner Assocs. Inc.*,
   288 F.3d 222 (5th Cir. 2002)................................................................................ 9

*Carter v. Transp. Workers Union of Am., Loc. 556*,
   No. 3:17-CV-2278-X, 2022 WL 19072561 (N.D. Tex. Dec. 5, 2022) ................................. 9

*Claiborne v. Illinois Central Railroad*,
   583 F.2d 143, 149 (5th Cir. 1978)....................................................................... 10

*Gaia Techs. Inc. v. Recycled Prod. Corp.*,
   175 F.3d 365 (5th Cir. 1999)................................................................................ 3

*Huggins v. Royalty Clearinghouse*, Ltd.,
   121 F. Supp. 3d 646 (W.D. Tex. 2015)................................................................... 8

*Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*,
   962 S.W.2d 507 (Tex. 1998)................................................................................. 8

*Luciano v. Olsten Corp.*,
   110 F.3d 210 (2d Cir. 1996)................................................................................. 5

*Peques v. Mississippi State Employment Service*,
   899 F.2d 1449 (5th Cir. 1990)............................................................................. 11

*Perez v. Bruister*,
   823 F.3d 250 (5th Cir. 2016)................................................................................ 8

*Reeled Tubing, Inc. v. M/V Chad G*,
   794 F.2d 1026 (5th Cir. 1986).............................................................................. 8

**PLAINTIFF'S MOTION FOR
ENTRY OF JUDGMENT ON THE VERDICT**

*Soto v. LCS Corr. Servs., Inc.*, No. 2:12-CV-130,
    2013 WL 4012627 (S.D. Tex. Aug. 5, 2013) .................................................................... 10

*Teamsters v. United States*,
    431 U.S. 324, 364 (1977) ....................................................................................... 5, 11

*Thomas v. Texas Dept. of Criminal Justice*,
    297 F.3d 361 (5th Cir. 2002) ...................................................................................... 7, 9

*Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*,
    718 F.3d 448 (5th Cir. 2013) ......................................................................................... 9

*United States v. Ocean Bulk Ships, Inc.*,
    248 F.3d 331 (5th Cir. 2001) ......................................................................................... 7

*Vance v. Union Planters Corp.*,
    279 F.3d 295 (5th Cir. 2002) ....................................................................................... 10

*Wesley v. Yellow Transp., Inc.*,
    No. 3:05-CV-2266, 2010 WL 3606095 (N.D. Tex. Sept. 16, 2010) .................................. 7

*Whitfield v. Lindemann*,
    853 F.2d 1298 (5th Cir.1988) ....................................................................................... 8

## Statutes

28 U.S.C. § 1961(b) ............................................................................................................ 9

42 U.S.C. § 1981a(a)(1) ..................................................................................................... 5

42 U.S.C. § 2000e-5(g)(1) ................................................................................................ 10

42 U.S.C. 1981a(b)(1) ....................................................................................................... 5

42 U.S.C. 1981a(b)(3)(A)-(D) .......................................................................................... 5

TEX. FIN. CODE § 304.003(c)(1)-(3) ............................................................................... 8

PLAINTIFF'S MOTION FOR
ENTRY OF JUDGMENT ON THE VERDICT

Within moments after the jury was seated in this case, the Court provided the following introductory statement as the jury began its service:

```
 3              Back during the Old Testaments, we would
 4     have countries ruled by kings and queens, and they
 5     would be the ones to decide disputes between their
 6     citizens.
 7              But our founders did a great thing.  They
 8     threw all of that off.  And the kings and queens are
 9     gone and y'all are ruled by We the People, by
10     yourselves.
11              And who do you think decides the big
12     disputes that the sovereigns used to decide back in
13     the Old Testament days?  It is sovereign, you the
14     people.
```

*See* Trial Tr. 38:3-14.  As instructed, the jury did its job.  It was attentive and specific, and its findings were nuanced and precise.  Not every question was answered in favor of one party or the other.  But as to one specific issue, the jury made sure to leave no doubt:  the damages awarded by the jury were not subtle, and left no  uncertainty as to the jury's determinative will as the sovereign.

