UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SARAH LINDSLEY,                          §
                                         §
          *Plaintiff*,                   §
                                         §
v.                                       §    Civil Action No. 3:17-CV-2942-X
                                         §
TRT HOLDINGS, INC. et al.,               §
                                         §
          *Defendants*.                  §

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are three motions: Defendants' Renewed Motion for Judgment as a Matter of Law, (Doc. 240), Defendants' Motion to Enter Judgment on the Verdict or for a New Trial, (Doc. 243), and Lindsley's Motion to Enter Judgment on the Verdict, (Doc. 246).  After reviewing the motions, responses, replies, and applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** Lindsley's Motion to Enter Judgment on the Verdict, (Doc. 246), **DENIES** Defendants' Renewed Motion for Judgment as a Matter of Law, (Doc. 240), and **DENIES** Defendants' Motion to Enter Judgment on the Verdict or for a New Trial.  (Doc. 243).

## I.  Background

Lindsley worked for Omni for about sixteen years, starting as a part-time server.  But in 2010, Omni offered Lindsley a position as Assistant Director of Food and Beverage at Omni's Corpus Christi hotel.  At the time Lindsley took the job, her salary was $57,000 per year.  In July 2011, Omni promoted Lindsley to the position of Director of Food and Beverage at Omni's Corpus Christi hotel with a salary of

1

$70,841—significantly less than the starting salaries of her male predecessors in that position.

But Lindsley proved to be a successful Director of Food and Beverage, so Omni continually gave her significant raises that elevated her pay above that of her male comparators.  It's undisputed that, by March 2013, Lindsley's pay had surpassed that of one of her comparators, and by September 2014, Lindsley's salary had surpassed that of all of her comparators.

In 2015, Lindsley applied for the Director of Food and Beverage position at Omni's Houston hotel.[1]  When the interview process went south, Lindsley withdrew her application for that position and filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 23, 2015, for, among other things, failure to promote and pay discrimination.

This Court previously dismissed Lindsley's pay-discrimination and failure-to-promote claims.[2]  On appeal, the Fifth Circuit affirmed the Court's dismissal of Lindsley's failure-to-promote claim but reversed the Court's dismissal of her pay-discrimination claim.[3]

After trial, the jury first issued a verdict stating that Omni did not discriminate against Lindsley on the basis of her sex, awarded her $0 in backpay, but awarded $100,000 for pain and suffering and $25 million in punitive damages.

---

[1] Doc. 121 at 2.

[2] The Court also dismissed a retaliation claim that isn't relevant to the instant judgment.

[3] *See Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 471 (5th Cir. 2021).

The Court became concerned about "potential inconsistencies" in that verdict.[4] In particular, Omni's counsel had earlier raised a concern that the Court's question about Title VII liability drawn straight from the Fifth Circuit pattern instruction used "a double negative."[5]  So it was possible that the double negative confused the jury, when the jury really had meant to find Omni liable.  Further, the jury had raised a question about conditioning language that the Court had used for a separate claim; but the Court hadn't used conditioning language for the Title VII questions.  As a result, the Court resubmitted the case to the jury with conditioning language that specified that, if the jury found no liability, they should answer no further questions about Title VII.[6]

The jury's second verdict found that Omni had discriminated against Lindsley on the basis of her sex, and then still awarded Lindsley $0 in backpay damages, $100,000 for pain and suffering, and $25 million in punitive damages.

## II.     Legal Standard

### A.     Inconsistent Verdict

When a jury returns a potentially inconsistent verdict, a district court may (1) reconcile the verdict and enter judgment or (2) grant a new trial.  There's a "strong presumption in favor of reconciling the jury's verdict,"[7] and the court must "reconcile

---

[4] Tr. Trans. at 1041:15–16.

[5] Tr. Trans. at 891:25.

[6] Doc. 232 at 1 ("If you answer no, then answer question 5.").