Pursuant to this Court's Order,[1] Plaintiff Sarah Lindsley ("Plaintiff Lindsley"), by and through her attorneys, moves this Court to enter judgment in accordance with the jury's verdict. Plaintiff Lindsley requests the Court issue judgment for the full damages awarded by the jury after its careful deliberation, in addition to pre-judgment and post-judgment interest and injunctive relief. In support thereof, Plaintiff respectfully shows the following:

## I.    INTRODUCTON

On March 9, 2023, the jury reached a unanimous verdict and found that Defendants Omni Hotels Management Corporation ("Omni") and TRT Holdings, Inc. ("TRT" and together with

---

[1] Trial Tr. 1072:11-21.

**PLAINTIFF'S MOTION FOR
ENTRY OF JUDGMENT ON THE VERDICT**

Omni, "Defendants") were liable to Plaintiff Lindsley for committing acts of sex discrimination. Plaintiff Lindsley proved under Title VII of the Civil Rights Act that she would not have been compensated less than one or more of her male predecessors in the position of Director of Food & Beverage at the Omni Hotel in Corpus Christi in the absence of her sex. *See* Doc. 232 at 1.

As a result of Defendants' violation of Title VII, the jury awarded Plaintiff Lindsley $100,000 for past pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life. *See* Doc. 232 at 2. The jury also found that Plaintiff Lindsley should be awarded punitive damages in the amount of $25,000,000. *See* Doc. 232 at 3-4.

With respect to the Equal Pay Act, the jury found that Plaintiff Lindsley proved that Defendant Omni paid her less than members of the opposite sex for performing work in a position requiring equal skill, effort and responsibility under similar working conditions. *See* Doc. 232 at 5. However, the jury also found that Defendant Omni proved that the difference in pay was the result of a factor other than sex. *See* Doc. 232 at 6. As a result, no damages were considered or awarded on the Equal Pay Act claim.

Finally, the jury found that Plaintiff Lindsley proved that Omni and TRT represent a single, integrated enterprise. *See* Doc. 232 at 10.

Accordingly, Plaintiff Lindsley requests that the Court enter judgment as required by Federal Rule of Civil Procedure Rule 58(a)(1). The Clerk of the Court must prepare, sign, and enter judgment on a separate document when a jury awards a general verdict, when the jury returns a general verdict accompanied by interrogatories, or when the court grants other relief not described in Rule 58(a)(2).

**PLAINTIFF'S MOTION FOR**
**ENTRY OF JUDGMENT ON THE VERDICT**

## II.       The Court Should Enter Judgment on the Jury's Verdict on Liability

The jury's verdict has ample support in the record evidence and the Court should defer to the jury's factual findings. *Gaia Techs. Inc. v. Recycled Prod. Corp*., 175 F.3d 365, 371 (5th Cir. 1999) ("Rule 58 merely provides that a court may issue a judgment pursuant to a jury verdict. [It] by no means empowers a court to issue judgment contrary to a jury verdict.").  The jury's findings and the evidence presented at trial established that Plaintiff Lindsley proved by a preponderance of the evidence that Defendant Omni violated Title VII and that Defendant Omni should be subjected to punitive damages as a result of their discrimination.[2]

As the jury instructions indicated, the jury considered two elements of actual damages under Title VII, and no others: (1) the amount of back pay and benefits Plaintiff Lindsley would have earned in her employment with Defendant Omni if she had not been paid less than males on the basis of her sex; and (2) the amount of other damages sustained by Plaintiff Lindsley, such as emotional distress, pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life. *See* Doc. 230 at 18. The jury's verdict indicates that they carefully considered both elements, as the jury concluded that Plaintiff Lindsley should receive $100,000 for past pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.[3] *See* Doc. 232 at 2.

---

[2] *See* evidence listed in Doc. 235 (Exhibits entered as evidence at trial) and Doc. 236 (the transcript of testimony presented at trial), as well as Doc. 228 (Certification of Trial Exhibits for Jury Deliberations).

[3] The jury's decision not to award back pay damages does not affect its ability to award punitive damages. *See Abner v. Kansas City S. R. Co.*, 513 F.3d 154, 163 (5th Cir. 2008) in which the Fifth Circuit affirmed the trial court in a Title VII case regarding punitive damages awards up to the statutory cap even when no other damages were awarded by the jury ("Injury that results from discrimination under Title VII is often difficult to quantify in physical terms; preventing juries from awarding punitive damages when an employer engaged in reprehensible discrimination without inflicting easily quantifiable physical and monetary harm would quell the deterrence that Congress intended in the most egregious discrimination cases under Title VII").