[7] *Goff v. Pert*, 741 F. App'x 211, 213 (5th Cir. 2018) (per curiam).

or harmonize the answers with each other, if that can reasonably be done."[8]  In other words, if "the jury's answers . . . may fairly be said to represent a logical and probable decision on the relevant issues as submitted," the Court must enter judgment in accord with that decision.[9]  A court should instead grant a new trial only if "there is no view of the case which makes the jury's answers consistent."[10]

## B. Judgment as a Matter of Law

Judgment as a matter of law is proper only when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."[11]  "This will only occur if the facts and inferences point so strongly and overwhelmingly in the movant's favor that jurors could not reasonably have reached a contrary verdict."[12]  In evaluating a motion for judgment as a matter of law, "the court must consider all of the evidence in the light most favorable to the nonmovant, drawing all factual inferences in favor of the non-moving party, and leaving credibility determinations,

---

[8] *McVey v. Phillips Petroleum Co.*, 288 F.2d 53, 59 (5th Cir. 1961).

[9] *Griffin v. Matherne*, 471 F.2d 911, 915 (5th Cir. 1973).

[10] *Id.*

[11] *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013) (quoting FED. R. CIV. P. 50(a) (cleaned up)).

[12] *Id.*

4

the weighing of evidence, and the drawing of legitimate inferences from the facts to the jury."[13] "After a jury trial, the standard of review is especially deferential."[14]

### III.   Analysis

Together, the parties have filed three post-trial motions which this Court must now resolve. For organizational purposes, the Court will first address the jury's first verdict, then Omni's motion for new trial, then the jury's second verdict, and will finish the opinion by explaining a few details related to the Court's judgment.

### A. The Jury's First Verdict

The parties dispute the legal consequence of the jury's first verdict.[15] Defendants argue that that they are entitled to a take-nothing judgment on the first verdict. They reason that the jury "established Defendants to be the prevailing parties on all causes of action" because the jury found that Defendants were not liable and awarded $0 in backpay damages.[16] Lindsley counters that the jury's finding of no liability combined with a monetary judgment of $25.1 million in favor of Lindsley is an inconsistent verdict.[17] The Court agreed with Lindsley at trial and continues to do so now.

Here, despite Defendants' contention otherwise,[18] the jury's first verdict was inconsistent. After deliberation, the jury first found no *liability* (*i.e.*, that Omni did

---

[13] *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 333 (5th Cir. 1997).

[14] *Abraham*, 708 F.3d at 620 (cleaned up).

[15] *See generally* Docs. 244, 249.

[16] Doc. 244 at 18–22.

[17] Doc. 249 at 2–4.

[18] Defendants' statement that "The First Verdict Was Not Inconsistent" is peculiar. Defendants recognize that the jury's first verdict is inconsistent because they ask the Court to

not discriminate against Lindsley on the basis of sex), but the jury did award compensatory damages—$100,000 in pain-and-suffering—and $25 million in punitive damages. The notion that Defendants did nothing wrong but owe Lindsley $25.1 million is inconsistent.

## B. A New Trial?

As a result of the jury's inconsistent first verdict, the Court re-instructed and re-submitted the questions to the jury for a second verdict. Defendants argue that the Court should grant a new trial.[19] In response, Lindsley argues that Fifth Circuit case law supports the Court's decision to re-instruct and re-submit the inconsistent first verdict to the jury.[20] The Court agrees with Lindsley.

"A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course."[21] A court may also grant a motion for new trial when there is "uncertainty or contingency to the finality of the jury's determination."[22]

---

invalidate the jury's damages award in the first verdict. Doc. 244 at 18–22. So Defendants' request that this Court strike $25.1 million in damages on a "consistent" verdict makes their own request "legally inconsistent."