**PLAINTIFF'S MOTION FOR
ENTRY OF JUDGMENT ON THE VERDICT**

The jury was then asked whether Plaintiff Lindsley should be awarded punitive damages and they answered "yes." The jury found that punitive damages in the amount of $25,000,000 should be assessed against Defendant Omni Hotels. *See* Doc. 232 at 3-4. The jury instructions clearly outline the purpose of punitive damages: "Punitive damages are damages designed to punish a defendant and to deter similar conduct in the future...[i]f you find that Defendant Omni Hotels acted with malice or reckless indifference to Plaintiff Lindsley's rights and did not make a good-faith effort to comply with the law, then in addition to any other damages you find Plaintiff Lindsley is entitled to receive, you may, but are not required to, award Plaintiff Lindsley an additional amount as punitive damages for the purpose of punishing the Defendant Omni Hotels for engaging in such wrongful conduct and deterring Defendant Omni Hotels and others from engaging in such conduct in the future."

In determining the appropriate amount of punitive damages to award, the jury deliberated and considered, per the jury instructions, "how reprehensible Defendant Omni Hotels' conduct was," "how much harm Defendant Omni Hotels' wrongful conduct caused Plaintiff Lindsley and could cause her in the future," and "what amount of punitive damages, in addition to the other damages already awarded, is needed, considering Defendant Omni Hotels' financial condition, to punish Defendant Omni Hotels for it conduct toward Plaintiff and to deter Defendant Omni Hotels and others from similar wrongful conduct in the future."  *See* Doc. 230 at 20-21.

The jury's verdict indicates that the jury believed that $25,000,000 was the appropriate number to properly punish Defendant Omni Hotels and deter future unlawful conduct. Although it is impossible to know the context of the jury's deliberations, the jury heard testimony by Joy Rothschild, a C-level executive of Omni, that Defendant Omni Hotels' revenue during the past year was approximately $2,000,000,000. *See* Trial Tr. 520:8-521:1. Following the Court's explicit

**PLAINTIFF'S MOTION FOR**
**ENTRY OF JUDGMENT ON THE VERDICT**

instructions, the logical conclusion is that the jury intended its award to comply with the meaning of "punitive" and to award an amount of damages that would have an actual punitive effect on a company that generates approximately $2 billion in annual revenue.

The relevant statutory remedy provisions under Title VII include:

> In an action brought by a complaining party under [Title VII] . . . against a respondent who engaged in unlawful intentional discrimination . . . and provided that the complaining party cannot recover under section 1981 of this title, the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section in addition to any relief authorized by . . . [42 U.S.C. § 2000e-5(g)], from the respondent.

42 U.S.C. § 1981a(a)(1).[4] However, according to U.S. Supreme Court precedent "district courts have <u>not merely the power but the duty</u> to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Teamsters v. United States*, 431 U.S. at 364 (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975)(emphasis added)).

It is evident based on the jury's verdict that any reduction of the punitive damage award would disrupt the jury's factual findings and verdict, and, equally as important, the jury verdict does not threaten the viability of Defendant Omni given that testimony established that it generates

---

[4] However, while the Civil Rights Act of 1991 authorizes plaintiffs to recover compensatory and punitive damages for violations of Title VII, Section 1981a sets forth a combined cap of between $50,000 and $300,000 based on the size of the employer. 42 U.S.C. 1981a(b)(1) and (3)(A)-(D). It is a stipulated fact that Defendant Omni employs more than 500 employees and if the Court determines that the cap should apply, it would be subject to the largest amount available under the statute. See Trial Tr. 154:9-10.

The amount of the statutory cap has not changed to reflect the growth of corporate profits during the same time period (approximately 9x), nor has it been adjusted for inflation since its adoption in 1991. Congress' stated reason for capping the amount of damages available under the Civil Rights Act of 1991 was to deter frivolous lawsuits and to protect employers from financial ruin as the result of unusually large awards. *See Luciano v. Olsten Corp.*, 110 F.3d 210, 221 (2d Cir. 1996) (detailing legislative history). Plaintiff Lindsley's lawsuit was undeniably non-frivolous as determined by the EEOC, the Fifth Circuit, this Court, and this jury. And, as addressed below, the amount awarded by the jury will not lead to Defendant Omni's "financial ruin."