[19] The verdict in this case was a general verdict. The defendants have likely waived any argument that the re-submission of the verdict to the jury was improper because, in the Fifth Circuit, a party waives its objection to a court's re-submission of a *general* jury verdict once the jury is dismissed. *Montano v. Orange Cnty., Tex.*, 842 F.3d 865, 881–82 (5th Cir. 2016); *see also Motis Energy, LLC v. SWN Prod. Co.*, No. 4:17-CV-00962, 2019 WL 2909722, at *6 (S.D. Tex. Apr. 17, 2019).

[20] Doc. 249 at 2–4.

[21] *Beckham v. La. Dock Co.*, 124 F. App'x 268, 270 (5th Cir. 2005) (per curiam) (cleaned up).

[22] *Cook v. United States*, 379 F.2d 966, 970 (5th Cir. 1967).

Here, the Court's resubmission of the first verdict to the jury was proper.  For reasons stated previously, the Court was concerned about "potential inconsistencies" in that verdict because of Omni's concern with the double-negative wording in the pattern instruction and the lack of conditioning language.[23]  So the Court added conditioning language and resubmitted the case to the jury.[24]  The language specified that, if the jury found no liability, they should answer no further questions about Title VII.[25]  And upon further deliberation, the jury did find Title VII liability and kept the compensatory and punitive damages awards the same.

The defendants cite a purportedly analogous case from the Fourth Circuit, *McCollum v. Stahl*.[26]  At base, *McCollum* stands for the legal proposition that a resubmission of an inconsistent special verdict to a jury is "procedurally impermissible."[27]  But *McCollum* was about special verdicts.  By contrast, this case featured a general verdict.  And this distinction makes all of the difference because the Federal Rules of Civil Procedure do not expressly allow resubmission of special verdicts.[28]  But the Rules expressly allow resubmission of general verdicts if there is

---

[23] Tr. Trans. at 891:25; Tr. Trans. at 1041:15–16.

[24] Tr. Trans. at 1041:15–16.

[25] Doc. 232 at 1 ("If you answer no, then answer question 5.").

[26] 579 F.2d 869 (4th Cir. 1978).

[27] *McCollum*, 579 F.2d at 871.

[28] *See* FED. R. CIV. P. 49(a).

an inconsistency.[29]  And Fifth Circuit case law allows district courts to resubmit an inconsistent verdict to a jury.[30]

### C. The Jury's Second Verdict

The second verdict found that Lindsley had proven her Title VII pay-discrimination claim, awarded Lindsley $0 in backpay damages, $100,000 in pain-and-suffering damages, and $25 million in punitive damages.

The parties dispute the legal consequence of the jury's second verdict.[31] Defendants argue that they are entitled to a take-nothing judgment because the jury awarded $0 in backpay to Lindsley, and thus Lindsley cannot satisfy the pay-discrimination elements of her prima facie case.[32]  Lindsley counters that a finding of backpay damages is not necessary for liability because the prima facie elements of a pay-discrimination claim fall away at trial.[33]  Moreover, Lindsley cites to Fifth Circuit case law affirming a jury's Title VII verdict awarding nominal and punitive damages without compensatory damages.[34]  The Court agrees with Lindsley.

As an initial matter, while the jury's verdict is admittedly odd, this isn't the first time a jury in this Circuit has found Title VII liability without a finding of backpay—it's happened at least twice before.  In *Abner*, the jury awarded $0 in

---

[29] *See id.* 49(b)(3), (4).

[30] *See, e.g., Richard v. Firestone Tire & Rubber Co.*, 853 F.2d 1258, 1259–60 (5th Cir. 1988).

[31] *See generally* Docs. 246, 247.

[32] Doc. 247 at 2–5.

[33] Doc. 249 at 10–11.

[34] Doc. 246 at 7 n.3.

compensatory damages and $125,000 in punitive damages.[35]   In *Lewis*, the jury awarded $0 in compensatory damages and $6,279 in punitive damages.[36]   The Fifth Circuit affirmed both of those awards—that is, the Fifth Circuit affirmed the notion that Title VII liability need not be accompanied by an award of compensatory damages.[37]   That forecloses the defendants' logic-based arguments.