**PLAINTIFF'S MOTION FOR
ENTRY OF JUDGMENT ON THE VERDICT**

approximately $2 billion per year in revenue.  The jury's award represents only 1/80 of the revenue Omni generates in a single year.[5]

Indeed, as detailed in the jury interrogatory, the jury specifically awarded punitive damages to punish Defendant Omni and deter future wrongful conduct. Pursuant to 42 U.S.C. § 1981a(c)(2), the jury, of course, did not and was not permitted to know during their careful deliberations that under the current statutory caps, Defendants might be required to pay only a small fraction of the damages that they as the sovereign determined were appropriate. Indeed, when a company that generates $2 billion each year in revenue is required to pay a maximum of $300,000, the constitutionality of Title VII damage caps must also be examined, because they frustrate the intended legislative purpose of punitive damages in this context and calls into question whether they have any deterrent effect whatsoever.  Applying the statutory cap here and stripping the jury of its power would render an award of punitive damages meaningless. $300,000 to these Defendants is not punitive, it is a rounding error. Indeed, when one takes into consideration that Plaintiff Lindsley filed her EEOC charge in 2017, it is likely that Defendant Omni generated over $10 billion in revenue during the time period that her case was pending.

If the Court reduces Plaintiff Lindsley's punitive damage award to $200,000, so that when combined with the jury's $100,000 emotional damage award the total fits under the $300,000 cap, that would mean that the punitive effect the jury sought would be changed from 1/80th of Omni's annual revenue to 1/10,000th of Omni's annual revenue.  A $300,000 cap for companies the size of Defendants allows them to engage in the "efficient breach" lawyers learned about in first-year contracts.  Essentially, Omni could (and likely would) determine that it is more profitable to absorb

---

[5] Trial Tr. 520:20-521:2.

**PLAINTIFF'S MOTION FOR
ENTRY OF JUDGMENT ON THE VERDICT**

the cost of a capped punitive damages award and continue its discriminatory practices with relatively little consequence than to correct the problem identified (and seemingly addressed) by the jury in its finding. Consequently, the larger the entity, the more meaningless Title VII's requirements become. And that is where the statutory caps under Title VII become unconstitutionally vague -- the statute says the intended purpose of punitive damages is to punish and deter wrongful conduct, but the artificially low level of the caps frustrates the ability of Title VII to achieve its desired effect.

### III.   The Court Should Award Pre-Judgment Interest

The Fifth Circuit has "a strong presumption in favor of awarding pre-judgment interest" *United States v. Ocean Bulk Ships, Inc.*, 248 F.3d 331, 344 (5th Cir. 2001), and specifically holds that district courts should award pre-judgment interest on emotional distress damages:

> Prejudgment interest should apply to all past injuries, including past emotional injuries. Courts should award prejudgment interest whenever a certain sum is involved. Refusing to award prejudgment interest ignores the time value of money and fails to make the plaintiff whole.

*Thomas v. Texas Dept. of Criminal Justice*, 297 F.3d 361, 372 (5th Cir. 2002) (internal footnote citations omitted).  Where, as here, a jury has awarded the plaintiff a specific sum of compensatory damages for past mental anguish, Fifth Circuit precedent supports awarding pre-judgment interest on those past emotional damages.

While there is no federal statute that specifies the appropriate rate of pre-judgment interest that applies when a plaintiff prevails under Title VII, courts in the Fifth Circuit routinely consult state law when determining the appropriate pre-judgment interest rate in such cases. *See*, e.g., *Wesley v. Yellow Transp., Inc.,* No. 3:05-CV-2266, 2010 WL 3606095, at *2 (N.D. Tex. Sept. 16, 2010) ("In the absence of a federal statute that establishes the rate of prejudgment interest [in

**PLAINTIFF'S MOTION FOR**
**ENTRY OF JUDGMENT ON THE VERDICT**

hostile work environment cases under Title VII or 42 U.S.C. § 1981], state law guides the court's discretion in determining the interest rate."); *see also Perez v. Bruister,* 823 F.3d 250, 274 (5th Cir. 2016) (turning to state law for guidance because the federal Employee Retirement Income Security Act does not set prejudgment interest rates).