Nevertheless, the defendants argue that these Fifth Circuit cases are in other Title VII contexts and that they should win as a matter of law on no unequal pay.[38] This argument fails.

The defendants' attempt to cabin *Abner* is unavailing because *Abner* expressly discussed Title VII cases, not just hostile-work-environment claims.   True, *Abner* involved a hostile-work-environment claim.[39]   But three things are worth noting in *Abner*'s analysis.   First, the Fifth Circuit affirmed a jury's Title VII verdict awarding punitive damages without compensatory damages.   By itself, that judgment convinces this Court that the jury's second verdict—which, unlike *Abner*, *does* award compensatory damages—is not an inconsistent one.   Second, the Fifth Circuit expressly stated that its holding applied to more than just hostile-work-environment claims: "[A] punitive damages award under Title VII and § 1981 need not be

---

[35] *Abner v. Kansas City Southern R.R. Co.*, 513 F.3d 154, 156 (5th Cir. 2008).

[36] *Lewis v. Parish of Terrebonne*, 894 F.2d 142 (5th Cir. 1990).

[37] The Fifth Circuit has likewise stated that, "[f]or Title VII cases not involving backpay, frontpay, or compensatory damages, our district courts have upheld lone punitive damages awards, accompanied by court-assigned nominal damages of $1." *Abner*, 513 F.3d at 159.   With that being said, a district court need not award a "ceremonial anchor of nominal damages to tie to a punitive damages award." *Id.* at 165.

[38] Doc. 247 at 2–5.

[39] *Abner*, 513 at 156.

accompanied by compensatory damages."[40]   Third, the Fifth Circuit's textual analysis—which is rooted in a harm-based analysis—reached all of Title VII and not just hostile-work environment claims.[41] Most notably, the Fifth Circuit observed that Title VII's "statutory maxima capping punitive damage awards strongly undermine the concerns that underlie the reluctance to award punitive damages *without proof of actual harm*."[42]   And still in support of its textual analysis, the Fifth Circuit also noted that the purpose of Title VII's 1991 amendments was to provide additional damages remedies because injuries from Title VII discrimination are "often difficult to quantify in physical terms; preventing juries from awarding punitive damages when an employer engaged in reprehensible discrimination without inflicting easily quantifiable physical and monetary harm would quell the deterrence that Congress intended in the most egregious discrimination cases under Title VII."[43] Translation? In this Circuit, Title VII liability need not be accompanied by an award of compensatory damages because a plaintiff need not provide "proof of actual harm."

This case is even clearer.   Again, in *Abner*, the Fifth Circuit held that compensatory damages, *i.e.*, a showing of harm, need not be a prerequisite for Title VII liability. By contrast, here, the jury *did* find that Lindsley was harmed—twice

---

[40] *Id.* at 160.

[41] *Id.* at 160–63.

[42] *Id.* at 159 (cleaned up).

[43] *Id.* at 163. *Abner*'s understanding of punitive damages without a finding of backpay or compensatory damages also comports with the Supreme Court's reading that Title VII's scope "is not limited to economic or tangible discrimination" because "it covers more than 'terms' and 'conditions' in the narrow contractual sense." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) (first quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); then quoting *Faragher v. Boca Raton*, 524 U.S. 775, 786 (1998)).

actually, as shown by the jury's twice-awarded award $100,000 in compensatory damages.  Thus, because Fifth Circuit case law instructs that a plaintiff can recover punitive damages "without proof of actual harm," subject to Title VII's caps on damages, the jury's second verdict, finding liability *and* harm, is a consistent one.