In particular, courts in this Circuit apply Texas Finance Code § 304.003, which provides the applicable rate for determining post-judgment interest, to determine the pre-judgment interest rate that applies in a Title VII case. Section 304.003 bases the applicable interest rate on "the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation." TEX. FIN. CODE § 304.003(c). If the prime rate is between 5 and 15 percent, the Court must use the prime rate as the applicable interest rate.[6] *Id.* § 304.003(c)(1). While the number may fluctuate as of the date of the Memorandum Opinion, at the time of this briefing, the current prime rate is 7.75 percent.

Pre-judgment interest is computed as simple interest, rather than compound interest. *Perez v. Bruister*, 823 F.3d 250, 275 n. 34 (5th Cir. 2016) ("As a general rule prejudgment interest awards are simple interest awards, not compound interest awards.") (citing *Whitfield v. Lindemann*, 853 F.2d 1298, 1306 (5th Cir.1988)); *Huggins v. Royalty Clearinghouse*, Ltd., 121 F. Supp. 3d 646, 660 (W.D. Tex. 2015) ("Prejudgment interest is computed as simple interest") (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc*., 962 S.W.2d 507, 532 (Tex. 1998)).

In the Fifth Circuit, "prejudgment interest is ordinarily awarded from the date of loss." *Reeled Tubing, Inc. v. M/V Chad G*, 794 F.2d 1026, 1028 (5th Cir. 1986). Under this standard, in a Title VII case, pre-judgment interest is calculated from the date of Defendants' adverse

---

[6] If the prime rate is less than 5%, the applicable interest rate is 5%. TEX. FIN. CODE § 304.003(c)(2). If the prime rate exceeds 15%, the applicable interest rate is 15%. Id. § 304.003(c)(3).

**PLAINTIFF'S MOTION FOR**
**ENTRY OF JUDGMENT ON THE VERDICT**

employment action. *Thomas*, 297 F.3d at 372. Therefore, Plaintiff requests that the pre-judgment interest be calculated from the date she became the Director of Food & Beverage on July 2, 2011.

Thus, from the date that Plaintiff became the Director of Food & Beverage and was subjected to emotional damage from receiving unequal pay in that position until the date of this briefing, a period of 4,280 days or 11.72603 years, has elapsed. Accordingly, the Court should award Plaintiff Lindsley pre-judgment interest on the compensatory damages from July 2, 2011 until the date of judgment, calculated at the federal prime rate, in the amount of $90,876.73 in order to make Plaintiff whole ($100,000 x 7.75% x 11.72603 years).[7]

### IV. The Court Should Award Post-Judgment Interest

Post-judgment interest is determined by 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."); *see also*, e.g., *Tricon Energy Ltd. v. Vinmar Int'l, Ltd*., 718 F.3d 448, 456–57 (5th Cir. 2013) ("Post judgment interest is not discretionary . . . ."). As that statute requires, the Court should award post-judgment interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(b). The statute explicitly requires that post-judgment interest "shall be compounded annually." 28 U.S.C. § 1961(b).

Further, an award of post-judgment interest also includes post-judgment interest on the amount owed as pre-judgment interest. *Bos. Old Colony Ins. Co. v. Tiner Assocs. Inc*., 288 F.3d 222, 234 (5th Cir. 2002) ("[T]his circuit has required that post-judgment interest at the federal rate be assessed against the prejudgment interest.").

---

[7] "…[T]he proper equation the law mandates is…Damages (D) multiplied by the interest rate (R) multiplied by the time (in years) since termination (T): (D x R x T)" *Carter v. Transp. Workers Union of Am., Loc. 556*, No. 3:17-CV-2278-X, 2022 WL 19072561, at *8 (N.D. Tex. Dec. 5, 2022) (internal citations omitted).

**PLAINTIFF'S MOTION FOR**
**ENTRY OF JUDGMENT ON THE VERDICT**

## V.   The Jury's Verdict and Damages Should Be Entered into Judgment Against Each Party

A parent company, like Defendant TRT, is liable as an employer upon a finding that it is an integrated enterprise. *See Vance v. Union Planters Corp.*, 279 F.3d 295, 300 (5th Cir. 2002) (holding that a parent company is not liable as an employer "absent a finding that [they] are integrated enterprises").