### D. The Second Verdict & Judgment as a Matter of Law

The Court must next determine if there was sufficient evidence to uphold the jury's verdict.  In moving for judgment as a matter of law, the defendants attempt to cast into doubt the jury's liability finding by turning the jury's general verdict into a special verdict through a multi-step process.[44]  First, the defendants argue that Lindsley's prima facie elements apply post-trial, specifically at the judgment-as-a-matter-of-law stage.[45]  Second, they argue that this Court should take the jury's backpay allotment of *damages* as a factual finding on *liability*.[46]  And third, they argue, after taking the jury's finding on damages and applying it to an element of liability, Lindsley cannot prove discrimination.[47] All of this is an attempt to make an end-run around *Abner*.  The Court won't do that.

The defendants' multi-step argument fails on multiple grounds.  First, this case is at the judgment-as-a-matter-of-law stage.  "At this stage, the *McDonnell-Burdine* presumption drops from the case, and the factual inquiry proceeds to a new

---

[44] Doc. 241 at 13–15.

[45] *Id.* at 13.

[46] *Id.* at 13–15.

[47] *Id.* at 14–15.

level of specificity."[48]   "The 'factual inquiry' in a Title VII case is 'whether the defendant intentionally discriminated against the plaintiff.'"[49]   "In other words, is the employer treating some people less favorably than others because of their race, color, religion, sex, or national origin."[50]

Here, the jury said yes to liability, and there is evidentiary support for that finding on the Court's review of the record.  At base, what the defendants complain of is the lack of a dollar award for unequal pay.  But as *Abner* instructs, harm in the Title VII context is not only difficult to quantify, but a finding of harm is not needed for Title VII liability.[51]  And the Court is not going to toss out this jury's verdict, which found liability, harm (compensatory damages), and damages on the defendants' argument that a showing of a *specific type* of harm, *i.e.*, backpay damages, are needed for Title VII liability.

### E. Details Related to Lindsley's Damages Award

Now that the Court has affirmed the jury's second verdict, it can handle a few details relating to its final judgment: Title VII's punitive-damages cap, pre-and post-interest damages, Lindsley's state-law claim, enterprise liability, and injunctive relief.

---

[48] *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983) (unanimous opinion) (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255 n.10 (cleaned up)).

[49] *Id.* (quoting *Burdine*, 450 U.S. at 253).

[50] *Id.* (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (cleaned up)).

[51] *Abner*, 513 F.3d at 163.  Again, the Fifth Circuit's holding that Title VII harm can be difficult to quantify reflects the Supreme Court's instruction that Title VII's scope "is not limited to economic or tangible discrimination" because "it covers more than 'terms' and 'conditions' in the narrow contractual sense."  *Nat'l R.R. Passenger Corp.*, 536 U.S. at 115.

### a. Title VII's Punitive-Damages Cap

First, while the jury awarded Lindsley $100,000 in pain-and-suffering damages and $25 million in punitive damages, the Court cannot lawfully enter judgment for $25.1 million.  By statute, Title VII limits a plaintiff's recovery to between $50,000 and $300,000 depending on the size of the defendant-employer.[52] Here, Omni is a large enough employer to trigger the statutory maximum limitation of $300,000.  So Lindsley is entitled to $300,000 in damages from Omni.

### b. Integrated Employer Liability

Second, the parties dispute whether TRT can be liable against Lindsley as an integrated employer with Omni.[53]  In its motion for entry of judgment on the (second) verdict, Lindsley argues that TRT is also liable as an integrated employer because Omni and TRT were represented by the same attorneys and executives of each company share offices.[54]  By contrast, TRT argues that no evidence presented at trial supports a finding that TRT and Omni are integrated employers.[55]  The Court agrees with TRT.

The Fifth Circuit applies a four-factor test to determine whether two entities are an integrated employer for purposes of Title VII liability: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and

---

[52] 42 U.S.C. § 1981a(b)(3)(A)–(D); *see also Scudiero v. Radio One of Tex. II, LLC*, No. 4:12-CV-1088, 2015 WL 6859146, at *5 (S.D. Tex. Sept. 30, 2015) (interpreting Title VII's damages cap similarly).