Here, the jury determined that Defendants Omni and TRT were an integrated enterprise and, therefore, TRT is liable as Plaintiff Lindsley's employer. As a result, if the Court chooses to impose a cap on damages, Plaintiff Lindsley should be awarded damages up to the statutory cap of $300,000 from each Defendant in this action. *See Black v. Pan Am. Lab'ys, L.L.C.*, 646 F.3d 254, 264 (5th Cir. 2011) ("...the plain language of § 1981a(b)'s cap applies to each party in an action"). With respect to Defendant TRT, "it is the defendant employer seeking to impose a Section 1981a(b)(3) cap on punitive damages that bears the burden of proving that it employed fewer than the requisite number of employees." *Soto v. LCS Corr. Servs., Inc.*, No. 2:12-CV-130, 2013 WL 4012627, at *7 (S.D. Tex. Aug. 5, 2013) (collecting cases).

## VI.   The Court Should Order Defendants to Institute Appropriate Policies to Remedy Past Discrimination

In *Claiborne v. Illinois Central Railroad*, the Fifth Circuit held that the "aim of Title VII relief, whether back-pay, retroactive seniority, or other injunctive relief, is thus to make whole the victims of discrimination according to what would have been their experience in a non-discriminatory work setting." 583 F.2d 143, 149 (5th Cir. 1978). Further, Title VII specifically authorizes the Court to enjoin employers from engaging in unlawful discrimination, and "to order such affirmative action as may be appropriate...or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g)(1).

As a result, this Court has broad equitable powers to "make possible the fashioning of the most complete relief available." *Peques v. Mississippi State Employment Service*, 899 F.2d 1449, 1453 (5th Cir. 1990) (citing *Teamsters v. United States*, 431 U.S. 324, 364 (1977)) (quotations omitted). Indeed, according to U.S. Supreme Court precedent "district courts have not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Teamsters v. United States*, 431 U.S. at 364 (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975)).

Accordingly, the Court should enjoin Defendants from engaging in any of the activities that the Court declares and the jury found to be unlawful.[8] Specifically, the Court should order Defendants to institute and carry out policies and practices that provide equal pay for female employees while also ensuring that the past effects of unlawful employment practices are eradicated. One potential way to do so is to order Defendants to post the jury's verdict for a specific period of time at all Omni hotel properties.  Another option would be to require Defendants to mail physical copies of the EEOC Determination, the lawsuit, and the jury verdict to all existing employees.  Such actions would help ensure that all current employees of Defendants are aware of their right under Title VII to not to be discriminated against on the basis of sex.

**VII.    Conclusion**

For the foregoing reasons, Plaintiff Lindsley respectfully requests that the Court enter a judgment in her favor, and against all Defendants – jointly and severally – in the amount of $25,100,000 in addition to any pre-judgment, post-judgment relief, and other relief to which Plaintiff Lindsley is entitled.

---

[8] *See* Doc. 33, Prayer for Relief, p. 45.

**PLAINTIFF'S MOTION FOR
ENTRY OF JUDGMENT ON THE VERDICT**

11

Dated: March 30, 2023                    By: /s/ Jay D. Ellwanger

Jay D. Ellwanger
Texas State Bar No. 24036522
jellwanger@equalrights.law
David W. Henderson
Teas State Bar No. 24032292
dhenderson@equalrights.law
**Ellwanger Henderson LLLP**
400 S. Zang Blvd., Suite 600
Dallas, Texas 75208
(469) 998-6775 Telephone
(469) 998-8002 Facsimile

Robert J. Valli, Jr. (admitted *pro hac vice*)
N.Y. State Bar No. 2958130
rvalli@vkv.law
Monica Hincken (admitted *pro hac vice*)
N.Y. State Bar No. 5351804
mhincken@vkv.law
**Valli Kane & Vagnini, LLP**
600 Old Country Road, Suite 519
Garden City, New York, 11530
(516) 203-7180 Telephone
(516) 706-0248 Facsimile

**PLAINTIFF'S MOTION FOR
ENTRY OF JUDGMENT ON THE VERDICT**

12

**CERTIFICATE OF SERVICE**

This is to certify that on March 30, 2023, a true and correct copy of the foregoing document was served via the Electronic Case Filing system on all counsel of record.

*/s/ Jay D. Ellwanger*
Jay D. Ellwanger

**PLAINTIFF'S MOTION FOR
ENTRY OF JUDGMENT ON THE VERDICT**