[53] *See generally* Docs. 241, 244, 246, 266.

[54] Doc. 246 at 14; Doc. 249 at 17–18.

[55] Doc. 241 at 25–28; Doc 266 at 9.

(4) common ownership or financial control."[56]  While no single factor is dispositive, the second factor is "the most important one."[57]  And the first factor (operations) looks at matters like production, shared labor, financial accounts, bookkeeping, paychecks, and tax returns preparation.[58]

At trial, the only facts about TRT came from Omni's CEO,[59] who testified that Omni and TRT shared office space, but he also testified that he lacked knowledge surrounding the corporate structure between TRT and Omni.  The only positive fact (shared office space) at best goes to the factor on interrelated operations.  But shared office space is a non-existent evidentiary point to prove the interrelated-operations factor.  The Fifth Circuit, on the interrelation-of-operations factor, cares about things like shared employees, bank accounts, and books—not shared office space.[60]  Similarly, Lindsley's argument that Omni and TRT used the same lawyers holds no weight in the integrated-employer factor.  Overall, there is no evidence that TRT and Omni had interrelated operations, centralized labor relations, common management, and common ownership or control.  That lack of evidence precludes the Court from holding TRT liable as an integrated employer.

### c. Lindsley's State-Law Claim

---

[56] *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 927 (5th Cir. 2021) (cleaned up).

[57] *Id.* (cleaned up).

[58] *Id.*

[59] App. 71–76, 77–78, 81–82.

[60] *Perry*, 990 F.3d at 927.

Third, Lindsley seeks entry of judgment on her state-law claim.[61]  Lindsley's amended complaint includes a claim under Texas's parallel statute to Title VII, Section 21.001 of the Texas Labor Code (the Texas Commission on Human Rights Act).[62]  Yet Lindsley never proposed state law instructions and questions for the jury on this state-law claim, and never objected to the lack of such instructions and questions at the charge conference.[63]   Lindsley's failure to submit state law instructions and questions or to object to the lack of them waives her state-law claim thereby precluding recovery under this claim.

### d. Injunctive Relief

Fourth, Lindsley asks the Court to (1) enjoin the defendants from engaging in unlawful employment practices and (2) to order the defendants to carry out policies that provide equal pay to female employees, which includes posting the jury's verdict for a limited time at all Omni hotel properties and mailing physical copies of the EEOC determination, lawsuit, and jury verdict to Omni's employees.[64]  In response, the defendants largely argue that Lindsley is not entitled to injunctive relief because the Court cannot enter judgment in favor of Lindsley on the jury's second verdict.[65] The Court will oblige one of Lindsley's requests.

---

[61] *See generally* Doc. 246.

[62] Doc. 17 at 40 (am. compl.).

[63] *See* Doc. 232 (jury questions); *see Miles-Hickman v. David Powers Homes, Inc.*, 613 F. Supp. 2d 872 (S.D. Tex. 2009) (Doc. 144) (Jury verdict question contains separate state-law questions when plaintiff originally pled separate state and federal claims).

[64] Doc. 246 at 14–15.

[65] Doc. 247 at 8–10.

15

"[I]n the wake of a Title VII violation," it is well established that "injunctive relief is mandatory . . . absent clear and convincing proof of no reasonable probability of further noncompliance with the law."[66]  Although the general rule is that "the moving party must satisfy the court that relief is needed,"[67] that rule flips in the Title VII context: "The burden of negating that probability [of further noncompliance] lies with the defendants."[68]  As it pertains to available remedies, Title VII's text gives courts great discretion to award equitable relief including "reinstatement," "hiring," "back pay," or any other "equitable relief *as the court deems appropriate*."[69]

Here, Omni has not satisfied its burden in proving that injunctive relief is not warranted to prevent future harm to employees.  Omni largely argues that, because the jury's second verdict should be vacated, injunctive relief is not necessary.[70]  Because the Court finds that the jury's second verdict should not be vacated, Omni's argument largely—if not entirely—falls apart.  Therefore, of Lindsley's requested injunctive relief, the Court deems it appropriate for Omni to post the jury's second verdict on the company's bulletin boards in employee break areas with the following notice: "A jury in Dallas, Texas, found that Omni unlawfully discriminated against employee Sarah Lindsley under Title VII because of her sex."  And Omni must

---

[66] *E.E.O.C. v. Boh Bros. Constr. Co.*, 731 F.3d 444, 469–70 (5th Cir. 2013) (en banc) (cleaned up); *accord James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 354–55 (5th Cir. 1977).

[67] *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953).

[68] *E.E.O.C. v. Rogers Bros., Inc.*, 470 F.2d 965, 967 (5th Cir. 1972).

[69] 42 U.S.C. § 2000e-5(g)(1) (emphasis added).

[70] Doc. 247 at 8–10.

16

distribute the notice and second verdict to employees electronically.[71]   Omni must advise the Court within 45 days of its compliance with this notice requirement.[72]

### e. Pre- and Post-Interest Damages

Fifth, Lindsley requests pre- and post-interest damages.[73]   The Court denies some of those requests.   As stated, Title VII caps a claimant's compensatory and punitive damages award to $300,000.  This cap includes prejudgment interest.[74]   But Lindsley is entitled to post-judgment interest on this award.[75]   By statute, post-judgment interest is "calculated from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment."[76]   Here, the weekly average 1-year constant

---

[71] Lindsley requested a hard copy be mailed to employees.  While that's good for business at the United States Postal Service, the Court sees limited value in sending hard copies as opposed to electronic means.

[72] Lindsley also asks for injunctive relief to (1) enjoin the defendants from engaging in unlawful employment practices, and (2) order the defendants to carry out policies that provide equal pay to female employees.  The first request is so broad is far exceeds the scope of this case.  The second remedy is unfit for this case.  Lindsley has not applied for reinstatement with Omni.  In fact, she voluntarily left her position.  Nor did Lindsley bring a class action.  Thus, ordering Omni to carry out policies that provide equal pay to female employees would solely benefit those not a part of this lawsuit.  And while "[i]njunctive relief which benefits non-parties *may sometimes* be proper" in instances where it is "designed to assist a party" and will also "accidentally assist person not before the court," *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 374 (5th Cir. 1981) (emphasis added), this is not one of those times because ordering Omni to promulgate certain policies would benefit *only* persons not before this Court.  By contrast, while the aforementioned published notice does incidentally inform current Omni employees (non-parties) of Omni's unlawful discrimination in this case, it redresses any reputational harm Lindsley may have suffered during and after her tenure at Omni.

[73] Doc. 246 at 11–13.

[74] *Johnson v. Sw. Rsch. Inst.*, 384 F. Supp. 3d 722, 727 (W.D. Tex. 2019) (declining to award pre-judgment interest once claimant's Title VII award hit the statutory limit).

[75] *Id.*

[76] *Id.*

maturity Treasury yield is 5.45%.[77] Thus, Lindsley will be awarded post-judgment interest at 5.45% from the date of this judgment until paid.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Lindsley's Motion to Enter Judgment on the Verdict, (Doc. 246), **DENIES** Defendants' Renewed Motion for Judgment as a Matter of Law, (Doc. 240), and **DENIES** Defendants' Motion to Enter Judgment on the Verdict or for a New Trial. (Doc. 243).

**IT IS SO ORDERED** this 24th day of October, 2023.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[77] FEDERAL RESERVE BOARD OF GOVERNORS, Selected Interest Rates (Daily), https://www.federalreserve.gov/releases/h15/ (last accessed Oct. 24, 2023).